Patrick E. Johnson (10771)
Paul T. Moxley (2342)
COHNE KINGHORN, P.C.
111 East Broadway, 11th Floor
Salt Lake City, UT 84111
Telephone: (801) 363-4300
Facsimile: (801) 363-4378
pjohnson@cohnekinghorn.com
pmoxley@cohnekinghorn.com

Edward B. Davis (*admitted pro hac vice*)
Joshua B. Durham (*admitted pro hac vice*)
BELL, DAVIS & PITT, P.A.
227 West Trade Street, Suite 1800
Charlotte, NC 28202
Telephone: (704) 227-0400
Facsimile: (704) 227-0178
ward.davis@belldavispitt.com
jdurham@belldavispitt.com

*Attorneys for Defendants*

**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF UTAH, NORTHERN DIVISION**

JOHN BEAN TECHNOLOGIES CORPORATION, a Delaware corporation,

Plaintiff,

vs.

B GSE GROUP, LLC, a North Carolina limited liability company, and BRYAN BULLERDICK, an individual,

Defendants.

**DEFENDANTS' MOTION TO PRECLUDE THE TESTIMONY AND EXPERT REPORT OF DAVID R. DUSKI**

Case No. 1:17-cv-00142-RJS-EJF

Judge: Robert J. Shelby

Magistrate Judge: Evelyn J. Furse

NOW COME Defendants, B GSE Group, LLC ("BGSE") and Bryan Bullerdick ("Bullerdick") (collectively, "Defendants"), by and through counsel, and move the Court pursuant to Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharm. Inc.*, 509 U.S. 579 (1993) for an Order excluding the testimony and expert report of David R. Duski ("Duski"). Specifically, Defendants contend that Duski's testimony and expert report should be excluded because:

(1) Duski's calculation of Defendants' alleged unjust enrichment is not reliable or tailored to the claims in this case; and

(2) Duski's calculation of Plaintiffs' alleged lost profits is based upon unsupported assumptions.

**TABLE OF CONTENTS**

INTRODUCTION ........................................................................................................3

ARGUMENT ............................................................................................................3

I. Legal Standards ....................................................................................................3

II. Duski's calculation of Defendants' alleged unjust enrichment is not reliable or tailored to the claims in this case ....................................................................4

A. Duski's calculation of BGSE's unjust enrichment does not exclude profit attributable to factors other than Defendants' alleged wrongful acts ..........................................................................................................5

B. Duski's calculation of BGSE's unjust enrichment fails to utilize more accurate methodologies ..........................................................................6

III. Duski's calculation of Plaintiff's alleged lost profits is based upon unsupported assumptions ........................................................................................7

CONCLUSION ..........................................................................................................11

## INTRODUCTION

Plaintiff and Defendants are both in the business of supplying aviation ground support equipment for commercial and military projects. The parties' relationship extends back to 2011, but that relationship has soured, resulting in this litigation. Plaintiff brings various claims against Defendants alleging misappropriation of trade secrets, unfair competition and violations of the Lanham Act, breach of contract, defamation, and tortious interference. Additional relevant facts are recited in Defendants' Motion for Summary Judgement, filed contemporaneously herewith. ECF No. 126

Plaintiffs retained Duski to provide an expert opinion as to JBT's damages, and Duski submitted an expert report on the matter on January 10, 2019. Expert Report of David R. Duski, Ex. 17 to Defs.' Mot. Summ. J., ECF No. 129 (hereinafter, "Duski Rep"). Duski's Report offered an opinion only as to lost profits and unjust enrichment damages associated with JBT's claims for misappropriation of trade secrets and Lanham Act violations. Duski Rep. p 22, Ex. 17 to Defs.' Mot. Summ. J., ECF No. 129.

## ARGUMENT

I. Legal Standards

Federal Rule of Evidence 702 provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Rule 702 imposes upon the trial court a gatekeeper obligation to assess "whether the reasoning or methodology underlying the testimony is scientifically valid" and "whether that reasoning or methodology properly can be applied to the facts in issue." *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 592-93 (1993). The objective of *Daubert* is to make certain that an expert, "whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Atlantic Richfield Co. v. Farm Credit Bank*, 226 F.3d 1138, 1163 (10th Cir. 2000) (citing to *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999)); *Hays v. Park City Sch. Dist.*, 214 F. Supp. 3d 1162, 1188 (D. Utah Sept. 30, 2016). "[W]here [expert] testimony's factual basis, data, principles, methods, or their application are called sufficiently into question … the trial judge must determine whether the testimony has a reliable basis in the knowledge and experience of [the relevant] discipline." *Dodge v. Cotter Corp.*, 328 F.3d 1212, 1221 (10th Cir. 2003) (quoting *Kumho Tire Co.*, 526 U.S. at 149).

