David P. Billings (UT # 11510)
Robert G. Crockett (UT # 12067)
**FABIAN VANCOTT**
215 South State Street, Suite 1200
Salt Lake City, UT 84111-2323
Telephone: (801) 531-8900
Facsimile: (801) 596-2814f
rcrockett@fabianvancott.com
dbillings@fabianvancott.com

Harry N. Arger *(pro hac vice)*
Steven McMahon Zeller *(pro hac vice)*
**DYKEMA GOSSETT PLLC**
10 S. Wacker Drive, Suite 2300
Chicago, IL 60606
Telephone: (312) 876-1700
Facsimile:   (312) 876-1155
harger@dykema.com
szeller@dykema.com

*Attorneys for John Bean Technologies Corporation*

**IN THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH, CENTRAL DIVISION**

| | |
|---|---|
| JOHN BEAN TECHNOLOGIES CORPORATION, a Delaware corporation,<br><br>Plaintiff-Counterdefendant,<br><br>v.<br><br>BGSE GROUP, LLC, a North Carolina limited liability company, and BRYAN BULLERDICK, an individual,<br><br>Defendants-Counterclaimants. | Case No. 1:17-cv-00142-RJS-EJF<br><br>Judge: Robert J. Shelby<br><br>Magistrate Judge: Evelyn J. Furse<br><br>**PLAINTIFF'S MOTION TO BAR THE TESTIMONY OF NICHOLAS R. HARRIS** |

**PLAINTIFF'S MOTION TO BAR THE TESTIMONY OF NICHOLAS R. HARRIS**

John Bean Technologies Corporation ("JBT"), by and through its undersigned counsel, respectfully submits this motion to bar the testimony of Nicholas R. Harris, in whole or in part.

**INTRODUCTION**

Defendant's expert witness, Nicholas Harris, should be barred from testifying because his conclusions are based on speculation and conjecture, not fact. Instead of relying or basing his opinions on hard data, Harris's report draws conclusions on what "may" or "could" happen in the event that several presumptions come to pass. *See* Report of Nicholas R. Harris ("Harris Report"), attached as **Exhibit A**, Moreover, he unduly and solely relies on the word of Defendant Bullerdick to support significant portions of the bases of his opinions, without any underlying

support in the record. In addition, Harris offers new opinions in his Supplemental Rebuttal Report that are untimely because they were not previously disclosed and rely on data and methodology that were available to him at the time of his first report. *See* Supplement Report of Nichola R. Harris ("Harris Supp. Report), attached as **Exhibit B**.

## ARGUMENT

Expert testimony must be "based on sufficient facts or data, and the product of reliable principles and methods that are reliably applied in the case." Fed. R. Evid. 702. This Court must ensure that an expert's testimony rests on a reliable foundation. *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 597 (1993); *United States v. Nacchio*, 555 F. 3d 1234, 1241-42 (10th Cir. 2009).

    **A.**    **Harris's Opinions are Based on Conjecture and Unreliable.**

Harris criticizes Duski's calculations of BGSE's profits for failing to account for all alleged costs incurred by BGSE. However, in his fist report, Harris makes no attempt to quantify those deficiencies, relying instead only on a few general examples of alleged additional costs. Importantly, Harris did not speak with any accountants or bookkeepers at BGSE for his report. *See* Transcript of Deposition of Nicholas R. Harris ("Harris Trans."), attached as **Exhibit C**, p. 22, ll. 4-10. Instead, he based his opinions on conversations with Defendant Bullerdick, in which Bullerdick himself made unsupported statements. *See, e.g.,* Harris Dep., p. 34, l. 21 – p. 36, l. 5.

The Lanham Act requires that "[i]n assessing profits [of the defendant,] the plaintiff shall be required to prove defendant's sales only; defendant must prove all elements of cost or deduction claimed." 15 U.S.C. § 1117(a). Harris's opinions are not detailed enough to actually prove the claimed costs and the underlying basis for his opinions are themselves unreliable. For example, Harris states that BGSE incurred costs on one product due to hurricane: "I understand from Mr. Bullerdick that the actual incremental costs that BGSE incurred on the Projects were

2

generally higher than the Project Estimates reflect. For example, I understand from Mr. Bullerdick that the Beaufort P-464 project was disrupted by a hurricane. That caused actual costs to exceed estimates." Harris Report at 13-14. Harris did not review anything and his only support was his discussion with Bullerdick. Harris Dep., p. 61, lines 16-19; Harris Report at 13-14, footnote 54. Harris did not corroborate any of Bullerdick's statements with documents or financial records of BGSE, and further failed to ask what hurricane it was, when it took place, or how much the added costs allegedly were. Harris Dep., p. 59, lines 11-15, p. 60, lines 23-25. Nor did Bullerdick provide Harris with any specifics. Harris Dep., p. 61, lines 11-15. Harris was not even provided with any documents that could substantiate the claim. Harris Dep., p. 28, ll. 2-25.

