# EXHIBIT A

**IN THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH, NORTHERN DIVISION**

---

**JOHN BEAN TECHNOLOGIES CORPORATION**
**Plaintiff,**

**v.**

**B GSE GROUP, LLC AND BRYAN BULLERDICK**
**Defendant,**

**CIVIL ACTION NO: 1:17-CV-00142-RJS**

---

**EXPERT REBUTTAL REPORT OF NICHOLAS R. HARRIS**

**FEBRUARY 14, 2019**

**CONFIDENTIAL INFORMATION
ATTORNEYS EYES ONLY
SUBJECT TO PROTECTIVE ORDER**

_____
Nick R. Harris, CPA/ABV, CFA, CFE
Senior Manager, Litigation & Valuation Services
GreerWalker LLP

# TABLE OF CONTENTS

I.     **QUALIFICATIONS** ........................................................................................... 1

II.    **INTRODUCTION AND SCOPE OF ENGAGEMENT** ............................................. 1

III.   **SUMMARY OF MR. DUSKI'S OPINIONS** ....................................................... 2

IV.   **SUMMARY OF OPINIONS** ........................................................................... 4

V.     **BACKGROUND** ........................................................................................ 6

      A.     JBT's Claims ...................................................................................... 6

      B.     Mr. Bullerdick and BGSE's Counterclaims ....................................... 8

      C.     Preliminary Injunction ....................................................................... 9

VI.   **DETAILED DISCUSSION OF OPINIONS** ...................................................... 10

      A.     Mr. Duski's calculation of BGSE's alleged unjust enrichment is overstated. ............. 10

            *1.     Mr. Duski's calculation of BGSE's alleged unjust enrichment should be reduced to exclude profit attributable to factors other than Defendants' alleged wrongful acts.* ............................................................................ 11

            *2.     Mr. Duski's calculation of BGSE's alleged unjust enrichment should be reduced by BGSE's incremental costs that Mr. Duski failed to include in his analysis.* ............................................................................................. 12

            *3.     Mr. Duski's calculation of BGSE's alleged unjust enrichment should be reduced to reflect actual profit that BGSE earned or received.* ................................ 15

      B.     BGSE's alleged unjust enrichment is more accurately calculated using methods that Mr. Duski did not provide. ....................................................................... 15

            *1.     BGSE's unjust enrichment that JBT alleges is the cost that BGSE saved by using suppliers other than JBT.* ........................................................... 16

            *2.     Alternatively, BGSE's alleged unjust enrichment can be quantified as the cost that BGSE avoided because of Defendants' alleged wrongful acts.* .......................... 19

      C.     Mr. Duski's opinion of JBT's alleged damages related to unfair competition and/or trademark infringement, if awarded, would compensate JBT for approximately $150,000 of the same alleged damages twice. ......................................................... 20

      D.     Even after adjusting for would-be double-recovery, Mr. Duski's opinion of JBT's alleged lost profits is based upon unsupported assumptions. ..................................... 23

            *1.     Mr. Duski failed to adequately demonstrate that Defendants' alleged wrongful acts caused JBT to suffer any lost profits.* .................................................. 23

            *2.     Mr. Duski failed to adequately demonstrate that JBT would have earned the alleged lost revenue that he calculated.* .......................................................... 25

      E.     Mr. Duski failed to apportion JBT's alleged damages between BGSE and other parties not named in this matter. ...................................................................... 28

      F.     Mr. Duski failed to apportion any damages to certain JBT claims. ........................... 29

            *1.     JBT's Federal Trademark Infringement Claim* .................................................. 29

            *2.     JBT's Breach of Contract, Defamation and Tortious Interference Claims* ........... 30

VII.  **INFORMATION RELIED UPON** ................................................................ 30

VIII. **COMPENSATION** .................................................................................. 30

## I.    Qualifications

I am a Senior Manager in the Litigation Support, Forensic Accounting and Business Valuation practice area with GreerWalker LLP ("GreerWalker").  GreerWalker is a North and South Carolina based public accounting and business advisory firm.  I hold a Bachelor of Business Administration from the University of Michigan.  I am a Certified Public Accountant ("CPA") Accredited in Business Valuation ("ABV") in North Carolina.  I hold the Chartered Financial Analyst ("CFA") charter and I am a Certified Fraud Examiner ("CFE").  My curriculum vitae is included with this report as **Appendix A**.  It includes a summary of my professional experience, expert testimony history, and selected litigation, forensic, and business valuation experience.

I have ten years of experience in forensic accounting including the valuation of damages in commercial disputes.  I have valued damages related to claims for breach of contract, misappropriation of trade secrets, unfair and deceptive trade practices, tortious interference, and others.  I have prepared expert reports and/or testified as an expert witness in state and federal court.

## II.    Introduction and Scope of Engagement

GreerWalker was retained by Bell, Davis & Pitt, PA ("BDP"), counsel for B GSE Group, LLC ("BGSE") and Bryan Bullerdick ("Mr. Bullerdick") (collectively, "Defendants") to analyze and critique the damages alleged by John Bean Technologies Corporation ("JBT" or "Plaintiff") in the Expert Report of David R. Duski (the "Duski Report" or "Mr. Duski") dated January 10, 2019.  If necessary and requested, I will respond to Mr. Duski's amended opinions, conclusions, findings, or reports.  I may also respond to other witnesses called or designated by JBT.  Such responses may not be limited to the topics included in this report.  If requested by BDP, I will testify at deposition and trial.

I understand that Defendants allege damages resulting from JBT's alleged wrongful acts, i.e., Defendants' counterclaims.  I did not address Defendants' counterclaims in this report.

I have personally supervised and reviewed the work performed by staff working with me on this matter.  When used in this report, "I" refers to me and my staff working under my direct supervision and control.

## III.   Summary of Mr. Duski's Opinions

Figure 1 below summarizes Mr. Duski's opinion of JBT's lost profits and BGSE's unjust enrichment assuming JBT prevails on some or all of its claims in this matter.[1]

**Figure 1**
**Mr. Duski's Summary of JBT Alleged Damages[2]**

| Project | JBT Lost Profits | BGSE Unjust Enrichment |
|---|---|---|
| Lemoore P-328 | $    99,581 | $    169,280 |
| Beaufort P-465 | 44,738 | 27,264 |
| Kadena P-803 | 61,932 | 192,945 |
| Lemoore P-378 | - | 337,667 |
| Beaufort P-464 | - | 442,550 |
| Eielson EIE-376 | - | 186,200 |
| Burlington B-795 | - | 162,670 |
| Eielson EIE-378 | - | 163,352 |
| Total | $    206,251 | $    1,681,928 |

As shown in Figure 1, Mr. Duski's calculation is based upon eight projects in which BGSE was involved (collectively, the "Projects").  Furthermore, Mr. Duski's report summarizes his understanding of JBT's claims by Project as shown in Figure 2 below.

**Figure 2**
**Mr. Duski's Summary of JBT Claims by Project[3]**

| Project | Trade Secret Misappropriation | Unfair Competition | Trademark Infringement |
|---|---|---|---|
| Lemoore P-328 | X | X | X |
| Beaufort P-465 | X | X | X |
| Kadena P-803 | X | X | X |
| Lemoore P-378 | | X | X |
| Beaufort P-464 | | X | X |
| Eielson EIE-376 | | X | X |
| Burlington B-795 | | X | X |
| Eielson EIE-378 | | X | X |

---

[1] In his report, Mr. Duski uses the term unjust enrichment to describe JBT's alleged disgorgement damages.  I use the terms unjust enrichment and disgorgement interchangeably throughout this report to describe the same.  Duski Report, pp. 22-23.
[2] Duski Report, p. 23.
[3] Duski Report, p. 24.

Per Mr. Duski's report, if JBT prevails on its claims for unfair competition, his opinion of JBT's alleged damages includes JBT's lost profit and disgorgement of BGSE's unjust enrichment.[4]  However, if JBT prevails on its claims for misappropriation of trade secrets, and not unfair competition, then Mr. Duski's opinion of JBT's alleged damages includes the greater of disgorgement of BGSE's unjust enrichment or JBT's lost profits for each Project.[5]

Mr. Duski's report does not apportion any damages specifically to JBT's breach of contract, defamation, or tortious interference claims.  It is unclear from his report whether Mr. Duski's opinion of JBT's alleged damages is based upon any of those claims.

Related to JBT's claim for trademark infringement, Mr. Duski states, "… if BGSE is found liable for violation(s) of the Lanham Act (including trademark infringement), JBT may be entitled to recover BGSE's profits/unjust enrichment."[6]  He then refers to his calculation of BGSE's alleged unjust enrichment related to JBT's claims for misappropriation of trade secrets and unfair competition.

---

[4] Duski Report pp. 23, 24, 35, 41, and 47.
[5] Duski Report, pp. 35, 41, and 47.
[6] Duski Report, p. 68.

## IV.   Summary of Opinions

Mr. Duski's calculation of BGSE's alleged unjust enrichment is overstated.  Mr. Duski indicates as much, stating that Defendants "must prove" all "elements of cost or deduction."[7] Specifically, Mr. Duski's opinion of BGSE's alleged unjust enrichment includes (1) BGSE profits attributable to factors other than Defendants' alleged wrongful acts, (2) incremental costs incurred by BGSE that Mr. Duski failed to include in his analysis, and (3) estimated profit that BGSE may not have earned or received.  At a minimum, Mr. Duski's calculation of BGSE's alleged unjust enrichment should be reduced by these three "elements."

Meanwhile, Mr. Duski failed to adequately demonstrate that BGSE's revenue was impacted by Defendants' alleged wrongful acts.  As such, BGSE's incremental profit (i.e., unjust enrichment) associated with Defendants' alleged wrongful acts is limited to the costs that it saved or avoided therefrom.  That amount can be more accurately calculated using either of two methods that Mr. Duski did not provide.  The first identifies the cost that BGSE allegedly saved by using suppliers other than JBT.  That approach reflects the damages JBT describes in its First Amended Complaint.  The second identifies the cost that BGSE may have avoided because of Defendants' alleged wrongful acts.  That can be estimated using the costs that JBT incurred in developing any documents and information that BGSE wrongfully used.

Mr. Duski's calculation of JBT's alleged lost profit is also overstated.  Specifically, it overlaps with his calculation of BGSE's alleged unjust enrichment.  In other words, if both amounts are awarded, then JBT would receive those alleged damages twice.  Even after removing this would-be double-recovery, Mr. Duski's opinion of JBT's alleged lost profits is based upon unsupported assumptions.

Table 1 below summarizes deductions that should be made to Mr. Duski's opinion.  As Table 1 shows, some of these items could not be quantified at this time.  I will update my analysis if the necessary documents and information become available, and time permits.

Additionally, Mr. Duski failed to apportion JBT's alleged damages between BGSE and other parties not named in this matter, and failed to apportion any damages to certain JBT claims.

These summary opinions are discussed in more detail in the Detailed Discussion of Opinions Section below.

---

[7] Duski Report, p. 24.

**Table 1**
**Mr. Duski's Opinion of JBT's Alleged Damages Adjusted[8]**

| Project / Description | Applicable Claims Per Duski Report | |
| --- | --- | --- |
| | **Trade Secret Misappropriation Only** | **Unfair Competition** |
| | Higher of JBT Lost Profits or BGSE Unjust Enrichment | JBT Lost Profits and BGSE Unjust Enrichment |
| Lemoore P-328 | $ 169,280 | $ 268,861 |
| Beaufort P-465 | 44,738 | 72,002 |
| Kadena P-803 | 192,945 | 254,877 |
| Lemoore P-378 | - | 337,667 |
| Beaufort P-464 | - | 442,550 |
| Eielson EIE-376 | - | 186,200 |
| Burlington B-795 | - | 162,670 |
| Eielson EIE-378 | - | 163,352 |
| Total JBT Damages Per Mr. Duski | 406,963 | 1,888,179 |
| **Deductions to Mr. Duski's Analysis:** | | |
| Profit BGSE Would Have Earned | (219,453) | (1,117,585) |
| Overlap Between Lost Profit and Disgorgement | N/A | (149,979) |
| Subtotal After Quantifiable Deductions | 187,510 | 620,615 |
| Remaining Alleged Lost Profits | (187,510) | (56,272) |
| Subtotal After Quantifiable Deductions with Alleged Lost Profits Removed | - | 564,343 |
| Actual / Additional Incremental Costs | TBD | TBD |
| Profit Not Earned or Received by BGSE | TBD | TBD |
| **Total** | **TBD** | **TBD** |

---

[8] See Duski Report, pp. 23, 35, 41, and 47 for Mr. Duski's opinion of JBT alleged damages by claim and project.  See Table 3 for Profit BGSE Would Have Earned.  See Attachment 2 for Overlap Between Lost Profit and Disgorgement.

## V.   Background

The following sub-sections state the parties' claims and allegations as stated in the parties' respective pleadings.  Additional background on this matter can be found in the pleadings and related documents.

### A.  JBT's Claims

JBT, through its Aerotech division, is a manufacturer and supplier of ground support equipment and services for the air transportation industry worldwide.[9]  Jetway® Systems, a business unit of JBT's Aerotech division, is a manufacturer of fixed and mobile preconditioned air ("PC Air") units sold under the Jetaire® brand.[10]  In addition, the Jetway® Systems business unit is also a manufacturer of fixed and mobile ground power unit ("GPU") systems, sold under the Jetpower® brand, for commercial and military aircrafts both domestically and internationally.[11]  JBT has manufactured, sold, and serviced Jetaire® units and Jetpower® systems to the United States and foreign military installations since at least 2003.[12]

In December of 2010, Mr. Bullerdick started Bullerdick GSE LLC for the purpose of designing, installing, and servicing GSE systems to meet the power and air requirements for military and commercial aircraft including service pits integrating multiple items of ground support equipment ("GSE").[13]  Bullerdick GSE LLC eventually merged into B GSE Group, LLC ("BGSE").[14]  For a time, BGSE was an authorized distributer of JBT's Jetaire® units and Jetpower® systems for military and civilian installations.[15]

On April 1, 2011,[16] Mr. Bullerdick joined JBT as an employee working primarily to expand JBT's presence in the military GSE market with a particular emphasis on power and air supply management.[17]  On April 1, 2014, after three years of working as an employee for the company, Bullerdick resigned from employment with JBT.[18]  Per JBT, Mr. Bullerdick was given the option to either resign from JBT or be terminated for cause.[19]  Per Defendants, Mr. Bullerdick's

---

[9] First Amended Complaint, paragraph 2.
[10] First Amended Complaint, paragraph 2.
[11] First Amended Complaint, paragraph 2.
[12] First Amended Complaint, paragraph 3.
[13] Defendants' Answer to Plaintiff's First Amended Complaint and Counterclaims, paragraph 13.
[14] Defendants' Answer to Plaintiff's First Amended Complaint and Counterclaims, paragraph 13.
[15] First Amended Complaint, paragraph 8.
[16] The First Amended Complaint states Mr. Bullerdick's employment began on March 28, 2011.  See First Amended Complaint, paragraph 25.
[17] Defendants' Answer to Plaintiff's First Amended Complaint and Counterclaims, paragraph 15.
[18] Defendants' Answer to Plaintiff's First Amended Complaint and Counterclaims, paragraph 17.
[19] First Amended Complaint, paragraph 26.

resignation was a mutual decision between Mr. Bullerdick and JBT intended to allow Mr. Bullerdick to focus on growing BGSE's business to increase sales of JBT equipment.[20] Thereafter, BGSE was a reseller of JBT's products, until JBT stopped selling its products to BGSE.[21]

JBT is alleging that Defendants misappropriated and infringed upon JBT's intellectual property.[22]  In addition, JBT further alleges that Defendants:

- Provided JBT's trade secrets and confidential and proprietary information to at least two JBT competitors;

- Engaged in unfair business practices;

- Defamed JBT in the marketplace;

- Tortuously interfered with JBT's business relationships; and

- Breached several contracts. [23]

Based on these and other allegations, JBT is asserting the following claims: (1) Federal Misappropriation of Trade Secrets against all Defendants; (2) State Misappropriation of Trade Secrets against all Defendants; (3) Federal Unfair Competition and False Designation of Origin against BGSE; (4) Federal Unfair Competition and False Advertising against BGSE; (5) Federal Trademark Infringement against BGSE; (6) Breach of Contract – The 2011 Confidentiality Agreement against Mr. Bullerdick; (7) Breach of Contract – The 2011 NDA against BGSE; (8) Breach of Contract – The 2012 Distributorship Agreement against BGSE; (9) Defamation against all Defendants; (10) Tortious Interference against all Defendants.[24]  Defendants deny any violations of federal or state law as a result of theft, misappropriation, or infringement of JBT intellectual property.[25]

---

[20] Defendants' Answer to Plaintiff's First Amended Complaint and Counterclaims, paragraph 18.
[21] First Amended Complaint, paragraph 8.
[22] First Amended Complaint, paragraph 1.
[23] First Amended Complaint, paragraph 1.
[24] First Amended Complaint, pp. 37, 39-40, 42-47.  JBT's First Amended Complaint does not mention Mr. Bullerdick within its third, fourth, fifth, seventh, and eighth asserted claims. JBT's First Amended Complaint does not mention BGSE in its sixth asserted claim.
[25] Defendants' Answer to Plaintiff's First Amended Complaint and Counterclaims, paragraph 1.