A trial court's focus generally should not be upon the precise conclusions reached by the expert, but on the methodology employed in reaching those conclusions. *Daubert*, 509 U.S. at 595. However, when the conclusion simply does not follow from the data, a court may conclude that there is "too great an analytical gap between the data and the opinion proffered." *GE v. Joiner*, 522 U.S. 136, 146 (1997). Under *Daubert*, "any step that renders the analysis unreliable … renders the expert's testimony inadmissible. This is true whether the step completely changes a reliable methodology or merely misapplies that methodology." *Mitchell v. Gencorp Inc.*, 165 F.3d 778, 782 (10th Cir. 1999). In determining whether an expert's testimony meets the Rule 702 standard for admissibility, the Court is free to consider concerns specific to the facts of the case at hand. *Zimmer, Inc. v. Stryker Corp.*, No. 3:14-CV-152 JD, 2018 WL 276324, at *1 (N.D. Ind. Jan. 3,

2018). "The expert's proponent bears the burden of proving by a preponderance of the evidence that the testimony satisfies Rule 702." *Id.*

II. Duski's calculation of Defendants' alleged unjust enrichment is not reliable or tailored to the claims in this case.

An expert's evidence, including a damages methodology, must be both reliable and tailored to the claims of the particular case. *See* Fed. R. Evid. 702; *Etherton v. Owners Ins. Co.*, 829 F.3d 1209, 1217 (10th Cir. 2016) ("Even if scientifically valid, the expert testimony must 'fit'—it must relate to a disputed issue in the case."); *LifeWise Master Funding v. Telebank*, 374 F.3d 917, 929 (10th Cir. 2004) (affirming district court's decision to exclude [plaintiff's] damages model on the grounds that it did not "fit the present case."). Duski's calculation of Defendants' alleged unjust enrichment is not reliable or tailored to the claims in this case because it (1) does not exclude profit attributable to factors other than Defendants' alleged wrongful acts; and (2) fails to utilize more accurate methodologies. Accordingly, Duski's testimony and expert report should be excluded.

A. Duski's calculation of BGSE's unjust enrichment does not exclude profit attributable to factors other than Defendants' alleged wrongful acts.

Damages for an unjust enrichment claim consist only of the profit attributable to a defendant's wrongdoing. *USA Power, LLC v. PacifiCorp*, 372 P.3d 629, 657 (Utah 2016). Duski's report, however, fails to exclude BGSE profits that are not attributable to Defendants' allegedly wrongful acts. For example, Duski did not exclude the usual profit margin BGSE makes in the contractor-supplier relationship that it had with Plaintiff. Duski's calculation of Defendants' alleged unjust enrichment related to the Lemoore P-328 project shows the serious flaws in his methodology.

Plaintiff alleges that it was the only company who could have supplied a compliant PC Air product to BGSE for the Lemoore P-328 project and that Defendants acted wrongfully by

providing Twist, Inc. with Plaintiff's documents to enable them to create a compliant product. Am. Compl. ¶ 56, ECF No. 99; *see, e.g.*, Duski Report p. 33, Ex. 17 to Defs.' Mot. for Summ. J. Duski's calculation of BGSE's alleged unjust enrichment for the Lemoore P-328 project is $169,280. Duski Report p. 23 and Exhibit 4 Schedule A, Ex. 17 to Defs.' Mot. for Summ. J. However, BGSE's entire gross profit margin for the Lemoore P-328 project was only $158,704. Duski's calculation of BGSE's unjust enrichment for that project would result in Plaintiff receiving more than BGSE's entire gross profit on the project. His methodology is seriously flawed because even if BGSE had used Plaintiff as a supplier for that project (as Plaintiff alleges BGSE should have done because it contends that it was the only company capable of supplying a compliant PC Air product absent any wrongful conduct by Defendants), it would have earned its usual profit as a contractor with Plaintiff as the supplier.

Duski's failure to exclude BGSE's usual profit margin that it received when it used Plaintiff as a supplier from his calculations of unjust enrichment renders his methodology unreliable. "When an expert 'ignores critical data' in forming his opinions, he fails to satisfy *Daubert*." *Zimmer, Inc. v. Stryker Corp.*, No. 3:14-CV-152 JD, 2018 WL 276324, at *6 (N.D. Ind. Jan. 3, 2018). Duski's testimony and report cannot be tailored to the claims in this case or based on sufficient facts or data when he ignores basic facts regarding which profits are attributable to Defendants' alleged wrongdoing and which profits are not. Rather than attempt to account for which profits were attributable to Defendants' alleged wrongdoing, Duski instead opted to simply calculate BGSE's profits associated with the sale of certain products and assume that all of those profits were unjustly obtained. *See, e.g.,* Duski Report p. 34, Ex. 17 to Defs.' Mot. for Summ. J. Accordingly, Duski's testimony and expert report fail to satisfy Rule 702 and *Daubert* and should be excluded.