Harris's other opinions on additional costs are pure guesswork and he admits he has not reviewed any data: "Examples of excluded costs *may* include warranty coverage work and the significant time dedicated to preparing bids and submittals. These costs *would* further reduce Mr. Duski's calculation of BGSE's alleged unjust enrichment. I have not seen the necessary BGSE accounting records to calculate that deduction." Harris Report at 13 (emphasis added). Harris points to no specific data, let alone documents, supporting his view that Duski's calculations exclude costs. Harris Dep., p. 63, lines 4-14.

Harris continued his unsupported criticisms in his Supplemental Report, claiming that "direct project-related costs" should be deducted from Duski's calculations. According to Harris, these alleged costs include (1) increased material and labor costs, (2) BGSE's direct labor, (3) commissions, (4) travel expenses, and (5) other direct costs. Harris Supp. Report, pp. 8-10. However, Harris again merely speculates what additional costs BGSE may have incurred. It is improper for Harris to argue that additional costs should be deducted when he is unable to provide a reliable quantification of such amounts or support for any costs at all.

Harris also fails to provide any foundation for his opinion that some of BGSE's profits are attributable to other lawful factors. Harris states that "some of those alleged damages may still be attributable to factors other than Defendants' alleged wrongful acts." Harris Report at 19. Instead of providing a reliable basis to apportion BGSE's profits, Harris only cites examples of work conducted by other parties toward independently developing their own technology without any basis for his position that anyone other than JBT had done this kind of work. *Id.* In fact, he states he is "unaware of any analysis performed to determine the progress of those developments …." *Id.* Given that Harris is unaware of the progress of any such developments, he is not in a position to quantify the alleged amount of BGSE's profits they represent. Any estimate would be pure guesswork. Harris should be barred from testifying regarding any "potential" profit apportionment when he failed to provide a reliable method for doing so.

  **B.**   **Harris's New Opinions Are Untimely.**

Harris's Supplemental Report provides a new analysis of BGSE's alleged actual profits based on a new method not previously disclosed in his first report. This new analysis attempts to apply an imputed incremental profit margin derived from BGSE company-wide financial statements to BGSE's revenue earned from projects in question. Harris Supp. Report, pp. 10-11.

This analysis attempts to "correct" Mr. Duski's analysis which Mr. Duski disclosed in his first report in January 2019. Harris states that he "prepared a comparable analysis [to Mr. Duski's] that better accounts for BGSE's actual profit on the same scope of work." Harris Supp. Report, p.11. The financial data he relies on for this new analysis was available at the time of his first rebuttal report. Harris could have, but chose not to, provide this alternative calculation as part of his first rebuttal report. In fact, he testified that he asked for documents that would assist him in quantifying certain incremental costs but he never received them. Harris Dep., p. 28, lines 2-25. He was deposed on his first report and it is now too late for him to add new opinions.

4

Expert disclosures must contain "a complete statement of all opinions the witness will express…." Fed. R. Civ. P. 26(a)(2)(B)(i). While supplementation is permissible, that "means correcting inaccuracies, or filling the interstices of an incomplete report based on information *that was not available at the time of the initial disclosure*." *Diaz v. Con-Way Truckload, Inc.*, 279 F.R.D. 412, 421 (S.D. Tex. 2012) (emphasis in original) (internal quotations and citations omitted). Harris's new opinions should be excluded.

### C.  Harris Should be Barred from Offering Any Opinions Inconsistent with the Court's Summary Judgment Opinion and Order.

Many of Harris's opinions are reliant on a specific ruling by the trier of fact. For example, Harris criticizes Duski's lost profits calculation for assuming that JBT's "trade secrets … could not have been rightfully reverse engineered," and further stating that "Defendants could have potentially obtained JBT's alleged trade secrets from public sources." Harris Report at 27. However, those statements, as well as others, are directly contrary to this Court's finding that Defendants misappropriated JBT's trade secrets. Accordingly, Harris should be prohibited from providing any opinion contrary to, or inconsistent with, this Court's Summary Judgment Memorandum.

WHEREFORE, the testimony of Nicholas R. Harris should be barred.

Dated:  November 17, 2021　　　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　　　　　By:/s/  *Steven McMahon Zeller*
　　　　　　　　　　　　　　　　　　　　　　　Steven McMahon Zeller
　　　　　　　　　　　　　　　　　　　　　　　One of the Attorneys for Plaintiff-
　　　　　　　　　　　　　　　　　　　　　　　Counterdefendant

　　　　　　　　　　　　　　　　　　　　　　　David P. Billings
　　　　　　　　　　　　　　　　　　　　　　　Robert G. Crockett
　　　　　　　　　　　　　　　　　　　　　　　FABIAN VANCOTT

　　　　　　　　　　　　　　　　　　　　　　　Harry N. Arger
　　　　　　　　　　　　　　　　　　　　　　　Steven McMahon Zeller
　　　　　　　　　　　　　　　　　　　　　　　DYKEMA GOSSETT PLLC
　　　　　　　　　　　　　　　　　　　　　　　*Counsel for Plaintiff-Counterdefendant*

6

## **CERTIFICATE OF SERVICE**

      I hereby certify that on November 17, 2021, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification to all counsel of record in the system.

                                                            /s/ *Steven McMahon Zeller*

4887-1751-5009.5