## B. Mr. Bullerdick and BGSE's Counterclaims

In 2014 and 2015, the United States Navy, through the Naval Air Warfare Center Aircraft Division at Lakehurst, NJ ("Lakehurst"), sought bids for a project to provide shipboard mobile electric power plant (SMEPP) vehicles for Navy ships.[26]  The original bid request contained a Small Business Set Aside requirement that allegedly precluded JBT from submitting a bid.[27] Defendants allege that JBT knew about BGSE's intended bid for the project, and improperly leveraged their relationship with BGSE by providing misrepresented information.[28]  BGSE alleges that it relied upon these misrepresentations and was unable to submit a bid to the Navy within the deadline, resulting in the loss of the contract.[29]

BGSE alleges that it would have won this contract had JBT not misrepresented its true intentions since the Navy received no other conforming bids.[30]  After receiving no conforming bids, the Navy removed its provision for Small Business Set Aside requirement.[31]  That allowed JBT to directly bid on the project.[32]  Then, JBT allegedly undercut BGSE's bid and was awarded the SMEPP contract with a maximum value of $20 million.[33]

In addition, the Defendants allege that JBT has used this litigation as a means of interfering with BGSE's business by sending copies of the cover letter and Verified Complaint to various contacts in the industry.[34]

Defendants assert counterclaims against JBT as follows: (1) Declaratory Judgment; (2) Tortious Interference; (3) Negligent Misrepresentation; (4) Defamation; (5) Unfair or Deceptive Trade Practices.[35]

---

[26] Defendants' Answer to Plaintiff's First Amended Complaint and Counterclaims, paragraph 40.
[27] Defendants' Answer to Plaintiff's First Amended Complaint and Counterclaims, paragraph 41.
[28] Defendants' Answer to Plaintiff's First Amended Complaint and Counterclaims, paragraphs 43-44.
[29] Defendants' Answer to Plaintiff's First Amended Complaint and Counterclaims, paragraph 45.
[30] Defendants' Answer to Plaintiff's First Amended Complaint and Counterclaims, paragraph 46.
[31] Defendants' Answer to Plaintiff's First Amended Complaint and Counterclaims, paragraph 47.
[32] Defendants' Answer to Plaintiff's First Amended Complaint and Counterclaims, paragraph 47.
[33] Defendants' Answer to Plaintiff's First Amended Complaint and Counterclaims, paragraph 48.
[34] Defendants' Answer to Plaintiff's First Amended Complaint and Counterclaims, paragraphs 54-55.
[35] Defendants' Answer to Plaintiff's First Amended Complaint and Counterclaims, pp. 29-33.  As ordered on September 25, 2018, the Defendants' counterclaim for the Utah Truth in Advertising Act was dismissed. See Minute Order entered on September 25, 2018.

### C. Preliminary Injunction

On September 20, 2017, the court ordered a Preliminary Injunction that:

- Restrained Defendants from acquiring, using, or disclosing JBT's trade secrets or other confidential documents, data, or information;

- Ordered Defendants to:

    o Account for and return to JBT all JBT trade secrets and/or other confidential documents, data, or information in their possession, custody, or control, including copies thereof, whether any such documents are in hard copy or electronic form;

    o Remove all JBT trademarks and other JBT intellectual property from the website www.bullerdickgse.com, and all other websites within their control, including but not limited to the metadata on such websites, and shall account for all such removal actions;

    o Account for any and all altered or modified JBT documents that Mr. Bullerdick or BGSE provided to any contractor, sub-contractor, military office, or other government entity or agency;

- Ordered Defendants to refrain from:

    o Claiming proprietary ownership rights in JBT equipment or representing any present ability to design, manufacture, or directly supply JBT; and

    o Using any of JBT's marks, names, trade dress or product depictions, or any other language stating, suggesting or likely to cause the appearance of any relationship between BGSE and JBT. [36]

---

[36] Order Entering into Preliminary Injunction, dated September 20, 2017.

## VI.   Detailed Discussion of Opinions

### A.  Mr. Duski's calculation of BGSE's alleged unjust enrichment is overstated.

The American Institute of Certified Public Accountants ("AICPA") provides a practice aid titled Calculating Lost Profits ("AICPA Lost Profits Practice Aid").  It discusses the calculation of a defendants alleged unjust enrichment and states, "In some jurisdictions (and for some causes of action) … the defendant has the burden to prove both the costs incurred in generating the [disgorgement] revenues as well as apportioning the [disgorgement] profits between the misappropriation and other profit generators."[37]  In my experience, based on this or similar guidance, plaintiffs' damages experts often do not reduce their calculation of a defendant's alleged unjust enrichment by both "the costs incurred in generating the revenues" and profits attributable to "other profit generators."

Similarly, Mr. Duski's opinion of JBT's alleged damages does not account for "elements of cost or deduction" that Mr. Duski reserves for Defendants to "prove."  That is, Mr. Duski failed to fully account for BGSE's "costs incurred in generating the revenues" and did not apportion BGSE's profits "between the misappropriation and other profit generators."  As such, JBT's alleged damages as stated in Mr. Duski's report are incomplete and overstated.  It appears that Mr. Duski may be acknowledging this overstatement, and merely allowing the burden of proof to shift to Defendants.  That is, he specifically cites in his report the following from the Lanham Act:

> [I]n assessing profits [of the defendant,] the plaintiff shall be required to prove defendant's sales only; <u>defendant must prove all elements of cost or deduction</u> claimed.[38] (emphasis added)

At a minimum, Mr. Duski's opinion of JBT's alleged damages should be reduced by (1) BGSE profit attributable to factors other than Defendants' alleged wrongful acts (i.e., profit that BGSE would have earned even if it used JBT as a supplier), (2) incremental costs incurred by BGSE that Mr. Duski failed to include in his analysis, and (3) estimated profit that BGSE may not have earned or received.  These deductions are shown in Table 1 above and discussed in the subsections below.

---

[37] AICPA Lost Profits Practice Aid, paragraph 71.
[38] Duski Report, pp. 22-23.

**1. Mr. Duski's calculation of BGSE's alleged unjust enrichment should be reduced to exclude profit attributable to factors other than Defendants' alleged wrongful acts.**

The AICPA provides a Practice Aid titled "Calculating Intellectual Property Infringement Damages" (the "AICPA IP Damages Practice Aid") that states:

> The Copyright Act, the Lanham Act, and the [Uniform Trade Secrets Act] each provide that in an unjust enrichment claim, the intellectual property owner shall recover only the net profits of the infringer attributable to the infringement … As a result, in an unjust enrichment claim, <u>only the portion of profits from infringing sales that can be ascribed to the intellectual property in question are to be awarded.</u>[39] (emphasis added)

Stated a different way, AICPA Lost Profits Practice Aid states:

> [Through disgorgement] the defendant is required to surrender profits attributable to the misappropriation or bad act to the plaintiff.  To the extent that profits are attributable to other factors, the defendant would not have to disgorge those amounts.[40]

As such, I understand that BGSE's alleged unjust enrichment should be limited to BGSE's profits that can be ascribed to Defendants' alleged wrongful acts and exclude profit attributable to other factors.  However, Mr. Duski's opinion of BGSE's alleged unjust enrichment includes profit attributable to other factors.  For example, the usual profit margin that BGSE makes in the contractor-supplier relationship that it has (or had) with JBT.  This can be demonstrated using Lemoore P-328 as an example.

For Lemoore P-328, Mr. Duski's calculation of BGSE's alleged Unjust Enrichment is $169,280.[41]  Meanwhile, based on the document that Mr. Duski used to calculate that amount, BGSE's entire gross profit margin on that project was only $█████.  As such, if Mr. Duski's calculation of alleged unjust enrichment is awarded, then JBT would receive more than BGSE's entire gross profit on that project.  Meanwhile, BGSE provided a broader scope of work than it appears JBT would have done.  Specifically, more than 37% of BGSE's revenue on that project was related to service pits and pit equipment. [42]  Mr. Duski's report shows that JBT would not

---

[39] AICPA IP Damages Practice Aid, p. 96.
[40] AICPA Lost Profits Practice Aid, paragraph 71.
[41] Duski Report, p. 23 and Exhibit 4, Schedule A.
[42] BGSE_00340901.xlsx.  Duski Report, Exhibit 4, Schedule A.  Actual total revenue was $█████.  Per Mr. Duski's report, the portion of that revenue subject to his calculation of alleged unjust enrichment was $████████████████████  I understand from Mr. Bullerdick that JBT would not have provided certain PC Air products and services that may also be included in this amount.

---

have performed that scope of work.[43]  This supports that BGSE would have continued to earn its usual profit as a contractor with JBT as the supplier.  Additional support is discussed later in this report.

At minimum, Mr. Duski's calculation of BGSE's alleged unjust enrichment should be reduced to exclude the profit BGSE would have made, even if it used JBT as the supplier.  As shown in Table 1 above, Mr. Duski's calculation of JBT's alleged damages for trade secret misappropriation and unfair competition should be reduced by approximately $200,000 and $1.1 million, respectively, to remove BGSE profit attributable to factors other than BGSE's alleged wrongful acts.

BGSE profit attributable to additional factors may exist but is difficult to quantify.  As such, rather than quantify all factors of reduction to Mr. Duski's opinion, it is more appropriate to directly quantify the portion of BGSE's alleged unjust enrichment attributable to BGSE's alleged wrongful acts.  Two methods of doing so are discussed later in this report.

2.  **Mr. Duski's calculation of BGSE's alleged unjust enrichment should be reduced by BGSE's incremental costs that Mr. Duski failed to include in his analysis.**

In calculating BGSE's alleged unjust enrichment for each Project, Mr. Duski relied upon documents that he describes as either "profit and loss statements specific to [the Project], or a "profit and loss statement which [Mr. Duski] understands [BGSE] prepared in conjunction with its bid."[44]  Table 2 below provides a summary of the documents upon which Mr. Duski relied and his characterization of those documents by Project.

**Table 2**
**Summary of Documents Relied Upon by Mr. Duski**
**in Calculating BGSE's Alleged Unjust Enrichment**

| Project | Description per Duski Report | Document Relied Upon by Mr. Duski |
|---|---|---|
| Lemoore P-328 | "BGSE has provided a profit and loss statement specific to the Lemoore P-328 project."[45] | BGSE_00340901 |
| Beaufort P-465 | "I have relied upon a BGSE profit and loss statement specific to this project to perform my | BGSE_00340909 |

---

[43] Duski Report, Exhibit 3, Schedule A1.
[44] For example, on page 34 of his report Mr. Duski states, "BGSE has provided a profit and loss statement specific to the Lemoore P-328 project."  On page 56 of his report Mr. Duski states, "Since I am not aware of a final profit and loss statement from BGSE specific to the Eielson EIE-376 project, I have relied upon a BGSE profit and loss statement which I understand was prepared in conjunction with its bid. This statement includes, among other things, estimated sales revenues and profits associated with PC Air equipment BGSE was planning on purchasing."
[45] Duski Report, p. 34.

| Project | Description per Duski Report | Document Relied Upon by Mr. Duski |
|---------|------------------------------|----------------------------------|
| | calculation."[46] | |
| Kadena P-803 | "I have relied upon a BGSE profit and loss statement specific to this project to perform my calculation."[47] | BGSE_00276151 |
| Lemoore P-378 | "BGSE has provided a profit and loss statement specific to the Lemoore P-378 project."[48] | BGSE_00340927 |
| Beaufort P-464 | "BGSE has provided a profit and loss statement specific to the Beaufort P-464 project."[49] | BGSE_00462122 |
| Eielson EIE-376 | "Since I am not aware of a final profit and loss statement from BGSE specific to the Eielson EIE-376 project, I have relied upon a BGSE profit and loss statement which I understand was prepared in conjunction with its bid."[50] | BGSE_00338687 |
| Burlington B-795 | "Since I am not aware of a final profit and loss statement from BGSE specific to this project, I have relied upon a BGSE profit and loss statement which I understand was prepared in conjunction with its bid."[51] | BGSE_00340913 |
| Eielson EIE-378 | "Since I am not aware of a final profit and loss statement from BGSE specific to the Eielson EIE-378 project, I have relied upon a BGSE profit and loss statement which I understand was prepared in conjunction with its bid."[52] | BGSE_00464327 |

However, I understand from discussions with Mr. Bullerdick that *all* of the documents listed in Table 2 above are estimates prepared prior to the start of work ("Project Estimates").  In fact, the Project Estimates for the first three Projects still list JBT as the supplier even though JBT's alleged lost profits are predicated on JBT having never supplied the project.[53]  These Project Estimates do not reflect BGSE's actual revenue, expense, or profit.  Yet, Mr. Duski relied upon them to calculate BGSE's alleged unjust enrichment.  That causes his analysis to be unreliable for several reasons.

First, I understand from Mr. Bullerdick that the actual incremental costs that BGSE incurred on the Projects were generally higher than the Project Estimates reflect.  For example, I understand from Mr. Bullerdick that the Beaufort P-464 project was disrupted by a hurricane.