B. Duski's calculation of BGSE's unjust enrichment fails to utilize more accurate methodologies.

Duski's failure to account for profits which are not attributable to Defendants' wrongful conduct could have been avoided if he had employed a more accurate methodology. Specifically, a more accurate methodology to calculate BGSE's alleged unjust enrichment is the cost BGSE saved by using suppliers other than Plaintiff.

As discussed above, BGSE would have earned a profit on the projects even if it had used Plaintiff as the supplier for PC Air components. Therefore, Defendants' unjust enrichment is more accurately calculated as the costs BGSE saved by using a different company as its supplier rather than Plaintiff. This methodology would properly exclude the profits BGSE would have received if it had used Plaintiff as the supplier, as Plaintiff alleges BGSE should have. This methodology would also be tailored to Plaintiff's claims, as is required by Federal Rule of Evidence 702 and the *Daubert* standard. Duski states in his report:

> JBT contends that by relying on documentation for JBT's products already installed on past hangar projects, whether with or without JBT's name, BGSE was positioning itself to be able to substitute whatever replacement product they could find, and likely generate profits above and beyond those it would otherwise earn from sales of JBT equipment.

Duski Report p. 25, Ex. 17 to Defs.' Mot. for Summ. J. (emphasis added). Similarly, Plaintiff's Amended Complaint states that "BGSE sought out a vendor for PC Air units that would … produce PC Air units at a lower cost, enabling BGSE to pocket more of the revenue." Am. Compl. ¶ 53, ECF No. 99. Plaintiff is clearly alleging that BGSE's unjust enrichment is equal to the cost it saved by using suppliers other than Plaintiff. Duski's methodology improperly includes profit that BGSE would have earned even if it had used Plaintiff as the supplier. Therefore, Duski's methodology is not reliable or tailored to Plaintiff's claims. A methodology that instead calculated Defendants' unjust enrichment as the cost BGSE saved by using suppliers other than Plaintiff

would be reliable and tailored to Plaintiff's claims. Accordingly, Duski's testimony and expert report fail to meet the standards of Rule 702 and *Daubert* and should be excluded.

III. Duski's calculation of Plaintiffs' alleged lost profits is based upon unsupported assumptions.

A lost profits measure of damages is the amount of profit lost to the plaintiff because of the defendant's wrongful conduct. *Trugreen Companies, L.L.C. v. Mower Bros., Inc.*, No. 1:06 CV 00024, 2007 WL 1696860, at *3 (D. Utah June 8, 2007). To receive lost profits damages, a plaintiff must prove (1) the fact of lost profits, (2) causation of lost profits, and (3) the amount of lost profits. *Id.* "A trier of fact may not award damages on the mere basis of conjecture and speculation." *Zimmer, Inc. v. Stryker Corp.*, No. 3:14-CV-152 JD, 2018 WL 276324, at *1 (N.D. Ind. Jan. 3, 2018). Here, Duski calculated Plaintiff's damages using a lost profits methodology for three projects on which Plaintiff alleges it should have been awarded an opportunity to supply PC Air components. Duski Report pp. 23, 33-34, 39-40, 45-46, 69, Appendix A, Ex. 17 to Defs.' Mot. for Summ. J.

Duski's lost profits methodology for calculating Plaintiff's damages is unreliable and not tailored to Plaintiff's claims. As an initial matter, Plaintiffs cannot prove (1) the fact of lost profits, (2) causation of lost profits, or (3) the amount of actually lost profits because Plaintiff mitigated its damages by using the resources that would have been required to supply BGSE with PC Air components on the three projects to generate and earn other sales.

More damaging to the reliability of Duski's testimony and report, Duski's lost profits methodology relies on unsupported assumptions about the capabilities of Plaintiff's competitors in an attempt to establish that "but for" Defendants' alleged wrongful conduct, Plaintiff would have been BGSE's supplier for the three projects. While Duski is permitted to assume liability in his report, he is not permitted to assume that damages are a consequence of Defendants' wrongful

conduct rather than some other factor. *Zimmer*, 2018 WL 276324, at *1. ("But even assuming [plaintiff] can prove causation at trial, it 'must still establish that it is reasonably certain that the damages it seeks are a consequence of the breach, not some other factor.'") (quoting *Elorac, Inc. v. Sanofi-Aventis Canada, Inc.*, No. 14 C 1859, 2017 WL 3592775, at *16 n. 6 (N.D. Ill. Aug. 21, 2017) (excluding plaintiff's damages expert's opinion for failing to connect damages to alleged breach despite the presence of other witnesses that could testify as to causation.)). "[I]f the 'principal assumptions' underlying [a damages expert's] opinions lack the reliability expected by experts in the field, his lost profits calculations do not satisfy Rule 702." *Id.* at *1.