---

[46] Duski Report, p. 40.
[47] Duski Report, p. 46.
[48] Duski Report, p. 50.
[49] Duski Report, p. 53.
[50] Duski Report, p. 56.
[51] Duski Report, p. 61.
[52] Duski Report, p. 65.
[53] BGSE_00340901.  BGSE_00340909.  BGSE_00276151.

That caused actual costs to exceed estimates.[54]  As another example, the Project Estimate for Lemoore P-328 shows a cost per PC Air unit of $████.[55]  Meanwhile, BGSE's purchase order to Twist for the same project shows a cost per PC Air unit of $████.[56]  That is a cost difference of $████ per unit, or $████ for the four units ordered.[57]

Second, many costs are not reflected in the Project Estimates at all.  Examples of excluded costs may include warranty coverage work and the significant time dedicated to preparing bids and submittals.  These costs would further reduce Mr. Duski's calculation of BGSE's alleged unjust enrichment.  I have not seen the necessary BGSE accounting records to calculate that deduction.  I will update my analysis if those documents become available.

Third, I understand from Mr. Bullerdick that the scope of work performed by BGSE differs from the scope of work shown on the Project Estimates for certain projects.  For example, while Mr. Duski's calculation of BGSE's alleged unjust enrichment includes profit on 270 VDC / 400HZ combination units for the Beaufort P-464 project, I understand from Mr. Bullerdick that BGSE never provided those units for that project.[58]  Mr. Duski's analysis includes $47,500 of alleged unjust enrichment related to those units even though the units were never sold.[59]  Mr. Duski states in his report, "I have been asked to assume that BGSE was awarded GPU equipment" on that project.[60]  This demonstrates that Mr. Duski did not know whether BGSE was actually awarded GPU on that project, or how the actual results of the project differed from the estimate.  Yet, Mr. Duski states that "BGSE has provided a profit and loss statement specific to [that project]" and relied upon it as if it reflects actual results.[61]

Fourth, there appear to be multiple, differing versions of the same Project Estimates.  For example, for Beaufort P-465, Mr. Duski relied upon a Project Estimate to calculate BGSE's alleged unjust enrichment for that Project of $27,264.[62]  However, had Mr. Duski used another version of the same document, his calculation would total $13,032, thus reducing his calculation by $14,232.[63]  Mr. Duski provided no explanation for why he used one document over the other.

---

[54] Discussion with Mr. Bullerdick.
[55] Duski Report, Exhibit 4, Schedule A.  BGSE_00340901.
[56] BGSE_00216721.  The price per unit on the Project Estimate appears to include the cost of stands.  As such, the price of $████ includes ████ plus $████ per stand.  ████████████████
[57] [████████████████].
[58] Duski Report, Exhibit 4, Schedule E.
[59] Duski Report, Exhibit 4, Schedule E.
[60] Duski Report, p. 53.
[61] Duski Report, p. 53.
[62] Duski Report, Exhibit 4, Schedule B.  BGSE_00340909.
[63] BGSE_00421681.  [████████████████.

Finally, I understand that some of the Projects are not yet complete.[64]  As such, a complete accounting of BGSE's incremental costs cannot be determined at this time.  However, it is possible and likely that such an accounting would further reduce JBT's alleged damages.  I will complete such an analysis when and if the necessary documents and information become available, and time permits.

### 3. Mr. Duski's calculation of BGSE's alleged unjust enrichment should be reduced to reflect actual profit that BGSE earned or received.

As discussed above, Mr. Duski relied upon Project Estimates as the basis for his calculation of BGSE's alleged unjust enrichment.  I understand from Mr. Bullerdick that those Project Estimates were prepared prior to the completion of any work on the respective Projects.  As such, the revenue that Mr. Duski used to calculate BGSE's alleged unjust enrichment does not reflect BGSE's actual revenue.  I further understand that, in certain instances, the revenue in those alleged profit and loss statements has not yet been earned or received, or may never be earned or received, by BGSE.

### B. BGSE's alleged unjust enrichment is more accurately calculated using methods that Mr. Duski did not provide.

Mr. Duski did not address the extent to which Defendants' alleged wrongful acts affected BGSE's revenue or profit.  Rather, for each Project, Mr. Duski simply states, "I understand that the law may permit JBT to recover BGSE's unjust enrichment[.]"[65]  Mr. Duski also states, "I understand that JBT has the burden of proving BGSE's revenues, whereas BGSE then has the burden of proving all costs or deductions claimed."[66]  However, as stated above, it is not possible to prove or quantify every cost or deduction.

Since Mr. Duski failed to adequately demonstrate that BGSE's revenue increased because of Defendants' alleged wrongful acts, BGSE's incremental profit (i.e., unjust enrichment) associated with Defendants' alleged wrongful acts is limited to the costs, if any, that it wrongfully saved or avoided.  Therefore, in my opinion, the method used by Mr. Duski to calculate BGSE's alleged unjust enrichment is inappropriate in this matter.  Two different methods are more appropriate than the one used by Mr. Duski.  Each method is described in the sub-sections below.  The first method is consistent with the damages that JBT appears to be seeking as

---

[64] Discussion with Mr. Bullerdick.
[65] For example, Duski Report, p. 34.
[66] Duski Report, p. 34.

stated in its First Amended Complaint.  The second method is an alternative approach that may be more appropriate depending on the findings of fact in this matter.

### 1. BGSE's unjust enrichment that JBT alleges is the cost that BGSE saved by using suppliers other than JBT.

As discussed above, BGSE would have earned a profit on the Projects, even if it used JBT as the supplier.  The contemporaneous pricing provided by JBT to BGSE supports that.[67]  As does Mr. Duski's report.[68]  Meanwhile, I have seen no evidence that BGSE's pricing to its customers would have differed regardless of its use of JBT as a supplier.  As such, it appears that BGSE would have earned the same revenue regardless of the supplier it used.  Therefore, the only additional profit that BGSE received by using a supplier other than JBT is the cost it saved in doing so.  As such, BGSE's alleged unjust enrichment should not include profit that BGSE would have earned if JBT supplied the project.  Rather, it should be limited to incremental profit that BGSE received by not using JBT as a supplier as shown **Attachment 1** and summarized in Table 3 below.

**Table 3**
**Mr. Duski's Method of Calculating BGSE's Alleged Unjust Enrichment Versus a More Appropriate Method[69]**



| Count | Project | A<br>Would-Have-Been BGSE Cost Using JBT as Supplier | B<br>Estimated Cost of Actual BGSE Suppliers | C = A - B<br>Estimated BGSE Incremental Profit / Savings | D<br>Alleged BGSE Unjust Enrichment Per Duski Report | E = D - C<br>Estimated BGSE Profit Unrelated to Alleged Wrongful Acts |
|---|---|---|---|---|---|---|
| 1 | Lemoore P-328 | | | | | |
| 2 | Beaufort P-465 | | | | | |
| 3 | Kadena P-803 | | | | | |
| 4 | Lemoore P-378 | | | | | |
| 5 | Beaufort P-464 | | | | | |
| 6 | Eielson EIE-376 | | | | | |
| 7 | Burlington B-795 | | | | | |
| 8 | Eielson EIE-378 | | | | | |

As Table 3 shows, that amount is approximately $560,000, i.e., approximately $1.1 million lower than Mr. Duski's calculation.

---

[67] For example, see "Estimated Would-Have-Been BGSE Profit Using JBT as Supplier" for the three Alleged Lost Profits Projects as shown in Attachment 2.
[68] Attachment 2.
[69] Attachment 1.  Duski Report, p. 23 and Exhibit 4, Schedules A through H (for Alleged BGSE Unjust Enrichment Per Duski Report).

This approach is consistent with the damages that JBT is alleging.  For example, Mr. Duski states in his report:

> JBT contends that by relying on documentation for JBT's products already installed on past hangar projects, whether with or without JBT's name, BGSE was positioning itself to be able to substitute whatever replacement product they could find, and likely generate <u>profits above and beyond those it would otherwise earn from sales of JBT equipment</u>.[70] (emphasis added)

JBT's First Amended Complaint also states:

> BGSE sought out a vendor for PC Air units that would … produce PC Air units at a lower cost, enabling BGSE to pocket more of the revenue.[71]

In other words, JBT is alleging that BGSE's unjust enrichment is equal to the cost it saved by using suppliers other than JBT.  Therefore, BGSE's alleged unjust enrichment should not include profit that BGSE would have earned, even if it used JBT as a supplier.

In support of this, aside from the eight Projects, I understand that BGSE was involved with several other F-35 hangar projects.  I also understand that JBT supplied some, but not all, of those projects.  Per Mr. Bullerdick, BGSE sought, and generally received, a profit margin for each of those projects.  As such, regardless of the suppliers it used, BGSE expected and generally received a profit margin for the package of goods and services it provided, even if JBT was a supplier.[72]

Furthermore, based on Mr. Duski's report, BGSE's alleged wrongful acts did not begin until 2015.[73]  I also understand that a preliminary injunction ordered on September 20, 2017 restrains BGSE from "acquiring, using, or disclosing JBT's trade secrets or other confidential documents, data, or information" among other things.[74]  Therefore, aside from the eight Projects, I understand that the remaining F-35 hangar projects in which BGSE was involved occurred before, during, and after Defendants' alleged wrongful acts occurred.  As such, BGSE expected and generally received a profit margin on its projects regardless of Defendants' alleged wrongful acts in this matter.

Additionally, while Mr. Duski assumes otherwise, there is evidence that JBT would have been unable to compete directly with BGSE.  For example, on the Lemoore P-378 project, Mr.

---

[70] Duski Report, p. 25.
[71] First Amended Complaint, paragraph 53.
[72] Discussion with Bryan Bullerdick.
[73] For example, for the first Project (Lemoore P-328) Mr. Duski states on page 25 of his report, "During this time, BGSE was trying to convince Twist to start making analogous equipment …"  As support for this statement, Mr. Duski cites various emails dated in 2015.
[74] Order Entering Preliminary Injunction entered September 20, 2017.

Duski states, "Jacobs [the project designer] contacted JBT requesting budgetary pricing for the PC air requirements on the project.  I understand that JBT did not provide such pricing to Jacobs at this time due to the belief that it could interfere with BGSE's efforts to sell JBT equipment for the project."[75]  However, in the email that Mr. Duski cites as support for that statement, Scott Gwilliam of JBT wrote to Jacobs:

> On other similar projects we have bid these through our distributor because the contractor was looking for a single supplier to supply all the parts of the system. Let us know if you are only looking for the air-conditioning units, then we might be able to bid direct.[76]

Jeffrey Davison of Jacobs stated in response:

> You are correct – a contractor will eventually be involved … but not yet.[77]

This exchange suggests that JBT would have been required to supply a contractor or distributor like BGSE.  As such, JBT would not have earned BGSE's profit margin on the sale of those products.  Rather, BGSE would have.

It also appears that JBT was not actually bidding projects at a level that would be considered competing with BGSE.  For example, I reviewed approximately twenty-three separate documents that appear to be JBT quotes produced in this matter and included in Exhibit 2 to Mr. Duski's report.[78]  Only one of those quotes appears to include service pits in the overall scope of work.[79]  Meanwhile, the documents that Mr. Duski used to determine BGSE's alleged unjust enrichment show that BGSE's scope included service pits for six out of the eight Projects.[80]  As such, it appears that BGSE generally provided a broader scope of goods and services than JBT, suggesting that JBT was not competing directly with BGSE.

Finally, it appears that JBT was disinterested in competing with BGSE.  Brian DeRoche of JBT testified that JBT did not start competing with BGSE until "after [JBT] realized [its] relationship with BGSE was going to end … as information was being reviewed for Lemoore [P-

---

[75] Duski Report, p. 47.
[76] JBT00109796-99 at 98.
[77] JBT00109796-99 at 98.
[78] JBT00109973.  JBT00110056.  JBT00114596.  JBT00126086.  JBT00126091.  JBT00126092. JBT00127040.  JBT00133067.  JBT00136658.  JBT00136675.  JBT00136676.  JBT00136909. JBT00142034.  JBT00142050.  JBT00142282.  JBT00144845.  JBT00146351.  JBT00146442. JBT00146443.  JBT00146458.  JBT00146897.  JBT00109655.xlsx (for Lemoore P-328). JBT00034114.xlsx (for Beaufort P-465).
[79] JBT00142050.  Most of the JBT quotes do not state the project to which they relate.  Aside from the three documents cited in Exhibit 3, Schedules A1, B1, and C1 to Mr. Duski's report, it is unclear which relate to the Projects, if any.
[80] BGSE_00340901, BGSE_00340909, BGSE_00276151, BGSE_00340927, BGSE_00462122, BGSE_00338687, BGSE_00340913, and BGSE_00464327.

378]."[81]  This statement is further supported by JBT's actions and Mr. Duski's report.  As shown in **Attachment 3**, prior to JBT's discovery of Defendants' alleged wrongful acts in August 2016, JBT provided quotes on every Project directly to BGSE.[82]  It was only after that discovery that JBT began providing quotes to other contractors.  In fact, just months prior to that date, in May 2016, BGSE and JBT had discussions related to JBT providing BGSE with a "blanket" purchase order for PC Air units.[83]  In that email chain, Mike Austin of JBT discussed keeping the two companies from becoming competitors as they "both feel like this is likely not the best for either party[.]"[84]  This suggests that JBT would not have competed with BGSE, or faced difficulties in doing so.  Meaning, JBT would have continued to supply BGSE, and BGSE would have continued to earn its usual profit margin.

### 2. Alternatively, BGSE's alleged unjust enrichment can be quantified as the cost that BGSE avoided because of Defendants' alleged wrongful acts.

Even if BGSE's alleged unjust enrichment is calculated as discussed in the section above (i.e., approximately $560,000 of alleged savings that BGSE received by using suppliers other than JBT) some of those alleged damages may still be attributable to factors other than Defendants' alleged wrongful acts.  For example, the work that other parties had already completed toward independently developing their own technology or trade secrets including operational and maintenance manuals or designs and schematics for PC Air controls.  I am unaware of any analysis performed to determine the progress of those developments, or the extent to which Twist or BGSE even needed the alleged trade secrets to complete them.  Mr. Duski did not compare the technology between JBT's units and Twist's or any other competitors', nor does he cite the work of a professional qualified to do so.

Furthermore, I understand that BGSE used Northern Air Systems' PC Air units on four of the eight Projects.  Mr. Duski's report does not cite any allegations related to information wrongfully provided to Northern Air Systems, nor does JBT's First Amended Complaint.  As such, any cost savings attributable to BGSE's use of Northern Air Systems may be inadequately linked to the misappropriation of JBT's alleged trade secrets.

Without showing that BGSE's alleged wrongful use of JBT document and information contributed to an increase in BGSE's revenue, BGSE's profit associated with that misappropriation is limited to the costs, if any, that BGSE avoided therefrom.  That would

---

[81] Deposition of Brian DeRoche dated December 20, 2018, pp. 47-48.
[82] Attachment 3.
[83] JBT00109976-85.
[84] JBT00109976-85 at 77.

include the costs that BGSE would have incurred to independently develop those alleged trade secrets, documents, or other information.  Those costs appear to be estimable based on the amount that JBT paid to do that.  However, Mr. Duski did not provide that analysis.