In *Zimmer*, the Federal District Court for the Northern District of Indiana excluded the testimony and report of the plaintiff's damages expert for making the same mistake that Duski makes here – "confus[ing] the question of whether Defendants may have 'caused' a violation of the non-compete agreements with the question of whether Defendants' violations of the agreements, assuming they happened, 'caused' [plaintiff's] damages; [a damages expert] can assume the first kind of causation, but not the second." *Id.* The court reasoned that the damages expert skipped the crucial first step of an expert damages opinion by "provid[ing] no explanation of how to distinguish lost profits that resulted from Defendants' alleged wrongdoing… from lost profits that resulted" from other factors. *Id.*

Duski's opinion on Plaintiff's lost profits damages assumes that BGSE could not have rightfully used a supplier other than Plaintiff. *See, e.g.*, Duski Report p. 33, Ex. 17 to Defs.' Mot. for Summ. J. ("I have not seen any evidence of proposals submitted from other manufacturers of PC Air to BGSE which would have been compliant with the approved specifications. Therefore, it is reasonable to conclude that, 'but for' the Defendants' unlawful acts, BGSE would have had to purchase compliant PC Air units from JBT to fulfill its award."). Duski is not an engineer, nor

is he an expert on PC Air products and their compliance with certain specifications. Duski Dep. p. 51:16-23, Ex. 15 to Defs.' Mot. for Summ. J. He did not rely on the opinion of an expert qualified to make such an assessment. *Id.* His statement that he has "not seen any evidence" of compliant products from other companies is undermined by the fact that he did not attempt to undertake any investigation to determine if this assumption was true:

> Q: Do you know if there were other competitors out there that supplied compliant products?
>
> A: Not during the time period at issue for these three particular projects.
>
> Q: Have you heard of FCX?
>
> A: I have. I believe that was one of Mr. Bullerdick's former employers.
>
> Q: Do you have an understanding as to whether or not they had a compliant product at the time of these three projects?
>
> A: My understanding is that only JBT did, and I've seen no evidence, documentation, or testimony in this matter that suggested FCX had a compliant product at the time that would have met the specifications.
>
> Q: So, your understanding that FCX did not have a compliant product comes entirely from JBT?
>
> A: It comes from the volume of discovery and evidence that I've reviewed in this matter, not just from a discussion.
>
> …
>
> Q: You did not independently go look at any FCX marketing materials as to what their products were at this time?
>
> A: No, and I don't think it would have been beneficial for me to do so because I would have no way of knowing what those products are and if they would be compliant since I'm not an engineer.
>
> Q: And so, if you – if you happen to see a document from FCX that was advertising some sort of PC Air unit or ground power unit, you wouldn't necessarily know that that's compliant or not?
>
> A: That's correct.

> Q: Okay. So, when you said you've not seen anything to suggest that they did have a compliant product, what you're really saying is that Mr. Webb at JBT never told – he didn't say anything about them having a compliant product, and you've not seen any document that says, hey, FCX has a compliant product?
>
> A: That would be true.

Duski Dep. pp. 49:10-52:12, Ex. 15 to Defs.' Mot. for Summ. J., ECF No. 129. Duski's assumption that Plaintiff was the only supplier in existence who could have provided compliant PC Air products is unsupported and, to the extent that this assumption is unsupported, so too is his calculation of Plaintiff's alleged lost profits. The fact that Plaintiff may have other witnesses through which it intends to prove liability at trial is insufficient to validate an expert whose testimony and report effectively assumes causation by relying on an unsupported assumption that Plaintiff was the only company who could have provided BGSE with compliant PC Air products for the three projects. Therefore, Duski's methodology for calculating Plaintiff's lost profits is unreliable, not tailored to Plaintiff's claims, and based on insufficient data. Accordingly, Duski's testimony and expert report fail to meet the standards set by Rule 702 and *Daubert* and should be excluded.

## CONCLUSION

For the reasons stated above, Defendants respectfully request that the Court exclude the testimony and expert report of David R. Duski.

This the 19th day of April, 2019.

/s/ Edward B. Davis
Edward B. Davis
BELL, DAVIS & PITT, P.A.

*Counsel for Defendants*

**CERTIFICATE OF SERVICE**

I hereby certify that I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification to all counsel of record in the system.

This the 18th day of April, 2019.

/s/ Edward B. Davis