**C.  Mr. Duski's opinion of JBT's alleged damages related to unfair competition and/or trademark infringement, if awarded, would compensate JBT for approximately $150,000 of the same alleged damages twice.**

As shown in Table 4 below, for three of the Projects, Mr. Duski's opinion of JBT's alleged damages includes both lost profits and disgorgement.  Mr. Duski's inclusion of both types of damages for those Projects appears to be based upon the assumption that JBT prevails on its unfair competition and/or trademark infringement claims.

**Table 4**
**Projects for which Mr. Duski Included Lost Profits and Disgorgement Damages[85]**

| Project | JBT's Alleged Lost Profits | | BGSE's Alleged Unjust Enrichment | | Total Alleged Damages | |
|---|---|---|---|---|---|---|
| Lemoore P-328 | $ | 99,581 | $ | 169,280 | $ | 268,861 |
| Beaufort P-465 | $ | 44,738 | $ | 27,264 | $ | 72,002 |
| Kadena P-803 | $ | 61,932 | $ | 192,945 | $ | 254,877 |

In the "Basis and Reasoning" section of his report, Mr. Duski cites the Lanham Act and states, "[I]f BGSE is found liable for … unfair competition and/or trademark infringement, JBT may recover (1) defendant's profit, (2) any damages sustained by the plaintiff, and (3) costs of the action."[86]  This appears to be Mr. Duski's basis for including both lost profit and disgorgement damages for the three projects shown in Table 4 above.

However, Section 1117 of the Lanham Act also states that damages are "subject to the principles of equity."[87]  As discussed in more detail below, Mr. Duski's inclusion of both lost profit and disgorgement damages as shown in Table 4 above serves to include some of the same alleged damages twice.  In my opinion, that is inappropriate.  In support of that opinion, the AICPA IP Damages Practice Aid cites Section 1117 of the Lanham Act, as Mr. Duski did in his report, but then states:

> Although the Lanham Act gives trademark owners the right to recover the defendant's profits as well as the owner's actual damages, the owner's recovery is "subject to the principles of equity."  In essence, this means that

---

[85] Duski Report, pp. 35, 41, and 47.
[86] Duski Report, p. 23.
[87] 15 U.S.C. Section 1117(a).

<u>actual damage and disgorgement awards in a single case may not be</u>
<u>duplicative</u>.[88] (emphasis added)

Another widely used and accepted treatise is the Litigation Services Handbook.  In a chapter specifically related to calculating intellectual-property-infringers' profits it states:

> Ample case precedent supports the idea that the expert should derive damages from incremental profits: relevant net sales the plaintiff (property holder) would have made but for the defendant's (infringer's) actions less the appropriate incremental costs that would have been incurred to make these but-for sales. Yet a plaintiff in trademark, copyright, and design patent cases can also claim additional damages in the form of the defendant's profits, <u>as long as a double recovery does not occur</u>.[89] (emphasis added)

A footnote on that statement further states:

> By avoiding "double recovery," … the plaintiff cannot recover for a particular unit in the form of the plaintiff's lost profits and at the same time recover damages based on the defendant's profits for the same unit.[90]

However, if Mr. Duski's calculation is awarded to JBT, it would provide JBT with a double recovery.  That is because the alleged lost revenue included in Mr. Duski's lost profits analysis is higher than BGSE's costs in his unjust enrichment analysis.  That is illogical because in Mr. Duski's lost profit analysis, JBT would have been BGSE's supplier.  Thus, JBT's lost revenue would have been BGSE's cost, at least for the products that JBT would have supplied.  However, that is not reflected in Mr. Duski's analysis.  The result is an overlap between the two types of alleged damages as shown in Figure 3 below and calculated in **Attachment 2**.

---

[88] AICPA IP Damages Practice Aid, p. 16.
[89] Litigation Services Handbook, pp. 22-1 and 22-2.
[90] Litigation Services Handbook, p. 22-13, Note 5.

**Figure 3**
**Overlap Between Mr. Duski's Calculation of JBT's Alleged Lost Profit and BGSE's Alleged Unjust Enrichment** [91]



This overlap, or would-be double recovery, is approximately $150,000. That amount is approximately equivalent to BGSE's alleged unjust enrichment on the Alleged Lost Profit Projects, net of profit that BGSE would have earned, as shown in **Attachment 1**.[92] In other words, for these three projects, an appropriately adjusted calculation of BGSE's alleged unjust enrichment is entirely duplicated in Mr. Duski's calculation of JBT's alleged lost profits. Therefore, if Mr. Duski's opinion of JBT's alleged lost profits are awarded on these projects, then any disgorgement awarded to JBT (if it is appropriately calculated) would constitute a double recovery.

---

[91] Attachment 2.

[92] Attachment 1 does not include a comparison of suppliers' costs related to GPU, PC Air Master Controllers and PC Air Startup and Training because BGSE does not appear to have received a savings related to those items. The difference between the estimated cost savings amounts shown in Attachment 1 and the overlap between Mr. Duski's calculation of alleged lost profit and disgorgement discussed in this section is based upon the price variances on those products or services. The amount of overlap discussed in this section is lower than the cost savings shown in Attachment 1 because it includes the effects of JBT's pricing being lower than that of BGSE's actual suppliers for those items.

**D. Even after adjusting for would-be double-recovery, Mr. Duski's opinion of JBT's alleged lost profits is based upon unsupported assumptions.**

The AICPA Lost Profits Practice Aid states:

> Damages for lost profits are recoverable only if the breach or wrongful act by the defendant was the proximate cause of the loss … there <u>must be a link between the wrongful act and the resulting damages</u>.[93]  (emphasis added)

The Litigation Services Handbook also adds:

> Triers of fact will look for nexus between the actions of the defendant and the damages to the plaintiff and will expect experts to establish that connection based on their own work or through that of other experts.  Practitioners can accomplish this through a combination of applying logic to the facts, using targeted analytics, and rebutting other possible explanations.[94]

While Mr. Duski's report cites many specific alleged wrongful acts, he fails to demonstrate how those acts caused the alleged lost profit damages that he calculated.  Rather, Mr. Duski's opinion of JBT's alleged lost profit damages depends upon assumptions that are unsupported. As a result, Mr. Duski's opinion of JBT's alleged lost profit damages is also unsupported, as discussed below.

**1. Mr. Duski failed to adequately demonstrate that Defendants' alleged wrongful acts caused JBT to suffer any lost profits.**

Mr. Duski's lost profits analysis is limited to three projects for which JBT alleges it should have been awarded an opportunity to supply PC Air components.[95]  However, assuming that allegation is true, it does not necessarily mean that JBT's revenue or profits were negatively impacted.  That is because JBT may have mitigated those potential losses.  For example, JBT may have used the resources required for those three opportunities to generate and earn other sales.

The AICPA Lost Profits Practice Aid states:

> The practitioner should consider whether revenues and/or profits earned subsequent to the breach [or alleged wrongful act] are a mitigation of the economic damages caused by the defendant, thereby reducing damages, or

---

[93] AICPA Lost Profits Practice Aid, paragraph 39.
[94] Litigation Service Handbook, Sixth Edition, p. 4.29.
[95] Duski Report, Appendix A.

> are profits that would have been earned regardless of the breach and,
> therefore, would not offset damages claimed by plaintiff.[96]

This is an important distinction that Mr. Duski did not discuss in his report.  While Mr. Duski failed to demonstrate that JBT was unable to mitigate its alleged lost profit damages, there is some evidence that JBT did just that.

Table 5 below shows JBT AeroTech's annual revenue during the period from 2012 through 2017.  As this table shows, JBT AeroTech's annual revenue increased in each year 2015, 2016 and 2017, i.e., the years in which Defendants' alleged wrongful acts generally occurred.  Furthermore, the percentage increases in revenue during each of those years is greater than in either of the two years immediately prior, i.e., 2013 and 2014.

**Table 5**
**JBT AeroTech Historical Annual Revenue[97]**

|  | 2012 | 2013 | 2014 | 2015 | 2016 | 2017 |
|---|---|---|---|---|---|---|
| JBT AeroTech Revenue | $ 325,000,000 | $ 323,600,000 | $ 350,200,000 | $ 383,100,000 | $ 422,500,000 | $ 463,000,000 |
| *Percentage Increase* |  | *-0.4%* | *8.2%* | *9.4%* | *10.3%* | *9.6%* |

While the seemingly uninterrupted growth in JBT AeroTech's annual revenue does not by itself prove that JBT's revenue was unimpacted by Defendants' alleged wrongful acts, it is one indicator that JBT may have used its limited resources and capacity to generate revenue elsewhere.  Mr. Duski's report does not, for example, discuss JBT's production facilities having idle capacity during the relevant timeframe as a result of Defendants' acts.

Mr. Duski cited several of JBT's allegations and inferred that JBT would have been the only supplier that could have provided compliant product for BGSE.[98]  However, Mr. Duski provided no other analysis to demonstrate that JBT's revenue or profit was negatively impacted by Defendants' alleged wrongful acts.  As such, based on the discussion above, JBT's lost profit damages that Mr. Duski calculated are unsupported.

---

[96] AICPA Lost Profits Practice Aid, paragraph 140.
[97] John Bean Technologies Corporation Form 10-K for the fiscal year ended December 31, 2017, p. 53.
John Bean Technologies Corporation Form 10-K for the fiscal year ended December 31, 2014, p. 52.
The 2017 financial statements include the years 2015 though 2017.  The 2014 financial statements include the years 2012 through 2014.
[98] Duski Report, pp. 33, 39, and 45.

**2. Mr. Duski failed to adequately demonstrate that JBT would have earned the alleged lost revenue that he calculated.**

The AICPA IP Damages Practice Aid states:

> To be entitled to lost profits, a plaintiff . . . <u>must demonstrate</u> that there was reasonable probability that, but for the infringement, <u>it would have made infringer's sales</u>.  The [intellectual property] owner must offer proof demonstrating, to a reasonable probability, entitlement to lost profits but for the infringement.[99]  (emphasis added)

Mr. Duski's lost profits analysis is limited to three projects for which JBT alleges it should have been awarded an opportunity to supply PC Air components.[100]  However, Mr. Duski failed to adequately demonstrate that JBT would have supplied the Alleged Lost Profits Projects or profited on the same.

Rather, Mr. Duski makes certain assumptions that may be independent of Defendant's alleged wrongful acts.  Two examples are discussed below.  The first is that Mr. Duski assumes BGSE could not have rightfully used a supplier other than JBT.  The second is that Mr. Duski assumes JBT would have earned the lost profits that he calculated.  To the extent that these or other assumptions are unsupported, so too is Mr. Duski's calculation of JBT's alleged lost profits.

Through discovery in this matter, JBT listed the following items as the "documents and/or other materials that JBT claims constitute its trade secrets that Defendants allegedly misappropriated …

- JBT's Operational and Maintenance Manual for the Jetaire® HPCF-3000 and …

- designs and schematics, including the entire electrical schematics for the controls of the Jetaire® HPCF-3000 unit."[101]

However, as discussed above, Mr. Duski failed to adequately demonstrate how BGSE's alleged improper use of these items caused JBT lost profit damages.  For example, I understand from Mr. Bullerdick that the allegedly misappropriated JBT designs and schematics are limited to the controls of the Jetaire® HPCF-3000 unit and have little or nothing to do with the refrigeration technology itself.  Mr. Duski does not appear to have evaluated the scope of the allegedly misappropriated designs and schematics or relied upon a professional with the expertise to do

---

[99] AICPA IP Damages Practice Aid, pp. 30.
[100] Duski Report, Appendix A.
[101] Plaintiff's Responses to Defendant's Second Set of Interrogatories, Interrogatory 5.

so.

Furthermore, Mr. Duski's report does not state whether Twist (or any other manufacturer) relied upon or required JBT's alleged trade secrets to engineer and produce a compliant product any earlier than it otherwise could have done. Rather, as shown in Table 6 below, for each of the three Alleged Lost Profit Projects, Mr. Duski states his understanding of JBT's allegations.

**Table 6**
**Mr. Duski's Explanation of Causation Related to JBT's Alleged Lost Profits**

| Project | Discussion Per Duski Report |
|---------|------------------------------|
| Lemoore P-328 | "…use of JBT's proprietary and confidential documents and information allowed BGSE to meet the specification deadline for proving BGSE could produce a compliant product, which constitutes trade secret misappropriation … I have not seen any evidence of proposals submitted from other manufacturers of PC Air to BGSE which would have been compliant with the approved specifications. Therefore, it is reasonable to conclude that, 'but for' the Defendants' unlawful acts, BGSE would have had to purchase compliant PC Air units from JBT to fulfill its award."[102] |
| Beaufort P-465 | "JBT was the only other supplier of PC Air units at the time that would meet the specifications of the project that submitted a quote to BGSE. Indeed, according to JBT, to its knowledge, 'no other manufacturer has independently developed a product compliant with the specification.' BGSE had intended to buy the required PC Air units from JBT, even issuing a purchase order, which was not cancelled until after Twist was capable of producing a competing product. Therefore, it is reasonable to conclude that 'but for' the Defendants' alleged unlawful acts of trade secret misappropriation and unfair competition, BGSE would have purchased PC Air units from JBT."[103] |
| Kadena P-803 | "JBT was the only supplier of PC Air units that had a product that could meet the specification and that had been installed for more than two years prior to bid for the project being opened. Indeed, Twist's design appears to have only been finalized in November 2015. However, I understand BGSE did not request a quote for PC Air units from JBT. I further understand that during negotiations on a new distributorship agreement, JBT requested that BGSE supply a list of all F-35 hangar projects that BGSE had in the pipeline and that BGSE included the Kadena Air Base in its response. Additionally, I understand that JBT's primary sales contact for BGSE during 2015 and 2016 was informed by BGSE of BGSE's work on an F-35 hangar project in Japan, and |

---

[102] Duski Report, p. 33.
[103] Duski Report, pp. 39-40.

| Project | Discussion Per Duski Report |
|---------|------------------------------|
|  | was led to believe that BGSE 'may be bidding projects without [JBT's] specific project quote inputs.' Therefore, it is reasonable to conclude that, 'but for' the Defendants' alleged unlawful acts of trade secret misappropriation and unfair competition, BGSE would have had to purchase compliant PC Air units from JBT to fulfill its award."[104] |

While Mr. Duski's commentary discusses BGSE's alleged use of JBT documents and information to meet submittal deadlines, he does not seem to state that BGSE or its suppliers would have been unable to produce a compliant product by the time delivery was required. Rather, he assumes that they could not. In calculating JBT's alleged damages, this is a critical assumption that may be independent of BGSE's alleged wrongful acts, and that Mr. Duski does not adequately support in his report.

Even if JBT was at some point the only supplier of compliant PC Air equipment, Mr. Duski's own statements and the documents produced in this matter suggest that Twist could have produced a compliant product before the required delivery date on at least two of the three Alleged Lost Profits Projects. Specifically, Mr. Duski states, "Twist's design appears to have only been finalized in November 2015."[105] However, as shown in Table 7 below, BGSE's purchase orders to Twist were issued after November 2015 for those two projects.

**Table 7**
**Timing of BGSE Purchase Orders for the Alleged Lost Profit Projects[106]**

| Project | Supplier | Scope | Purchase Order Date Month |
|---------|----------|-------|---------------------------|
| Lemoore P-328 | Twist | PC Air | Aug-15 |
| *November 2015 - Twist's Design Finalized* | | | |
| Kadena P-803 | Twist | PC Air | Jan-16 |
| Beaufort P-465 | Twist | PC Air | Feb-16 |

Assuming again that JBT was at some point the only supplier of compliant PC Air equipment, Mr. Duski's analysis still depends upon the assumption that JBT's alleged trade secrets or other assets could not have been rightfully reverse engineered, reproduced, or otherwise obtained. To the extent that any information included in JBT's alleged trade secrets was used by BGSE and caused JBT damages, Mr. Duski did not address whether BGSE or Twist could have obtained, or actually did obtain, the same information from sources other than

---

[104] Duski Report, p. 45.
[105] Duski Report, p. 45.
[106] BGSE_00216721.  BGSE_00329724.  BGSE_00241887.  BGSE_00239524.  Duski Report, p. 45.

JBT.

Meanwhile, Defendants could have potentially obtained JBTs alleged trade secrets from public sources, third-parties, the pre-existing know-how of BGSE and its suppliers, observation and inspection of JBT equipment in the marketplace, or even paying JBT to obtain the same equipment or manuals.  For example, Mr. Bullerdick testified, "It was my impression that these manuals were already available at that time if Twist was willing to look for them … Based on the fact that several contractors had published the bids online for anybody to search."[107]  To the extent that the trier of fact finds this to be true, then JBT's lost profit damages may be limited to the amount that Defendants would have been required to pay JBT for any necessary manuals or products.  For example, if BGSE was required to purchase a manual from JBT to rightfully obtain and use it, then the price of that manual (less incremental costs) is JBT's lost profit.  On the other hand, BGSE's unjust enrichment may be limited to the costs that BGSE avoided, if any, from not independently developing or reverse engineering the alleged trade secrets.

Setting aside timing and whether JBT's competitors truly had a compliant product, Mr. Duski failed to demonstrate whether JBT had the capacity to supply the Alleged Lost Profit Projects.  Per Mr. Bullerdick, JBT's production lead times increased prior to BGSE's work on these projects.  I understand that Mr. Bullerdick believes that this increase in JBT's lead times was due to a large project that JBT was pursuing or performing.  As such, even if BGSE wanted or planned to use JBT as the supplier, it is possible that JBT would have been unable or unwilling to deliver the required products timely and cost effectively.  In other words, JBT's sales and production capacity may have limited JBT's ability to earn the lost profit that Mr. Duski calculated.  Mr. Duski did not discuss JBT's sales and production capacity in his report.

### E. Mr. Duski failed to apportion JBT's alleged damages between BGSE and other parties not named in this matter.

I understand that JBT is currently pursuing claims against Twist in a separate litigation.[108]  I further understand that the law may prohibit JBT from recovering the same damages from multiple parties, e.g., from BGSE in this matter and from Twist in a separate matter.  Mr. Duski failed to apportion damages between BGSE and other potentially responsible parties which may be appropriate to avoid double-recovery for JBT.  If JBT is awarded the amount of damages calculated by Mr. Duski, then BGSE may be compensating JBT for the alleged wrongful acts of

---

[107] Deposition of Bryan Bullerdick dated June 21, 2018, p. 212.
[108] Civil Action No. 1:18-cv-159 in the United States District Court, Southern District of Ohio, Western Division.

Twist or other third-parties.

### F.  Mr. Duski failed to apportion any damages to certain JBT claims.

Aside from JBT's claims for misappropriation of trade secrets and unfair competition, it is unclear from Mr. Duski's report how the alleged damages associated with each of JBT's alleged claims may overlap or intersect with one another.  Furthermore, it is unclear from Mr. Duski's report whether, in his opinion, JBT suffered any damages associated with the remainder of JBT's claims.[109]

#### 1.  JBT's Federal Trademark Infringement Claim

Mr. Duski's report does not state whether the alleged wrongful acts associated with JBT's trademark infringement claim resulted in BGSE receiving any additional profit.  Mr. Duski discusses JBT's Federal Trademark Infringement claim in a dedicated section of his report.[110] Throughout that section, Mr. Duski cites JBT's First Amended Complaint and restates JBT's related allegations.  Those allegations include: (1) "BGSE's website made use of several of the JBT Marks by embedding them in the metadata of the website," (2) "JBT Marks within the BGSE website's keywords drove web traffic to the site," (3) "the BGSE website contained numerous photographs and pictures of JBT equipment," (4) "photographs featured one or more of JBT's logos or marks, [and] other photographs of JBT equipment appear to have been modified to remove or obscure JBT's logo or nameplate, and then a BGSE logo and/or name was superimposed onto the equipment[.]"[111]

Aside from several citations to the Amended Complaint, Mr. Duski cites only two other documents.[112]  Both are emails where BGSE is referring individuals to its website.[113]  Mr. Duski provided no evidence to indicate that any of those individuals even visited the site, let alone that they were in any way influenced or misinformed by it.  Furthermore, the two emails are dated September 28, 2016 and January 3, 2017.[114]  Mr. Duski provided no evidence, or even allegations, that the allegedly infringing material on BGSE's website was posted on the site as

---

[109] Specific to JBT's claim for Federal Trademark Infringement, Mr. Duski states, "I understand that if BGSE is found liable for violation(s) of the Lanham Act (including trademark infringement), JBT may be entitled to recover BGSE's profits/unjust enrichment. My calculations of BGSE's unjust enrichment have been discussed above. However, for the avoidance of doubt, I understand that an award of unjust enrichment for trademark infringement would not be duplicative of an unjust enrichment award for trade secret misappropriation and/or unfair competition for a given JSF project."  See Duski Report, p. 68.
[110] Duski Report, pp. 66-68.
[111] Duski Report, pp. 66-67.
[112] Duski Report, pp. 66-68.
[113] BGSE_00297007.  BGSE_00549995.
[114] BGSE_00297007.  BGSE_00549995.

---

of those two dates.  Most importantly, I am unaware of any documents or testimony indicating that any of JBT's allegations stated above diverted any business away from JBT or toward BGSE.  As such, Mr. Duski has failed to demonstrate how JBT's Federal Trademark Infringement claim caused JBT any damages.  Unless JBT can demonstrate otherwise, any attempt to quantify damages associated with that claim would be unsupported.

### 2.  JBT's Breach of Contract, Defamation and Tortious Interference Claims

As discussed above, Mr. Duski did not apportion any damages specifically to JBT's breach of contract, defamation, or tortious interference claims.  Mr. Duski has not demonstrated how those claims caused JBT any damages.  Unless JBT can demonstrate otherwise, any attempt to quantify damages associated with those claims would be unsupported.


## VII.  Information Relied Upon

In addition to my years of experience as a financial professional, the expert opinions contained in this report are based on the facts and circumstances of this matter and the documents that I received and relied upon.  The documents that I received are listed in **Appendix B** to this report.  The document upon which I relied in forming the opinions contained in this report are listed in the footnotes to this report and attachments.

The opinions contained in this report are based on currently available information and parties' respective claims as of this date.  Should new or additional information that is relevant to the opinions in this report become available, I will supplement or amend my opinions as necessary.  If certain claims by any party are dismissed through summary judgment, or otherwise, I will supplement or amend my opinions as necessary.  In connection with this report, I prepared supplemental work papers that serve as an integral basis for the opinions contained herein.  Finally, the information contained in this report may be used to develop illustrative exhibits for use at trial.


## VIII.  Compensation

GreerWalker is being compensated for my time on this matter at a rate of $365 per hour.  Rates for personnel that may assist me vary from $170 to $460 per hour.  Since this engagement is not yet complete, it is not now possible to determine the total compensation that will be paid to GreerWalker for this engagement.  My compensation is not contingent on the outcome of this case.

# APPENDIX A

# Nicholas R. Harris, CPA/ABV, CFA, CFE
*Curriculum Vitae*



---

## Position

Senior Manager, Litigation & Valuation Services
GreerWalker, LLP, Certified Public Accountants
227 West Trade Street, Suite 1100
Charlotte, NC  28202
Phone: (704) 816-7039
E-mail: nick.harris@greerwalker.com

## Professional History

The Kenrich Group LLC, Chicago, IL - Principal
JPMorgan Chase Bank NA, New York, NY - Financial Analyst
Deloitte, Detroit, MI – Audit and Enterprise Risk Intern

## Education

Bachelor of Business Administration, University of Michigan, Ross School of Business
Certificate in Specialized Studies, Audit and Forensic Accounting, Northwestern University

## Professional Certifications

Certified Public Accountant (CPA), Accredited in Business Valuation (ABV)
Chartered Financial Analyst (CFA), Charter Holder
Certified Fraud Examiner (CFE)

## Summary of Experience

Nick specializes in financial analysis and forensic accounting including economic damages valuation and fraud investigation.  Nick has assisted clients in various industries, with sizes ranging from individuals to Fortune 500 companies.  In commercial disputes, Nick has valued damages resulting from fraud, breach of contract, misappropriation of trade secrets, and business interruption.  In construction matters, Nick has assisted owners, general contractors, subcontractors, and sureties in valuing claims related to lost profits, loss of business value, cost overruns, defective work, acceleration, delay and disruption.

Nick has testified as an expert witness in State and Federal Court.  Nick has also presented damages calculations for mediation and settlement purposes.  Prior to joining GreerWalker in January 2017, Nick was a Principal in the Chicago office of a national consulting firm focused on litigation support and financial forensics.

Nick Harris
Page 2

## Trial, Court, and Deposition Testimony History

October 26, 2018, trial testimony, Y2 Yoga Cotswold, LLC v. Vinroy W. Reid; VR King Construction LLC; VR Investments, LLC; Baranko Enterprise Inc., and Spend Management Solutions, LLC; North Carolina Superior Court, Case No. 16-CVS-23179, Rabon Law Firm, PLLC, David Guidry, Esq., Attorney for Plaintiff

June 13, 2018, testimony, hearing on Motion to Modify Confirmed Bankruptcy Plan, Alan Thomas Withrow, United States Bankruptcy Court for the Western District of North Carolina; Case No. 11-30117, Moon Wright & Houston, PLLC, Richard S. Wright, Esq., Attorney for Debtor

May 16, 2018, testimony, hearing on Motion to Modify Confirmed Bankruptcy Plan and for Related Relief, William Patrick Cune and Sallie Ann Cune, United States Bankruptcy Court for the Western District of North Carolina; Case No. 16-31409, Moon Wright & Houston, PLLC, Richard S. Wright, Esq., Attorney for Debtors

## Selected Experience

*Commercial Damages and Business Valuation*

Reviewed the lost profits and disgorgement damages alleged by a pharmaceutical marketing and branding firm related to its claims against certain former employees and their newly-formed, competing business.  Reviewed and critiqued the plaintiff's expert's report on damages.  Identified methodological errors, inappropriate assumptions, and other potential causes for the plaintiff's alleged financial losses.

Analyzed and calculated damages based on lost profits and reasonable royalty methodologies related to the alleged misappropriation of trade secrets and other claims.  The plaintiff was the designer and developer of a lighting and electrical switching technology.  The defendant was the plaintiffs foreign manufacturing partner.  Plaintiff began producing and selling the technology following its termination of the parties' manufacture and supply agreement.  Assisted with the preparation of an expert damages report.  Assisted counsel in preparation for the opposing damages expert's cross examination at arbitration.

In a jury trial, provided expert testimony on the lost profit damages caused by a general contractor's breach of a construction contract.  The contract involved extensive remodeling and upfit for a yoga studio, spa, and restaurant.  The total construction costs nearly doubled the original contract, and delays totaled nearly fifteen months.

Valued damages to a value-added information technology (IT) reseller resulting from the alleged misappropriation of trade secrets and breach of fiduciary duty by a former company President (and 50% shareholder). Assisted counsel with preparation for expert depositions and prepared analysis in rebuttal to an opposing damages expert's testimony.

Consulted with the former business associates of a prominent wealth management professional accused of perpetrating a Ponzi scheme.  Those former business associates were unaware of the wealth manager's fraudulent activity.  As a result of the fraud, the former business associates, and the business entity that they managed, alleged reputational and economic damages.  Valued the diminution of business and intangible asset value resulting from the alleged Ponzi scheme.

Nick Harris
Page 3

Investigated and valued the damages suffered by a US manufacturer in a breach of contract dispute with an international pharmaceutical company. Assisted in the preparation of an affirmative damages report focused on unpaid invoices and unreimbursed costs incurred in accordance with the contract. Reviewed and rebutted the damages asserted by an opposing expert and assisted in the preparation of a rebuttal report. Assisted counsel in preparation for cross examination of that expert in deposition.

On behalf of a municipal park district and its counsel, determined the present value of the remaining term of a thirty-year lease on a parcel of the park district's land to a for-profit tenant. The lease required fixed, minimum monthly payments to the park district, plus a share of the lessee's revenue. Conducted interviews of the park district's personnel, reviewed the lease and other relevant documents, calculated the present value of the expected future lease proceeds, and ultimately presented findings to the park district's Executive Director and counsel. Additionally, worked with a third-party architect, consultant, and contractor to understand potential alternative uses for the leased land, incorporating those alternatives into the recommended settlement value.

On behalf of a global satellite company, prepared various financial analyses and investigations to determine whether cost documentation produced by a content provider was sufficient to support compliance with certain contract terms. Analyzed overheads, internal allocations, and related party transactions. In addition, investigated the due diligence performed, and the budgeting assumptions made, while negotiating the original contract.

Assisted multiple utilities with damages claims against the U.S. Department of Energy for costs related to spent nuclear fuel storage. Reviewed accounting records to analyze operating costs and capital expenditures required to store nuclear fuel waste on site. Assisted one utility in particular in preparing an expert damages report for litigation. Reviewed the reports and testimony of opposing experts in order to help prepare a rebuttal expert report.

*Construction*

Assisted the owner of an $8.5 billion-dollar hotel, condo, and casino project with the preparation of damages claims against a general contractor and several subcontractors. Aided in settlement negotiations with over 200 first-tier subcontractors. Helped compile and submit documentation necessary for the reduction of contractor liens. Investigated alleged labor inefficiencies, potential billing issues, and prepared damages claims for cost overruns. Led investigations into defective work performed by various contractors on three hotel and residential high-rises. Assisted the owner with assigning responsibility for the defective work and quantifying the related damages. Reviewed and analyzed the reports and testimony of over fifty expert witnesses, assisting the owner and counsel in preparation for settlement negotiations, depositions, and trial.

Assisted the owner of a potash mine and refinery with the audit of construction costs associated with a $2.5 billion expansion and upgrade project. The audit involved the testing of project controls and verification of costs in several areas including owned and third-party rental equipment, subcontractor and vendors costs, non-reimbursable labor, labor burdens and other costs. Led a team of approximately eight individuals including outside auditors and client personnel. Drafted the results and findings in an audit report prepared for use at mediation with the general contractor.

Valued lost profits associated with a demolition and hazardous material abatement subcontractor's wrongful termination on a high-rise residential rehabilitation project. Reviewed

Nick Harris
Page 4

project bid documents and comparable projects to determine expected costs and profits. Determined an appropriate discount rate and present valued the subcontractor's lost profits on the project.

Calculated the diminution of business value experienced by a plumbing subcontractor resulting from a management consultant and interim executive's fraudulent misrepresentations. Presented findings and opinions at a settlement conference with the client, opposing party, and the opposing party's insurer.

On behalf of counsel for a design firm, reviewed claims related to alleged design deficiencies brought by the owner (a municipality) and general contractor of a $40 million wastewater treatment plant renovation and upgrade project. The claims brought by the contractor included alleged rework and productivity impacts resulting from alleged design deficiencies and incomplete drawings, as well as costs incurred to retain outside experts to assess the alleged design deficiencies. Reviewed bid documents, budgets, and cost records in order to analyze the owner's and contractor's claims for cost increases.

Assisted the surety of a subcontractor involved in the construction of a research building for a major university. The subcontractor was accused of causing project delays and ultimately failing to perform on its contract. Analyzed the claim through a detailed review of invoices, change orders, payment applications, daily work logs, and correspondence.

*Fraud Investigation and Forensic Accounting*

Assisted a private equity fund and mezzanine debt lender with the investigation of, and valuation of damages associated with, financial statement fraud performed by two former executives of a portfolio company. The portfolio company performed cell tower upgrades and decommissioning. For a period of approximately one year, the executives reported inflated accounts receivable and revenue figures to its equity holders and creditors. As a result, the portfolio company over-extended its asset-based line of credit and overstated the value of the company during a time when the company was being marketed for sale. Performed an investigation and analysis, determining that the reported misinformation caused the portfolio company to incur unnecessary expenses that would not have been otherwise incurred. Summarized the investigation and damages in an expert report that was presented at mediation where the matter ultimately settled.

Assisted an investor in a medical outpatient facility with the investigation of alleged fraudulent inducement and misappropriation of assets. Reviewed investment documents, loan documents, and other communications related to the client's investment. Investigated and traced investment and loan proceeds that the client suspected were misappropriated. Analyzed the value of the property and equity investment at various times before and after the client's investment. Valued damages to the client under various scenarios, including a rescission. Assisted with communicating the results of the investigation through an expert report.

Investigated the financial records of two non-profit organizations in response to embezzlement allegations against former employees. Prepared an evidence package that was provided to the state's attorney's office, leading to the indictment of one former employee. Prepared and presented recommendations on accounting controls and procedures to help prevent future fraud.

Nick Harris
Page 5

*Government Contracts*

Assessed the extent of a technical non-compliance with Cost Accounting Standards (CAS) for a large government contractor.  The Defense Contract Audit Agency (DCAA) identified a CAS non-compliance related to the reporting of incurred costs on selected delivery orders performed by the contractor.  Assessment involved the review of accounting documents, proposals, contracts, estimates and training materials to determine the extent of the issue on both cost-type and fixed price contracts.

**Professional Affiliations**

Member, American Institute of Certified Public Accountants (AICPA)
Member, AICPA Forensic and Valuation Services Section
Member, North Carolina Association of Certified Public Accountants
Member, Financial Consulting Group (Business Valuation/Litigation Services)
Member, Chartered Financial Analyst Institute
Member, Association of Certified Fraud Examiners (ACFE)

**Community Service**

Charlotte Center for Legal Advocacy
*Board of Directors*

Larry King's Clubhouse
*Treasurer*

Association of Certified Fraud Examiners Charlotte Chapter
*Technology and Communications Director*

Chicago Lawyers Rugby Football Club
*Past Captain*

LAF (Legal Assistance Foundation) Chicago
*Past Young Professionals Board and Social Committee Member*

APPENDIX B

**John Bean Technologies Corporation v.**                    Appendix B
**B GSE Group, LLC and Bryan Bullerdick**
**Documents Received**

### *Pleadings and Interrogatory Responses*
First Amended Complaint and Exhibits A-O, dated March 16, 2018
Defendants' Answer to Plaintiff's First Amended Complaint, dated April 4, 2018
Order Entering into Preliminary Injunction, dated September 20, 2017
Plaintiff's Responses to Defendant's Second Set of Interrogatories, dated October 15, 2018
Plaintiff's Answer to Defendants' Counterclaims, dated April 18, 2018

### *Expert Reports*
Expert Report of David R. Duski, dated January 10, 2019

### *Bates Stamped Documents*

| Bates Beginning | Bates Ending |
|---|---|
| BGSE_00035349 | BGSE_00035349 |
| BGSE_00037881 | BGSE_00037881 |
| BGSE_00039280 | BGSE_00039280 |
| BGSE_00039809 | BGSE_00039813 |
| BGSE_00044676 | BGSE_00044681 |
| BGSE_00045336 | BGSE_00045337 |
| BGSE_00045959 | BGSE_00045959 |
| BGSE_00047062 | BGSE_00047062 |
| BGSE_00065902 | BGSE_00065903 |
| BGSE_00066012 | BGSE_00066013 |
| BGSE_00076917 | BGSE_00076917 |
| BGSE_00077153 | BGSE_00077153 |
| BGSE_00090287 | BGSE_00090288 |
| BGSE_00092556 | BGSE_00092556 |
| BGSE_00100413 | BGSE_00100413 |
| BGSE_00138564 | BGSE_00138565 |
| BGSE_00139721 | BGSE_00139721 |
| BGSE_00141670 | BGSE_00141670 |
| BGSE_00142327 | BGSE_00142328 |
| BGSE_00142330 | BGSE_00142331 |
| BGSE_00145587 | BGSE_00145588 |
| BGSE_00149196 | BGSE_00149196 |
| BGSE_00149199 | BGSE_00149200 |
| BGSE_00152412 | BGSE_00152412 |
| BGSE_00152986 | BGSE_00152986 |
| BGSE_00153174 | BGSE_00153175 |
| BGSE_00153851 | BGSE_00153851 |
| BGSE_00154534 | BGSE_00154535 |
| BGSE_00154860 | BGSE_00154860 |
| BGSE_00155282 | BGSE_00155282 |
| BGSE_00156350 | BGSE_00156350 |
| BGSE_00161789 | BGSE_00161789 |
| BGSE_00161903 | BGSE_00161904 |
| BGSE_00163032 | BGSE_00163032 |
| BGSE_00165273 | BGSE_00165273 |
| BGSE_00167900 | BGSE_00161904 |
| BGSE_00167903 | BGSE_00167904 |

Confidential Information
Attorneys' Eyes Only

**John Bean Technologies Corporation v.**
**B GSE Group, LLC and Bryan Bullerdick**
**Documents Received**

Appendix B

| Bates Beginning | Bates Ending |
|---|---|
| BGSE_00169358 | BGSE_00169358 |
| BGSE_00170936 | BGSE_00170936 |
| BGSE_00171976 | BGSE_00171976 |
| BGSE_00173378 | BGSE_00173378 |
| BGSE_00177430 | BGSE_00177430 |
| BGSE_00177733 | BGSE_00177733 |
| BGSE_00177976 | BGSE_00177977 |
| BGSE_00182953 | BGSE_00182953 |
| BGSE_00183158 | BGSE_00183159 |
| BGSE_00183458 | BGSE_00183458 |
| BGSE_00185063 | BGSE_00185064 |
| BGSE_00185066 | BGSE_00185066 |
| BGSE_00185068 | BGSE_00185069 |
| BGSE_00185934 | BGSE_00185934 |
| BGSE_00186110 | BGSE_00186111 |
| BGSE_00186713 | BGSE_00186713 |
| BGSE_00187542 | BGSE_00187542 |
| BGSE_00193157 | BGSE_00193157 |
| BGSE_00193373 | BGSE_00193373 |
| BGSE_00193448 | BGSE_00193448 |
| BGSE_00193482 | BGSE_00193482 |
| BGSE_00193564 | BGSE_00193564 |
| BGSE_00193760 | BGSE_00193760 |
| BGSE_00194329 | BGSE_00194329 |
| BGSE_00194761 | BGSE_00194761 |
| BGSE_00196055 | BGSE_00196055 |
| BGSE_00197431 | BGSE_00197432 |
| BGSE_00198909 | BGSE_00198909 |
| BGSE_00199147 | BGSE_00199147 |
| BGSE_00200662 | BGSE_00200663 |
| BGSE_00200748 | BGSE_00200748 |
| BGSE_00201193 | BGSE_00201193 |
| BGSE_00201221 | BGSE_00201221 |
| BGSE_00201625 | BGSE_00201626 |
| BGSE_00204609 | BGSE_00204609 |
| BGSE_00204729 | BGSE_00204729 |
| BGSE_00204731 | BGSE_00204735 |
| BGSE_00205171 | BGSE_00205171 |
| BGSE_00207062 | BGSE_00207062 |
| BGSE_00210675 | BGSE_00210675 |
| BGSE_00210881 | BGSE_00210882 |
| BGSE_00212474 | BGSE_00212475 |
| BGSE_00213198 | BGSE_00213198 |
| BGSE_00215648 | BGSE_00215649 |
| BGSE_00215788 | BGSE_00215789 |
| BGSE_00215803 | BGSE_00215803 |
| BGSE_00215834 | BGSE_00215835 |
| BGSE_00216568 | BGSE_00216574 |
| BGSE_00216691 | BGSE_00216691 |

## John Bean Technologies Corporation v. B GSE Group, LLC and Bryan Bullerdick Documents Received

Appendix B

| Bates Beginning | Bates Ending |
|---|---|
| BGSE_00216720 | BGSE_00216721 |
| BGSE_00216870 | BGSE_00216871 |
| BGSE_00216910 | BGSE_00216910 |
| BGSE_00217172 | BGSE_00217173 |
| BGSE_00217344 | BGSE_00217345 |
| BGSE_00217451 | BGSE_00217452 |
| BGSE_00218625 | BGSE_00218625 |
| BGSE_00218628 | BGSE_00218628 |
| BGSE_00218892 | BGSE_00218892 |
| BGSE_00219270 | BGSE_00219270 |
| BGSE_00219671 | BGSE_00219671 |
| BGSE_00219911 | BGSE_00219911 |
| BGSE_00223990 | BGSE_00223990 |
| BGSE_00224467 | BGSE_00224467 |
| BGSE_00227096 | BGSE_00227096 |
| BGSE_00231207 | BGSE_00231207 |
| BGSE_00231226 | BGSE_00231226 |
| BGSE_00234484 | BGSE_00234484 |
| BGSE_00234846 | BGSE_00234850 |
| BGSE_00237415 | BGSE_00237416 |
| BGSE_00237543 | BGSE_00237543 |
| BGSE_00238103 | BGSE_00238103 |
| BGSE_00238805 | BGSE_00238806 |
| BGSE_00238893 | BGSE_00238894 |
| BGSE_00239410 | BGSE_00239411 |
| BGSE_00239523 | BGSE_00239524 |
| BGSE_00240489 | BGSE_00240489 |
| BGSE_00241853 | BGSE_00241854 |
| BGSE_00241886 | BGSE_00241887 |
| BGSE_00243222 | BGSE_00243222 |
| BGSE_00243312 | BGSE_00243312 |
| BGSE_00243326 | BGSE_00243327 |
| BGSE_00243359 | BGSE_00243359 |
| BGSE_00245367 | BGSE_00245369 |
| BGSE_00245468 | BGSE_00245468 |
| BGSE_00246198 | BGSE_00246198 |
| BGSE_00249210 | BGSE_00249210 |
| BGSE_00249793 | BGSE_00249793 |
| BGSE_00249802 | BGSE_00249804 |
| BGSE_00249839 | BGSE_00249839 |
| BGSE_00251312 | BGSE_00251312 |
| BGSE_00251426 | BGSE_00251426 |
| BGSE_00251951 | BGSE_00251951 |
| BGSE_00252279 | BGSE_00252282 |
| BGSE_00254865 | BGSE_00254865 |
| BGSE_00254869 | BGSE_00254869 |
| BGSE_00254893 | BGSE_00254893 |
| BGSE_00255693 | BGSE_00255693 |
| BGSE_00255695 | BGSE_00255695 |
| BGSE_00255709 | BGSE_00255709 |

**John Bean Technologies Corporation v.**
**B GSE Group, LLC and Bryan Bullerdick**
**Documents Received**

Appendix B

| Bates Beginning | Bates Ending |
|---|---|
| BGSE_00255714 | BGSE_00255714 |
| BGSE_00255750 | BGSE_00255750 |
| BGSE_00257207 | BGSE_00257208 |
| BGSE_00266188 | BGSE_00266188 |
| BGSE_00270585 | BGSE_00270586 |
| BGSE_00272442 | BGSE_00272443 |
| BGSE_00273504 | BGSE_00273505 |
| BGSE_00275765 | BGSE_00275767 |
| BGSE_00276150 | BGSE_00276151 |
| BGSE_00276491 | BGSE_00276491 |
| BGSE_00277402 | BGSE_00277402 |
| BGSE_00285559 | BGSE_00285559 |
| BGSE_00285902 | BGSE_00285902 |
| BGSE_00286220 | BGSE_00286220 |
| BGSE_00286232 | BGSE_00286232 |
| BGSE_00286240 | BGSE_00286240 |
| BGSE_00287356 | BGSE_00287357 |
| BGSE_00287362 | BGSE_00287363 |
| BGSE_00288044 | BGSE_00288044 |
| BGSE_00288119 | BGSE_00288119 |
| BGSE_00288295 | BGSE_00288296 |
| BGSE_00289786 | BGSE_00289789 |
| BGSE_00290940 | BGSE_00290941 |
| BGSE_00293515 | BGSE_00293515 |
| BGSE_00297007 | BGSE_00297007 |
| BGSE_00300730 | BGSE_00300732 |
| BGSE_00303463 | BGSE_00303463 |
| BGSE_00303609 | BGSE_00303609 |
| BGSE_00303612 | BGSE_00303612 |
| BGSE_00306746 | BGSE_00306746 |
| BGSE_00306750 | BGSE_00306750 |
| BGSE_00308846 | BGSE_00308846 |
| BGSE_00311243 | BGSE_00311243 |
| BGSE_00311363 | BGSE_00311363 |
| BGSE_00311376 | BGSE_00311378 |
| BGSE_00312012 | BGSE_00312012 |
| BGSE_00312615 | BGSE_00312616 |
| BGSE_00312677 | BGSE_00312677 |
| BGSE_00313683 | BGSE_00313684 |
| BGSE_00315885 | BGSE_00315885 |
| BGSE_00316709 | BGSE_00316710 |
| BGSE_00316781 | BGSE_00316781 |
| BGSE_00324057 | BGSE_00324059 |
| BGSE_00324149 | BGSE_00324149 |
| BGSE_00327127 | BGSE_00327127 |
| BGSE_00329724 | BGSE_00329724 |
| BGSE_00330656 | BGSE_00330656 |
| BGSE_00331114 | BGSE_00331114 |
| BGSE_00332906 | BGSE_00332906 |
| BGSE_00332911 | BGSE_00332911 |

Confidential Information
Attorneys' Eyes Only

**John Bean Technologies Corporation v.**
**B GSE Group, LLC and Bryan Bullerdick**
**Documents Received**

Appendix B

| Bates Beginning | Bates Ending |
|---|---|
| BGSE_00332917 | BGSE_00332917 |
| BGSE_00333014 | BGSE_00333014 |
| BGSE_00334253 | BGSE_00334253 |
| BGSE_00334433 | BGSE_00334433 |
| BGSE_00335587 | BGSE_00335588 |
| BGSE_00336769 | BGSE_00336769 |
| BGSE_00337953 | BGSE_00337953 |
| BGSE_00338687 | BGSE_00338687 |
| BGSE_00339470 | BGSE_00339471 |
| BGSE_00339473 | BGSE_00339473 |
| BGSE_00340898 | BGSE_00340898 |
| BGSE_00340901 | BGSE_00340901 |
| BGSE_00340909 | BGSE_00340909 |
| BGSE_00340911 | BGSE_00340911 |
| BGSE_00340913 | BGSE_00340913 |
| BGSE_00340923 | BGSE_00340923 |
| BGSE_00340927 | BGSE_00340927 |
| BGSE_00347333 | BGSE_00347334 |
| BGSE_00347425 | BGSE_00347426 |
| BGSE_00347936 | BGSE_00347936 |
| BGSE_00351167 | BGSE_00351167 |
| BGSE_00351456 | BGSE_00351457 |
| BGSE_00353142 | BGSE_00353142 |
| BGSE_00358949 | BGSE_00358951 |
| BGSE_00359208 | BGSE_00359209 |
| BGSE_00359447 | BGSE_00359447 |
| BGSE_00360373 | BGSE_00360373 |
| BGSE_00371062 | BGSE_00371062 |
| BGSE_00371935 | BGSE_00371936 |
| BGSE_00372203 | BGSE_00372203 |
| BGSE_00373452 | BGSE_00373455 |
| BGSE_00374425 | BGSE_00374425 |
| BGSE_00381515 | BGSE_00381515 |
| BGSE_00381517 | BGSE_00381517 |
| BGSE_00384519 | BGSE_00384519 |
| BGSE_00384629 | BGSE_00384629 |
| BGSE_00384777 | BGSE_00384777 |
| BGSE_00384999 | BGSE_00384999 |
| BGSE_00385193 | BGSE_00385193 |
| BGSE_00387190 | BGSE_00387190 |
| BGSE_00387320 | BGSE_00387320 |
| BGSE_00387675 | BGSE_00387675 |
| BGSE_00387681 | BGSE_00387682 |
| BGSE_00388760 | BGSE_00388760 |
| BGSE_00388815 | BGSE_00388815 |
| BGSE_00388820 | BGSE_00388820 |
| BGSE_00389230 | BGSE_00389235 |
| BGSE_00391139 | BGSE_00391139 |
| BGSE_00392520 | BGSE_00392527 |
| BGSE_00393674 | BGSE_00393677 |

**John Bean Technologies Corporation v.**
**B GSE Group, LLC and Bryan Bullerdick**
**Documents Received**

Appendix B

| Bates Beginning | Bates Ending |
|---|---|
| BGSE_00394260 | BGSE_00394261 |
| BGSE_00395395 | BGSE_00395396 |
| BGSE_00395424 | BGSE_00395426 |
| BGSE_00397922 | BGSE_00397928 |
| BGSE_00398494 | BGSE_00398521 |
| BGSE_00398595 | BGSE_00398595 |
| BGSE_00398673 | BGSE_00398674 |
| BGSE_00398905 | BGSE_00398905 |
| BGSE_00399785 | BGSE_00399785 |
| BGSE_00400850 | BGSE_00400850 |
| BGSE_00402067 | BGSE_00402067 |
| BGSE_00402070 | BGSE_00402070 |
| BGSE_00402104 | BGSE_00402106 |
| BGSE_00402110 | BGSE_00402110 |
| BGSE_00402195 | BGSE_00402195 |
| BGSE_00402219 | BGSE_00402219 |
| BGSE_00402704 | BGSE_00402704 |
| BGSE_00402814 | BGSE_00402814 |
| BGSE_00402864 | BGSE_00402865 |
| BGSE_00402867 | BGSE_00402867 |
| BGSE_00403108 | BGSE_00403108 |
| BGSE_00403538 | BGSE_00403538 |
| BGSE_00403664 | BGSE_00403664 |
| BGSE_00403681 | BGSE_00403681 |
| BGSE_00403870 | BGSE_00403870 |
| BGSE_00404030 | BGSE_00404031 |
| BGSE_00404034 | BGSE_00404034 |
| BGSE_00404426 | BGSE_00404426 |
| BGSE_00404466 | BGSE_00404466 |
| BGSE_00404788 | BGSE_00404789 |
| BGSE_00405329 | BGSE_00405329 |
| BGSE_00405337 | BGSE_00405337 |
| BGSE_00405470 | BGSE_00405470 |
| BGSE_00405546 | BGSE_00405546 |
| BGSE_00405645 | BGSE_00405645 |
| BGSE_00405855 | BGSE_00405855 |
| BGSE_00405997 | BGSE_00405997 |
| BGSE_00407683 | BGSE_00407683 |
| BGSE_00420117 | BGSE_00420117 |
| BGSE_00420180 | BGSE_00420181 |
| BGSE_00420296 | BGSE_00420296 |
| BGSE_00420593 | BGSE_00420593 |
| BGSE_00420617 | BGSE_00420622 |
| BGSE_00420626 | BGSE_00420626 |
| BGSE_00421080 | BGSE_00421084 |
| BGSE_00421245 | BGSE_00421246 |
| BGSE_00421680 | BGSE_00421681 |
| BGSE_00422790 | BGSE_00422790 |
| BGSE_00422795 | BGSE_00422795 |
| BGSE_00422876 | BGSE_00422876 |

## John Bean Technologies Corporation v.          Appendix B
## B GSE Group, LLC and Bryan Bullerdick
## Documents Received

| Bates Beginning | Bates Ending |
|---|---|
| BGSE_00424791 | BGSE_00424791 |
| BGSE_00426566 | BGSE_00426566 |
| BGSE_00427280 | BGSE_00427281 |
| BGSE_00427635 | BGSE_00427635 |
| BGSE_00427981 | BGSE_00427981 |
| BGSE_00428966 | BGSE_00428966 |
| BGSE_00428976 | BGSE_00428976 |
| BGSE_00429006 | BGSE_00429007 |
| BGSE_00429020 | BGSE_00429020 |
| BGSE_00429660 | BGSE_00429660 |
| BGSE_00429720 | BGSE_00429720 |
| BGSE_00429809 | BGSE_00429810 |
| BGSE_00429898 | BGSE_00429898 |
| BGSE_00430281 | BGSE_00430281 |
| BGSE_00431301 | BGSE_00431302 |
| BGSE_00431304 | BGSE_00431304 |
| BGSE_00431388 | BGSE_00431389 |
| BGSE_00431459 | BGSE_00431459 |
| BGSE_00433396 | BGSE_00433396 |
| BGSE_00433401 | BGSE_00433407 |
| BGSE_00433428 | BGSE_00433428 |
| BGSE_00434098 | BGSE_00434098 |
| BGSE_00436365 | BGSE_00436365 |
| BGSE_00436493 | BGSE_00436494 |
| BGSE_00438082 | BGSE_00438082 |
| BGSE_00438624 | BGSE_00438624 |
| BGSE_00441618 | BGSE_00441618 |
| BGSE_00441811 | BGSE_00441811 |
| BGSE_00441966 | BGSE_00441966 |
| BGSE_00442028 | BGSE_00442028 |
| BGSE_00442877 | BGSE_00442877 |
| BGSE_00444031 | BGSE_00444031 |
| BGSE_00444243 | BGSE_00444245 |
| BGSE_00447085 | BGSE_00447085 |
| BGSE_00447138 | BGSE_00447138 |
| BGSE_00447860 | BGSE_00447860 |
| BGSE_00447886 | BGSE_00447889 |
| BGSE_00448524 | BGSE_00448524 |
| BGSE_00448974 | BGSE_00448975 |
| BGSE_00449578 | BGSE_00449578 |
| BGSE_00449613 | BGSE_00449618 |
| BGSE_00449841 | BGSE_00449841 |
| BGSE_00450006 | BGSE_00450006 |
| BGSE_00450008 | BGSE_00450008 |
| BGSE_00457980 | BGSE_00457980 |
| BGSE_00458010 | BGSE_00458010 |
| BGSE_00459714 | BGSE_00459714 |
| BGSE_00460259 | BGSE_00460259 |
| BGSE_00462118 | BGSE_00462119 |
| BGSE_00462121 | BGSE_00462122 |

Confidential Information
Attorneys' Eyes Only

**John Bean Technologies Corporation v.**
**B GSE Group, LLC and Bryan Bullerdick**
**Documents Received**

Appendix B

| Bates Beginning | Bates Ending |
|---|---|
| BGSE_00462589 | BGSE_00462589 |
| BGSE_00463759 | BGSE_00463760 |
| BGSE_00463862 | BGSE_00463862 |
| BGSE_00463944 | BGSE_00463944 |
| BGSE_00464053 | BGSE_00464053 |
| BGSE_00464055 | BGSE_00464056 |
| BGSE_00464116 | BGSE_00464116 |
| BGSE_00464324 | BGSE_00464324 |
| BGSE_00464326 | BGSE_00464327 |
| BGSE_00464345 | BGSE_00464345 |
| BGSE_00464355 | BGSE_00464356 |
| BGSE_00464359 | BGSE_00464359 |
| BGSE_00464366 | BGSE_00464366 |
| BGSE_00464370 | BGSE_00464370 |
| BGSE_00464426 | BGSE_00464426 |
| BGSE_00464429 | BGSE_00464429 |
| BGSE_00464438 | BGSE_00464438 |
| BGSE_00469780 | BGSE_00469781 |
| BGSE_00470064 | BGSE_00470065 |
| BGSE_00482547 | BGSE_00482547 |
| BGSE_00489372 | BGSE_00489372 |
| BGSE_00489374 | BGSE_00489374 |
| BGSE_00494723 | BGSE_00494723 |
| BGSE_00495493 | BGSE_00495494 |
| BGSE_00497462 | BGSE_00497462 |
| BGSE_00506677 | BGSE_00506677 |
| BGSE_00509054 | BGSE_00509054 |
| BGSE_00509264 | BGSE_00509264 |
| BGSE_00516181 | BGSE_00516181 |
| BGSE_00519307 | BGSE_00519307 |
| BGSE_00541355 | BGSE_00541356 |
| BGSE_00549995 | BGSE_00549995 |
| BGSE_00576033 | BGSE_00576033 |
| JBT00001378 | JBT00001399 |
| JBT00001518 | JBT00001523 |
| JBT00010712 | JBT00010731 |
| JBT00014971 | JBT00015878 |
| JBT00015901 | JBT00015902 |
| JBT00015950 | JBT00015977 |
| JBT00015988 | JBT00015995 |
| JBT00016061 | JBT00016100 |
| JBT00016277 | JBT00016278 |
| JBT00019121 | JBT00019123 |
| JBT00020008 | JBT00020013 |
| JBT00023185 | JBT00023185 |
| JBT00023190 | JBT00023192 |
| JBT00023250 | JBT00023260 |
| JBT00023949 | JBT00023949 |
| JBT00024265 | JBT00024267 |
| JBT00024648 | JBT00024655 |

**John Bean Technologies Corporation v.**              Appendix B
**B GSE Group, LLC and Bryan Bullerdick**
**Documents Received**

| <u>Bates Beginning</u> | <u>Bates Ending</u> |
|---|---|
| JBT00024991 | JBT00024991 |
| JBT00025164 | JBT00025164 |
| JBT00025349 | JBT00025349 |
| JBT00025574 | JBT00025575 |
| JBT00026313 | JBT00026350 |
| JBT00027360 | JBT00027361 |
| JBT00029419 | JBT00029440 |
| JBT00032235 | JBT00032236 |
| JBT00032417 | JBT00032461 |
| JBT00032766 | JBT00032772 |
| JBT00032780 | JBT00032784 |
| JBT00032897 | JBT00032918 |
| JBT00034092 | JBT00034096 |
| JBT00034114 | JBT00034122 |
| JBT00034157 | JBT00034171 |
| JBT00034268 | JBT00034270 |
| JBT00034276 | JBT00034277 |
| JBT00038734 | JBT00038843 |
| JBT00040850 | JBT00040851 |
| JBT00040884 | JBT00040942 |
| JBT00041002 | JBT00041005 |
| JBT00047921 | JBT00047925 |
| JBT00061628 | JBT00061638 |
| JBT00062494 | JBT00062494 |
| JBT00069829 | JBT00069830 |
| JBT00081239 | JBT00081312 |
| JBT00083821 | JBT00083823 |
| JBT00085524 | JBT00085526 |
| JBT00089549 | JBT00089550 |
| JBT00092521 | JBT00092522 |
| JBT00094378 | JBT00094397 |
| JBT00094540 | JBT00094542 |
| JBT00094585 | JBT00094592 |
| JBT00095145 | JBT00095154 |
| JBT00095162 | JBT00095167 |
| JBT00095240 | JBT00095241 |
| JBT00095996 | JBT00095997 |
| JBT00108561 | JBT00108575 |
| JBT00109157 | JBT00109170 |
| JBT00109650 | JBT00109651 |
| JBT00109655 | JBT00109655 |
| JBT00109796 | JBT00109801 |
| JBT00109803 | JBT00109811 |
| JBT00109815 | JBT00109817 |
| JBT00109948 | JBT00109985 |
| JBT00110056 | JBT00110056 |
| JBT00110170 | JBT00110173 |
| JBT00112843 | JBT00112843 |
| JBT00112845 | JBT00112847 |
| JBT00112952 | JBT00112953 |

**John Bean Technologies Corporation v.
B GSE Group, LLC and Bryan Bullerdick
Documents Received**

Appendix B

| Bates Beginning | Bates Ending |
|---|---|
| JBT00113162 | JBT00113167 |
| JBT00113283 | JBT00113316 |
| JBT00113347 | JBT00113347 |
| JBT00113660 | JBT00113691 |
| JBT00113703 | JBT00113710 |
| JBT00113855 | JBT00113869 |
| JBT00114208 | JBT00114226 |
| JBT00114503 | JBT00114505 |
| JBT00114520 | JBT00114522 |
| JBT00114595 | JBT00114601 |
| JBT00114608 | JBT00114620 |
| JBT00126082 | JBT00126100 |
| JBT00126655 | JBT00126656 |
| JBT00126677 | JBT00126683 |
| JBT00127040 | JBT00127040 |
| JBT00127188 | JBT00127192 |
| JBT00127268 | JBT00127272 |
| JBT00131689 | JBT00131694 |
| JBT00133021 | JBT00133030 |
| JBT00133056 | JBT00133069 |
| JBT00133119 | JBT00133123 |
| JBT00133143 | JBT00133150 |
| JBT00136658 | JBT00136658 |
| JBT00136675 | JBT00136678 |
| JBT00136681 | JBT00136683 |
| JBT00136909 | JBT00136910 |
| JBT00141600 | JBT00141603 |
| JBT00141983 | JBT00141987 |
| JBT00142023 | JBT00142023 |
| JBT00142034 | JBT00142034 |
| JBT00142050 | JBT00142057 |
| JBT00142095 | JBT00142110 |
| JBT00142281 | JBT00142282 |
| JBT00143139 | JBT00143154 |
| JBT00143159 | JBT00143160 |
| JBT00144845 | JBT00144845 |
| JBT00144900 | JBT00144905 |
| JBT00144907 | JBT00144908 |
| JBT00145024 | JBT00145069 |
| JBT00145156 | JBT00145216 |
| JBT00145294 | JBT00145345 |
| JBT00145414 | JBT00145429 |
| JBT00145615 | JBT00145615 |
| JBT00145743 | JBT00145743 |
| JBT00145871 | JBT00145871 |
| JBT00145885 | JBT00145885 |
| JBT00146040 | JBT00146045 |
| JBT00146351 | JBT00146351 |
| JBT00146355 | JBT00146357 |

Confidential Information
Attorneys' Eyes Only

**John Bean Technologies Corporation v.**                   Appendix B
**B GSE Group, LLC and Bryan Bullerdick**
**Documents Received**

| Bates Beginning | Bates Ending |
|---|---|
| JBT00146417 | JBT00146419 |
| JBT00146431 | JBT00146433 |
| JBT00146442 | JBT00146443 |
| JBT00146454 | JBT00146473 |
| JBT00146594 | JBT00146905 |
| JBT00149383 | JBT00149422 |
| JBT00543331 | JBT00543331 |

***Depositions***

Deposition of Bryan M. Bullerdick and Exhibits 1-69, taken June 21, 2018
Deposition of Patrick H. Lester and Exhibits 70-106, taken July 18, 2018
Deposition of Marshall Scott Dils and Exhibits 108-174, taken July 26, 2018
Deposition of Brian DeRoche and Exhibits 232-273, taken November 28, 2018
Deposition of Scott Gwilliam and Exhibits 175-231, taken November 7, 2018
Deposition of Brian D. DeRoche and Exhibits 272 and 291-299, taken December 20, 2018
Deposition of Joaquin Gabriel Magallanez and Exhibits 274-290, taken December 20, 2018

***Research***

John Bean Technologies Corporation Form 10-K for the fiscal year ended December 31, 2014
John Bean Technologies Corporation Form 10-K for the fiscal year ended December 31, 2017
AICPA Practice Aid, Calculating Intellectual Property Infringement Damages
AICPA Practice Aid, Calculating Lost Profits
Litigation Services Handbook, Sixth Edition
15 U.S.C. Section 1117(a)
Civil Action No. 1:18-cv-159 in the United States District Court, Southern District of Ohio, Western Division

ATTACHMENTS

**John Bean Technologies Corporation vs. B GSE Group, LLC, et al.**
**BGSE Supplier Pricing Comparison and Alleged Cost Savings (PC Air)**

Attachment 1

| Count | Project | Scope Per Duski Report (c) | Purchase Order Date | Supplier | Product Description | Quantity Ordered | Price Per Unit (1) | Amount | Would-Have-Been BGSE Cost Using JBT as Supplier | Cost Savings to BGSE | Percentage Over / (Under) Twist Cost |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | Estimated Cost of Equipment from Twist and Northern Air | | | | | | | | |
| 1 | Lemoore P-328 | PC Air | 8/29/2015 (d) | Twist (d) | 30-Ton DX High Pressure F 35 Unit (d) | 4 (e) | | | | | |
| 2 | Beaufort P-465 | PC Air | 2/12/2016 (g) | Twist (g) | 30-Ton DX High Pressure F 35 Unit (g) | 4 (h) | | | | | |
| 3 | Kadena P-803 | PC Air | 1/25/2016 (i) | Twist (i) | 30-Ton DX High Pressure F 35 Unit (i) | 3 (k) | | | | | |
| 4 | Lemoore P-378 | PC Air | 9/23/2016 (a) | Twist (a) | 30-Ton DX High Pressure F-35 Unit (a) | 7 (e) | | | | | |
| 5 | Beaufort P-464 | PC Air | | Northern Air (q) | 25-Ton Cooljet CAS (4) | 9 (m) | | | | | |
| 6 | Eielson EIE-376 | PC Air | | Northern Air (q) | 25-Ton Cooljet CAS (4) | 4 (n) | | | | | |
| 7 | Burlington B-795 | PC Air | | Northern Air (q) | CAS Package (4) | 1 (o) | | | | | |
| 8 | Eielson EIE-378 | PC Air | | Northern Air (q) | PC Air, Stand, and Pump (4) | 8 (p) | | | | | |

| Product Description | Quantity | Price Per Unit |
|---|---|---|
| JBT Pricing Per "Blanket Quote" (r) | | |
| HPC-F 30 Ton High Pressure Pre-Conditioned Air unit – Fixed | 1-4 | $ |
| HPC-F 30 Ton High Pressure Pre-Conditioned Air unit – Fixed | 5-9 | $ |
| HPC-F 30 Ton High Pressure Pre-Conditioned Air unit – Fixed | 10-14 | $ |

**General Note(s):**
This analysis does not include a pricing comparison for certain products/services including GPU, PC Air Master Controller, and PC Air Startup and Training.  As shown in attachment 1.1, and per discussion with Mr. Bullerdick, BGSE did not save costs by using Piller to supply GPU equipment instead of JBT.  Furthermore, based on Exhibits 3 and 4 to Mr. Duski's report, the estimated cost to BGSE for PC Air Master Controller and PC Air Startup and Training is greater than the amount it would have paid to JBT.  As such, those products/services are not included in this analysis.  The addition of those items may further reduce the amount of BGSE's alleged unjust enrichment.

**Source(s):**
(a) BGSE_00275766.
(b) Duski Report, Exhibit 4, Schedule D.
(c) Duski Report, Appendix A.
(d) BGSE_00216721.
(e) Duski Report, Exhibit 4, Schedule A.
(f) Duski Report, Exhibit 3, Schedule A1.
(g) BGSE_00241887.
(h) Duski Report, Exhibit 4, Schedule B.
(i) Duski Report, Exhibit 3, Schedule B1.
(j) BGSE_00239524.
(k) Duski Report, Exhibit 4, Schedule C.
(l) Duski Report, Exhibit 3, Schedule C1.
(m) Duski Report, Exhibit 4, Schedule E.
(n) Duski Report, Exhibit 4, Schedule F.
(o) Duski Report, Exhibit 4, Schedule G.
(p) Duski Report, Exhibit 4, Schedule H.
(q) Discussion with Mr. Bullerdick.
(r) JBT00133067.

**Note(s):**
(1) Amounts shown in this column do not include additional materials such as CAS Soft Hose to Hard Pipe Connections, CAS Flanges, Hose Clamps, etc.  To the extent that those types of costs are included in JBT's "blanket quote" pricing, then they should also be included in this column.  The addition of those costs would further reduce the amount of BGSE's alleged unjust enrichment.
(2) This amount is based on pricing in JBT's "blanket quote" by quantity.
(3) This amount is an estimate of JBT's would-have-been pricing using the percentage pricing increase between Twist and JBT on the Lemoore P-378 project (i.e., based on the "blanket quote" for PC Air) applied to the estimated cost of Northern Air equipment.
(4) Per discussion with Mr. Bullerdick this unit meets the specifications and requirements for this project and meets or exceeds the performance of a 30-ton JBT unit.

CONFIDENTIAL INFORMATION
ATTORNEYS EYES ONLY

## John Bean Technologies Corporation vs. B GSE Group, LLC, et al.
## BGSE Supplier Pricing Comparison (GPU)

Attachment 1.1

| JBT GPU Pricing | | Estimated Cost of Equipment from Piller | | | | Actual Cost Per |
|---|---|---|---|---|---|---|
| Per BGSE "Blanket" Purchase Order [a] | | Per Duski Report Exhibit 4 [b] | | | | Unit Over / (Under) JBT |
| Item Description | Price Per Unit | Item Description | Price Per Unit | Duski Schedule | Project | Price |
| *Comparison of 270 VDC Pricing* | | | | | | |
| 270 VDC | $ ■ | 270 VDC | $ ■ | E | Beaufort P-466 | |
| 270 VDC Stands | ■ | 270 VDC | $ ■ | G | Burlington B-795 | |
| | | 270 VDC with Stand | $ ■ | H | Eielson EIE-378 | |
| Total $ ■ | | Average $ ■ [2] | | | | $ ■ [2] |
| | | | | | | |
| *Comparison of Pricing on GPU Items BGSE Has Not Supplied or that JBT Would Not Have Supplied on the Projects [1]* | | | | | | |
| 270 VDC / 400HZ Combo | $ ■ | 270 VDC / 400HZ | $ ■ | E | Beaufort P-467 | |
| 90KVA 400HZ | $ ■ | 270 VDC FLED | $ ■ | E | Beaufort P-464 | |
| 90KVA Stands | $ ■ | 270 VDC 100 Foot | $ ■ | E | Beaufort P-468 | |
| | | 270 VDC 45 Foot | $ ■ | E | Beaufort P-465 | |
| | | 270 VDC Cable 100 Ft. | $ ■ | H | Eielson EIE-378 | |
| | | 270 VDC Cable Racks Floor Mounted | $ ■ | H | Eielson EIE-378 | |

**Source(s):**
(a) JBT00015991.
(b) Duski Report, Exhibit 4, Schedules E, G, and H.

**Note(s):**
(1) I understand from Mr. Bullerdick that while BGSE's Project Estimates list "270 VDC / 400 HZ" combination units and "270 VDC FLED," BGSE never supplied or installed these products for the respective Projects.
(2) Per discussion with Mr. Bullerdick, units from Piller are shipped from Europe.  Shipping can range from $2,000 to $4,000 per unit which is higher than shipping on JBT units.  As such there is no cost savings to BGSE associated with using Piller as the supplier of GPU versus JBT.

CONFIDENTIAL INFORMATION
ATTORNEYS EYES ONLY

**John Bean Technologies Corporation vs. B GSE Group, LLC, et al.**                                      Attachment 2

**Overlap Between Mr. Duski's Calculation of JBT's Alleged Lost Profit and BGSE's Alleged Unjust Enrichment**

| | BGSE's Alleged Unjust Enrichment Per Mr. Duski [a] | | | JBT Alleged Lost Profit Per Mr. Duski [b] | | | Estimated Would-Have-Been BGSE Incremental Costs Using JBT as Supplier | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | A | B | C = A + B | D | E | F = D + E | G = (D) | H | I = G + H | J = A + I | K = C - J |
| Project | Estimated BGSE Revenue | Estimated BGSE Incremental Costs | Estimated BGSE Gross Profit | Alleged JBT Lost Revenue | Alleged JBT Incremental Costs | Alleged JBT Lost Profit | Alleged JBT Lost Revenue | Additional Non-JBT Cost [a](1) | Total | Estimated Would-Have-Been BGSE Profit Using JBT as Supplier | Overlap Between Alleged Lost Profits and Disgorgement |
| Lemoore P-328 | $ | $ | $ | $ | $ | $ | $ | $ | $ | $ | $ |
| Beaufort P-465 | $ | $ | $ | $ | $ | $ | $ | $ | $ | $ | |
| Kadena P-803 | $ | $ | $ | $ | $ | $ | $ | $ | $ | $ | |
| | | | | | | | | | | Total $ | |

**Source(s):**
(a) Duski Report, Exhibit 4, Schedules A, B and C.
(b) Duski Report, Exhibit 3, Schedules A1, B1 and C1.

**Note(s):**
(1) These amounts are estimates of the additional costs that BGSE would have incurred in addition to the cost of products and services that JBT would have provided.  They include CAS Soft Hose to Hard Pipe Connection, CAS Flange, Hose Clamps, and Shipping.  Per discussion with Mr. Bullerdick, these items would not have been provided by JBT.  In addition, these items do not appear to be included in JBT's costs as part of Mr. Duski's calculation of JBT's alleged lost profit on these projects.

CONFIDENTIAL INFORMATION
ATTORNEYS EYES ONLY

**John Bean Technologies Corporation vs. B GSE Group, LLC, et al.**
**Timing of JBT Direct Bidding Relative to JBT Discovery of BGSE Alleged Wrongful Acts**

Attachment 3

| Project | Approximate Date of RFP / Bid | | Contractor Receiving JBT Bid/Quote | | | JBT Alleged Damages | |
|---|---|---|---|---|---|---|---|
| | | | Actual | | But For BGSE Alleged Wrongful Acts | Lost Profit | BGSE Unjust Enrichment |
| Beaufort P-465 | 2014 | (c) | BGSE | (j) | BGSE | X | X |
| Lemoore P-328 | Feb-15 | (a) | BGSE | (k) | BGSE | X | X |
| *May 2016 - Email from Michael Austin stating, "… how do we keep from becoming competitors (we both feel like this is likely not best for either party)." (f)* | | | | | | | |
| Lemoore P-378 | Jan-16 | (q) | Not Submitted | (e) | BGSE (1) | | X |
| Kadena P-803 | Jan-16 | (d) | BGSE | (l)(3) | BGSE | X | X |
| *August 2016 - JBT "discovered an instance where BGSE misrepresented that is was the manufacturer of a JBT product and misrepresented its relationship with JBT …" (b)* | | | | | | | |
| Beaufort P-464 | Jan-17 | (f) | Haskell, Erickson Associates, Mitchell Brothers, Sauer | (i) | Unknown / Potentially BGSE | | X |
| Eielson EIE-376 | Mar-17 | (h) | RQ Construction | (m)(2) | Unknown / Potentially BGSE | | X |
| Burlington B-795 | Apr-17 | (n) | Benaka, Kallidus Technologies | (o) | Unknown / Potentially BGSE | | X |
| Eielson EIE-378 | May-17 | (p) | Amped Electric / Amped Fire & Security | (g) | Unknown / Potentially BGSE | | X |

**Source(s):**
(a) Duski Report, p. 26.
(b) Duski Report, p. 17.
(c) Duski Report, pp. 35-38.
(d) Duski Report, p. 43.
(e) Duski Report, p. 50.
(f) JBT00109976-85 at 77.
(g) Duski Report, p. 65.
(h) Duski Report, p. 55.
(i) Duski Report, p. 53.
(j) 'Duski Report, p. 38.
(k) Duski Report, p. 27.
(l) Duski Report, pp. 44-45.
(m) Duski Report, p. 56.
(n) Duski Report, p. 58.
(o) Duski Report, p. 61 and footnote 312.
(p) Duski Report, p. 63.
(q) Duski Report, p. 47.
(r) Duski Report, p. 51.

**Note(s):**
(1) Mr. Duski states, "I further understand that JBT did not submit a bid for PC Air or GPUs to BGSE for this project because JBT believed that BGSE was bidding JBT equipment on its behalf."
(2) Per Mr. Duski, this JBT bid was unsolicited.
(3) Per Mr. Duski's report at page 45, "While JBT did not provide a quote to BGSE specific to the Kadena project, JBT did provide a "blanket quote" for the Jetaire HPCF-3000 PC Air unit just a few months after BGSE was awarded the project.

CONFIDENTIAL INFORMATION
ATTORNEYS EYES ONLY