David P. Billings (UT # 11510)
Robert G. Crockett (UT # 12067)
**FABIAN VANCOTT**
215 South State Street, Suite 1200
Salt Lake City, UT 84111-2323
Telephone: (801) 531-8900
Facsimile: (801) 596-2814f
rcrockett@fabianvancott.com
dbillings@fabianvancott.com

Harry N. Arger *(pro hac vice)*
Steven McMahon Zeller *(pro hac vice)*
**DYKEMA GOSSETT PLLC**
10 S. Wacker Drive, Suite 2300
Chicago, IL 60606
Telephone: (312) 876-1700
Facsimile:    (312) 876-1155
harger@dykema.com
szeller@dykema.com

*Attorneys for John Bean Technologies Corporation*

## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| JOHN BEAN TECHNOLOGIES CORPORATION, a Delaware corporation,<br><br>    Plaintiff-Counterdefendant,<br><br>v.<br><br>BGSE GROUP, LLC, a North Carolina limited liability company, and BRYAN BULLERDICK, an individual,<br><br>    Defendants-Counterclaimants. | **JOINT AND CONTESTED PROPOSED JURY INSTRUCTIONS**<br><br>Case No. 1:17-cv-00142-RJS-EJF<br><br>Judge: Robert J. Shelby<br><br>Magistrate Judge: Daphne A. Oberg |

Pursuant to this Court's July 6, 2021 Trial Order, the Parties hereby submit their Joint Proposed Preliminary Jury Instructions. As instructed, for each instruction on which the parties agree, the header for the instruction indicates Joint Instruction. Otherwise, the header indicates whether it is the proposal of the Plaintiff or Defendants.

## I.   <u>PRELIMINARY INSTRUCTIONS</u>

**Joint Instruction No. 1.**
**MEMBERS OF THE JURY:**


Now that you have been sworn, I want to impress on you the seriousness of being a juror. I will give you some preliminary instructions to guide you in your participation in the trial. First, I will explain the nature of the case. Then, I will explain what your duties are as jurors and how the trial will proceed. I will give you more detailed instructions at the conclusion of the evidence on the required proof and how you should proceed to reach a verdict.


**Citation:** J. Shelby Stock Jury Instructions.

**Joint Instruction No. 2.**
**DESCRIPTION OF THE CASE**

The parties who are bringing a lawsuit are called "plaintiffs," while the parties being sued are called "defendants." The plaintiff here is John Bean Technologies Corporation, referred to as JBT. I may refer to JBT as the Plaintiff or as JBT.

The party being sued is called the defendant. Here, the defendants are B GSE Group, LLC (referred to as BGSE), and Mr. Bryan Bullerdick, the founder, owner and president of BGSE. When I say Defendants, I mean both BGSE and Bullerdick. When I refer to just BGSE or just Bullerdick, I only mean that specific party and not the other defendant.

Mr. Bullerdick started working for plaintiff JBT in April 2011 and resigned in April 2014. JBT is a company that, among other things, manufactures and sells aircraft equipment used by commercial organizations and the U.S. military. While working for JBT, Bullerdick's company, defendant BGSE, was a distributor of JBT's pre-conditioned air ("PC-Air" or "CAS") units and ground power units ("GPUs"), for both commercial and military aircraft. The segment of the industry Bullerdick focused on was equipment for new maintenance hangars for the military's newest aircraft, the F-35 Joint Strike Fighter. These projects required specialized PC-Air units and GPUs, as well as aircraft servicing pits ("PITS," essentially in-ground storage for hoses, cables and tools). For a time after Bullerdick left JBT, BGSE continued to sell and distribute JBT's PC-Air and GPU products.

JBT has brought claims against Bullerdick and BGSE for, among other things, (1) misappropriation of trade secrets; (2) false designation of origin under the Lanham Act; (3) breach of contract; (4) trademark infringement under the Lanham Act; and (5) tortious interference with business relationships. On the other hand, Bullerdick and BGSE have brought a claim against JBT for unfair or deceptive trade practices under North Carolina Law. I will further explain these claims to you after all the evidence has been presented.

Prior to this trial, the Court has already determined a number of JBT's claims against BGSE and Bullerdick to be successful. As will be explained, for these claims, you must assume that BGSE and/or Bullerdick are liable and you are only deciding how much money to award to JBT, if any. However, there are still two claims by JBT against BGSE and Bullerdick that have not been adjudicated yet. For these claims, you will have to decide if JBT has successfully met

3

all of the elements. Then, if you find for JBT on either of these claims, you must decide how much money to award JBT, if any.

Similarly, for BGSE's and Bullerdick's unfair and deceptive trade practice counterclaim, the Court has already found JBT's conduct to be deceptive. You will have to decide if BGSE and/or Bullerdick were damaged by that conduct, and, if so, to what extent.

**Citation**: J. Shelby Stock Jury Instructions. These stock instructions have been modified to contain the facts of the case as well as instructions relating to claims that the jury is evaluating on the merits and those the jury is only deciding damages. Further modification to remove language on separate liability.

**Joint Instruction No. 3.**

It is my role to supervise the trial and to decide all legal questions, such as deciding objections to evidence and decide the meaning of the law. I will also instruct you on the law that you must apply. The order in which I give the instructions has no significance. You must consider the instructions in their entirety, giving them all equal weight. I do not intend to emphasize any particular instruction, and neither should you.

The instructions that I give you are the law, and your oath requires you to follow my instructions even if you disagree with them.

**Citation:** J. Shelby Stock Jury Instructions.

**Joint Instruction No. 4.**

It is the lawyers' role to present evidence, generally by calling and questioning witnesses and presenting exhibits. Each lawyer will also try to persuade you to decide the case in favor of his or her client.

Things that you see on television and in the movies may not accurately reflect the way real trials should be conducted. Real trials should be conducted with professionalism, courtesy and civility.

**Citation:** J. Shelby Stock Jury Instructions.

**Joint Instruction No. 5.**

It will be your duty to find from the evidence what the facts are. The facts generally relate to who, what, when, where, why, and how. The facts must be supported by the evidence. Neither the lawyers nor I decide the facts. You, and you alone, are the judges of the facts. You will then have to apply to those facts the law as I will give it to you. You must follow that law whether you agree with it or not.

Nothing I may say or do during the course of the trial is intended to indicate, nor should be taken by you as indicating, what your verdict should be.

**Citation:** J. Shelby Stock Jury Instructions.

**Joint Instruction No. 6.**

The evidence from which you will find the facts will consist of the testimony of witnesses, documents and other things received into the record as exhibits, and any facts the lawyers agree or stipulate to or that I may instruct you to find.

Certain things are not evidence and must not be considered by you. I will list them for you now:

1.      Statements, arguments, and questions by lawyers are not evidence.

2.      Objections to questions are not evidence. Lawyers have an obligation to their clients to make an objection when they believe evidence being offered is improper under the rules of evidence. You should not be influenced by any objection or by my ruling on it. If an objection is sustained, ignore the question. If it is overruled, treat the answer like any other. If you are instructed that some item of evidence is received for a limited purpose only, you must follow that instruction.

3.      Testimony that I have excluded or told you to disregard is not evidence and must not be considered.

4.      Anything you may have seen or heard outside the courtroom is not evidence and must be disregarded. You are to decide the case solely on the evidence presented here in the courtroom.

There are two kinds of evidence: direct and circumstantial. Direct evidence is direct proof of a fact, such as testimony of an eyewitness. Circumstantial evidence is proof of facts from which you may infer or conclude that other facts exist. I will give you further instructions on these as well as other matters at the end of the case, but keep in mind that you may consider both kinds of evidence.

It will be up to you to decide which witnesses to believe, which witnesses not to believe, and how much of any witness's testimony to accept or reject. I will give you some guidelines for determining the credibility of witnesses at the end of the case.

**Citation:** J. Shelby Stock Jury Instructions.

**Joint Instruction No. 7.**

You must come to the case without bias. You must not decide this case for or against anyone because you feel sorry for anyone or angry at anyone. You must decide this case based on the facts and the law, without regard to sympathy, passion, or prejudice.

The fact that JBT and BGSE are corporations and that Bullerdick is a natural person should not play any part in your deliberations. You must decide this case as if it were between individuals.

**Citation:** J. Shelby Stock Jury Instructions. These stock instructions have been modified to reflect the parties' legal statuses.

**Joint Instruction No. 8.**

You are required to decide this case based only on the evidence that you see and hear in this courtroom and the law that I will instruct you about. For your verdict to be fair, you must not be exposed to any other information about the case. This is very important, and so I need to give you some very detailed explanations about what you should do and not do during your time as jurors.

First, you must not try to get information from any source other than what you see and hear in this courtroom. It's natural to want to investigate a case, but you may not use any printed or electronic sources to get information about this case or the issues involved. This includes the internet, reference books or dictionaries, newspapers, magazines, television, radio, computers, Blackberries, iPhones, Smartphones, PDAs, or any social media or electronic device. You may not do any personal investigation. This includes visiting any of the places involved in this case, using Internet maps or Google Earth, talking to possible witnesses, or creating your own experiments or reenactments.

Second, you must not communicate with anyone about this case, and you must not allow anyone to communicate with you. This also is a natural thing to want to do, but you may not communicate about the case via emails, text messages, tweets, blogs, chat rooms, comments or other postings, Facebook, Twitter, Instagram, LinkedIn, or any other social media.

You may notify your family and your employer that you have been selected as a juror and you may let them know your schedule. But do not talk with anyone about the case, including your family and employer. You must not even talk with your fellow jurors about the case until I send you to deliberate. If you are asked or approached in any way about your jury service or

anything about this case, you must respond that you have been ordered not to discuss the matter. And then please report the contact to the courtroom deputy, and they will notify me.

Also, do not talk with the lawyers, parties, or witnesses about anything, not even to pass the time of day. Please understand that the rules of evidence and procedure have developed over hundreds of years in order to ensure the fair resolution of disputes. The fairness of the entire system depends entirely on you, the jurors, reaching your decisions based on evidence presented to you in court, and not on other sources of information. You violate your oath as jurors if you conduct your own investigations or communicate about this trial with others.

Lastly, keep an open mind throughout the trial. Evidence can only be presented one piece at a time. Do not form or express an opinion about this case while the trial is ongoing. You must not decide on a verdict until after you have heard all of the evidence and have discussed it thoroughly with your fellow jurors in your deliberations.

I know that these restrictions affect activities that you consider to be normal and harmless and very important in your daily lives. However, these restrictions ensure that the parties have a fair trial based only on the evidence and not on outside information. Information from an outside source might be inaccurate or incomplete, or it might simply not apply to this case, and the parties would not have a chance to explain or contradict that information because they wouldn't know about it. That's why it is so important that you base your verdict only on information you receive in this courtroom.

Courts used to sequester—or isolate—jurors to keep them away from information that might affect the fairness of the trial, but we seldom do that anymore. This means that we must rely upon your honor to obey these restrictions, especially during recesses when no one is watching.

Any juror who violates these restrictions jeopardizes the fairness of the proceedings, and the entire trial may need to start over. That is a tremendous expense and inconvenience to the parties, the court, and the taxpayers. Posttrial investigations are common and can disclose these improper activities. If they are discovered, they will be brought to my attention and the entire case might have to be retried, at substantial cost. Violations may also result in substantial penalties for the juror.

If any of you have any difficulty whatsoever in following these instructions, please let me know now. If any of you becomes aware that one of your fellow jurors has done something that violates these instructions, you are obligated to report that as well. If anyone tries to contact you about the case, either directly or indirectly, or sends you any information about the case, please report this promptly as well. Notify the courtroom deputy, who will notify me.

These restrictions must remain in effect throughout this trial. Once the trial is over, you may resume your normal activities. At that point, you will be free to read or research anything you wish. You will be able to speak—or choose not to speak—about the trial to anyone you wish. You may write, or post, or tweet about the case if you choose to do so. The only limitation is that you must wait until after the verdict, when you have been discharged from your jury service.

So, keep an open mind throughout the trial. The evidence that will form the basis of your verdict can be presented only one piece at a time, and it is only fair that you do not form an opinion until I send you to deliberate.

**Citation:** J. Shelby Stock Jury Instructions.

**Joint Instruction No. 9.**

If you would like to take notes during the trial, you may, but you are not required to take notes. If you decide to take notes, be careful not to get so involved in note taking that you become distracted, and remember your notes will not necessarily reflect exactly what was said. Your notes should be used only as memory aids. Therefore, you should not give your notes precedence over your independent recollection of the evidence. You should also not be unduly influenced by the notes of other jurors. If you do take notes, you must leave them in the jury room at night and do not discuss the content of your notes until you begin deliberations.

**Citation:** J. Shelby Stock Jury Instructions.

**Joint Instruction No. 10.**

The court reporter is making stenographic notes of everything that is said. The purpose is to have an accurate record of the proceeding and to assist any appeals. A typewritten copy of the testimony, however, will not be available for your use during deliberations.

**Citation:** J. Shelby Stock Jury Instructions.

**Joint Instruction No. 11.**

At the end of trial, you must make your decision based on what you recall of the

evidence. You will not have a transcript of the trial. I urge you to pay close attention to the

testimony as it is given.

**Citation:** J. Shelby Stock Jury Instructions.

**Joint Instruction No. 12.**

During the trial it may be necessary for me to talk with the lawyers out of your hearing, either by having a bench conference here while you are present in the courtroom, or by calling a recess. Please understand that while you are waiting, we are working. The purpose of these conferences is to decide how certain evidence is to be treated under the rules of evidence, and to avoid confusion and error. We will, of course, do what we can to keep the number and length of these conferences to a minimum.

**Citation:** J. Shelby Stock Jury Instructions.

**Joint Instruction No. 13.**
**JURY'S TASKS**

This case involves numerous claims, by both JBT and by BGSE and Bullerdick. The Court has already decided certain issues, but other issues you will decide.

On JBT's claim for Trademark Infringement under the Lanham Act, you will determine whether BGSE's use of JBT's trademarks in BGSE's website metatags was likely to cause confusion, and, if so, JBT's damages, if any.

On JBT's claim for Tortious Interference with Potential Economic Relationships, you will determine whether defendants tortiously interfered with JBT's potential economic relationships, and, if so, JBT's damages, if any.

On defendants' counterclaim for Unfair or Deceptive Trade Practices under North Carolina law, you will determine whether JBT proximately caused defendants' damages, if any, and, if so, the amount of defendants' damages, if any.

During the course of the trial and throughout these instructions, you will hear that certain findings of facts had been previously determined by the Court or that the Court has already determined whether or not one party is liable to the other party for a particular claim. You must regard such findings of facts as true and assume liability of the party when directed by these instructions, even if you did not see or hear evidence supporting those findings during the trial.

On JBT's claims for Trade Secret Misappropriation, False Designation of Origin and Breach of Contract, the Court has found the defendants liable. You will be asked to determine whether JBT suffered damages as a result of those claims, and if so, the amount.

**Citation:** None.

**Joint Instruction No. 14.**

**JBT'S FIRST AND SECOND CLAIMS: MISAPPROPRIATION OF TRADE SECRETS UNDER FEDERAL LAW AND UTAH STATE LAW (ELEMENTS)**

JBT has alleged that the BGSE and Bullerdick misappropriated JBT's trade secrets, specifically containing the schematics for its HPCF 3000 PC Air unit, by emailing the HPCF Manual to JBT's competitor, Twist, Inc. in violation of federal and Utah state law.

I have already determined that the JBT's HPCF O&M Manual (HPCF Manual or Manual) constitutes a protectable trade secret and that BGSE and Bullerdick have committed trade secret misappropriation through their actions of using and transmitting the HPCF Manual, or portions thereof, to others. Therefore, the only decision that you need to make is to determine:

**First**, whether JBT suffered any damages as a result of this conduct, and, if so, the amount; and

**Second**, if BGSE's and Bullerdick's misappropriation was willful and malicious.

Specifically, JBT claims that it has suffered damages from BGSE's and Bullerdick's misappropriation of trade secrets relating to the following projects:

Naval Air Station (NAS) – Lemoore, California (P-328)

MCAS – Beaufort, South Carolina (P-465)

Kadena Air Force Base – Okinawa, Japan (P-803)

Eielson Air Force Base – Alaska (EIE-376)

Eielson Air Force Base – Alaska (EIE-379)

And for the general dissemination of JBT's trade secrets to various recipients.

**Source:** 18 U.S.C. § 1836(3); *Ultradent Prods. v. Spectrum Sols., Ltd. Liab. Co.*, 2018 U.S. Dist. LEXIS 3858, at *5 (D. Utah Jan. 8, 2018); Utah Code Ann. § 13-24-4(1).

**Joint Instruction No. 15.**

**JBT'S THIRD CLAIM: UNFAIR COMPETITION / FALSE DESIGNATION OF ORIGIN**

Under this claim, JBT alleges that BGSE had obscured the fact that JBT was the originator of the PC Air and GPUs products that BGSE were submitting in bid documents, and instead passed those products off as their own.

I have already determined that BGSE's actions constitute false designation of origin. Therefore, you need to determine only:

**First**, whether JBT suffered damages as a result, and, if so, the amount; and

**Second**, if BGSE's false designation of origin was willful.

**Source**:        None. JBT has drafted a simple instruction to inform the jury of the issues that they need to decide.

**Joint Instruction No. 16.**

**JBT'S FOURTH CLAIM: TRADEMARK INFRINGEMENT UNDER THE LANHAM ACT - INTRODUCTION**

JBT claims that the BGSE has infringed JBT's trademarks.

A trademark is a word, symbol, or combination of words or symbols used by trademark owners to identify their product, to distinguish their product from those manufactured or sold by others, and to indicate the source of their product.

The purpose of trademark law is to prevent confusion, mistake or deception among consumers about the source, affiliation, connection, association, sponsorship or approval of products and to permit trademark owners to show ownership of their products and control their product's reputation.

JBT claims that BGSE infringed JBT's trademarks: (i) "JBT", (ii) "Jetway", and (iii) "Jetaire" by using the terms "JBT," "Jetway," and "Jetaire" within the keywords of the BGSE's "www.bullerdick.gse" website html source file in order to direct individuals searching for these terms to BGSE's website instead of JBT's website.

BGSE denies any liability and damages relating to JBT's claim for trademark infringement.

**Citation:** 7th Circuit Pattern Jury Instructions 13.1.1.

**Joint Instruction No. 17.**

**JBT'S FIFTH, SIXTH AND SEVENTH CLAIMS: BREACH OF CONTRACT – INTRODUCTION**

JBT has claimed that it had one contract with Bullerdick and two contracts with BGSE that these Defendants breached, causing harm to JBT:

- **Contract One**: The 2011 Confidentiality Agreement between JBT and Bullerdick. I have already determined that Bullerdick has breached this contract with JBT.

- **Contract Two:** The 2011 Non-Disclosure Agreement between JBT and BGSE. I have already determined that BGSE has breached this contract with JBT.

- **Contract Three:** The 2012 Distributorship Agreement between JBT and BGSE. I have already determined that BGSE has breached this contract with JBT.

JBT claims that Bullerdick and BGSE breached their respective contracts with JBT by violating the confidentiality and use obligations and that JBT has been damaged as a result. JBT is seeking damages from BGSE and Bullerdick to compensate for the injury JBT claims to have suffered as a result of these breaches.

The only issues that you need is to determine on these claims are the amount, if any, to award JBT in damages for the breach of each contract. I will explain how you may award JBT damages in the following instructions.

**Source**:        Module Utah Jury Instructions - CV2101 Issues in a breach of contract case; Summary Judgment Order and Memorandum, pgs. 53-61.

**Joint Instruction No. 18.**

**TORTIOUS INTERFERENCE WITH PROSPECTIVE**

**CONTRACT (NC LAW)**

JBT claims that defendants tortiously interfered with JBT's prospective contracts by employing misrepresentations to try to convince contractors not to source JBT equipment. On this issue, on which JBT has the burden of proof, you must decide whether Defendants tortiously interfered with prospective contracts, and, if so, the amount of damages to award JBT, if any.

The Parties submit this as a simple, introductory explanation of what will need to be decided in the case.

**Joint Instruction No. 19.**
**UNFAIR AND DECEPTIVE TRADE PRACTICES**

Defendants have made a claim against JBT for unfair or deceptive trade practices under North Carolina law based on the fact that JBT sent the Cover Letter to industry contacts. On this claim you will determine whether JBT's actions were a proximate cause of injury to the BGSE and Bullerdick, and, if so, the amount of damage incurred.

CITATION: The Parties submit this as a simple, introductory explanation of what will need to be decided in the case.

**Joint Instruction No. 20.**

The trial will generally proceed as follows:

1. <u>Opening Statements</u>.  The lawyers will make opening statements, outlining what the case is about and what they think the evidence will show. Opening statements are neither evidence nor arguments.

2. <u>Presentation of Evidence</u>.  JBT will offer evidence first, and BGSE and Bullerdick may cross-examine their witnesses. Following JBT's case, BGSE and Bullerdick will present their respective evidence, and JBT may cross-examine BGSE and Bullerdick' witnesses. The parties may later offer more evidence (called rebuttal evidence) after hearing the witnesses and seeing the exhibits.

3. <u>Instructions on the Law</u>.  Throughout the trial and after the evidence has been fully presented, I will instruct you on the law that you must apply. You must obey these instructions. You are not allowed to go against the law in reaching a verdict.

4. <u>Closing Arguments</u>.  After all the evidence is in, the lawyers will summarize and argue the case. They will share with you their views of the evidence, how it relates to the law and how they think you should decide the case.

5. <u>Jury Deliberations</u>.  The final step is for you to go to the jury room and discuss the case among yourselves until you reach a verdict. Your verdict must be unanimous.

The trial will now begin.

**Citation:** J. Shelby Stock Jury Instructions. These stock instructions have been modified to reflect the number of parties.

## II.   <u>POST-EVIDENCE INSTRUCTIONS</u>

**Joint Instruction No. 21.**
**MEMBERS OF THE JURY:**

MEMBERS OF THE JURY:

Now that you have heard the evidence, it becomes my duty to instruct you on the law that applies to this case.

It is your duty as jurors to follow the law as stated in the instructions of the court, and to apply the rules of law so given to the facts as you find them from the evidence in the case.

Counsel may refer to these instructions in their arguments. If, however, any difference appears to you between the law as stated by them and that stated by the court in these instructions, you are of course to be governed by the court's instructions.

You are not to single out any one instruction alone as stating the law, but must consider the instructions as a whole.

Neither are you to be concerned with the wisdom of any rule of law stated by the court. Regardless of any opinion you may have as to what the law ought to be, it would be a violation of your sworn duty to base a verdict upon any other view of the law than that given in these instructions of the court; just as it would be a violation of your sworn duty, as judges of the facts, to base a verdict upon anything but the evidence in the case.

Justice through trial by jury must always depend upon the willingness of each individual juror to seek the truth as to the facts from the same evidence presented to all the jurors; and to arrive at a verdict by applying the same rules of law, as given in the instructions of the court.

**Citation:** J. Shelby Standard Jury Instructions.

**Joint Instruction No. 22.**
**NO BIAS OR PREJUDICE AGAINST ANY PARTY**

You have been chosen as jurors in this case to help resolve disputes between the parties. It is your duty to find the facts from all the evidence in the case. To those facts you will apply the law as I give it to you. You must follow the law as I give it to you whether you agree with it or not. You are to perform this duty without bias or prejudice as to any party. You must not be influenced by any personal likes or dislikes, opinions, or sympathy. That means that you must decide the case solely on the evidence before you. You will recall that you took an oath promising to do so at the beginning of the case. The defendant and the plaintiff expect that you will carefully and impartially consider all the evidence in the case, follow the law as stated by the court, and reach a just verdict.

In following my instructions, you must follow all of them and not single out some and ignore others; they are all equally important. And you must not read into these instructions or into anything the court may have said or done any suggestion as to what verdict you should return—that is a matter entirely up to you.

**Citation:** J. Shelby Standard Jury Instructions.

**Joint Instruction No. 23.**
**MULTIPLE PARTIES**

Although there are multiple parties in this case, each Defendant is entitled to a fair consideration of its defenses against JBT. You must evaluate the evidence fairly and separately as to each Defendant. Under the law, BGSE is a corporation is considered to be a person. BGSE can only act through its employees, agents, directors, or officers. Therefore, a corporation is responsible for the acts of its employees, agents, directors, and officers performed within the scope of authority.

Unless otherwise instructed, all instructions apply to both JBT and the Defendants.

**Citation:** J. Shelby Standard Jury Instructions. The standard instruction has been modified to plainly describe to the jury the relationship between Bullerdick and BGSE.

## Joint Instruction No. 24.
## PREPONDERANCE OF THE EVIDENCE

You may have heard that in a criminal case proof must be beyond a reasonable doubt, but this is not a criminal case. In a civil case such as this one, a different level of proof applies: proof by a preponderance of the evidence, unless I have instructed you otherwise. This is a lower burden of proof than "beyond a reasonable doubt."

When I tell you that a party has the burden of proof or that a party must prove something by a "preponderance of the evidence," I mean that the party must persuade you, by the evidence, that the fact is more likely to be true than not true. Another way of saying this is proof by the greater weight of the evidence, however slight.

The preponderance of the evidence is not determined simply by counting the number of witnesses or the amount of the testimony. Rather, it is determined by evaluating the persuasive character of the evidence. In weighing the evidence, you should consider all of the evidence that applies to a fact, no matter which party presented it. The weight to be given to each piece of evidence is for you to decide.

In answering any question asked on the verdict form, if you find that the party's claim is more likely true than not true, unless instructed otherwise, you should answer that question with a "Yes." If, however, the evidence appears to be equally balanced or in favor of the other party's position with respect to any question asked on the verdict form, then you must answer that question with a "No."

If the evidence should fail to establish any essential element of a party's claim by a preponderance of the evidence, the jury should find for the other party as to that claim.

**Joint Instruction No. 25.**
**CLEAR AND CONVINCING EVIDENCE**

Some facts in this case must be proved by a higher level of proof called "clear and convincing evidence." When I tell you that a party must prove something by clear and convincing evidence, I mean that the party must persuade you, by the evidence, to the point that there remains no serious or substantial doubt as to the truth of the fact.

Proof by clear and convincing evidence requires a greater degree of persuasion than proof by a preponderance of the evidence but less than proof beyond a reasonable doubt.

I will tell you specifically which of the facts must be proved by clear and convincing evidence.

**Citation:**     MUJI 2d CV118 - Clear and convincing evidence.

**Joint Instruction No. 26.**
**"EVIDENCE" DEFINED**

The evidence in this case consists of the sworn testimony of the witnesses, regardless of who may have called them; all exhibits received in evidence, regardless of who may have presented them; and all facts which may have been admitted or stipulated.

Statements and arguments of counsel are not evidence in this case. When, however, the parties stipulate or agree as to the existence of a fact, the jury must, unless otherwise instructed, accept the stipulation and regard that fact as conclusively proved.

Any evidence as to which an objection was sustained by the court, and any evidence ordered stricken by the court, must be entirely disregarded.

Anything you may have seen or heard outside the courtroom is not evidence, and must be entirely disregarded.

You are to consider only the evidence in this case. However, in your consideration of the evidence, you are not limited to the statements of the witnesses. On the contrary, you are permitted to draw from the facts which you find have been proved such reasonable inferences as seem justified in light of your experience. An inference is a deduction or conclusion which reason and common sense would lead you to draw from facts which are established by the evidence in the case. In the absence of such facts, you may not draw an inference.

You should weigh all of the evidence in the case, affording each piece of evidence the weight or significance that you find it reasonably deserves.

**Citation:** J. Shelby Standard Jury Instructions.

## Joint Instruction No. 27.
## DIRECT AND CIRCUMSTANTIAL EVIDENCE

You may consider both direct and circumstantial evidence.

"Direct evidence" is the testimony of one who asserts actual knowledge of a fact, such as an eyewitness.

"Circumstantial evidence" is proof of a chain of facts or circumstances indicating the existence or the nonexistence of a particular fact, or the occurrence or nonoccurrence of a particular event.

For example, if the fact to be proved is whether Johnny ate the cherry pie, and a witness testifies that she saw Johnny take a bite of the cherry pie, that is direct evidence of the fact. If the witness testifies that she saw Johnny with cherries smeared on his face and an empty pie plate in his hand, that is circumstantial evidence of the fact.

There is no difference between the weight to be given to either direct or circumstantial evidence. Nor is a greater degree of certainty required of circumstantial evidence than of direct evidence. You should weigh all of the evidence in the case, giving each piece of evidence the weight or significance that you find it reasonably deserves.

**Citation:** J. Shelby Standard Jury Instructions.

**Joint Instruction No. 28.**
**LIMITED PURPOSE EVIDENCE**

Some evidence is received for a limited purpose only. When I instruct you that an item of evidence has been received for a limited purpose, you must consider it only for that limited purpose.

**Citation:** J. Shelby Standard Jury Instructions.

**Joint Instruction No. 29.**
**DO NOT SPECULATE OR RESORT TO CHANCE**

When you deliberate, do not flip a coin, speculate or choose one juror's opinions at random. Evaluate the evidence and come to a decision that is supported by the evidence.

**Citation:** J. Shelby Standard Jury Instructions.

**Joint Instruction No. 30.**
**CHARTS, SUMMARIES, AND EXEMPLARS**

Certain charts, summaries, and exemplars have been shown to you in order to help explain the evidence. However, the charts, summaries, and exemplars are not in and of themselves evidence. If the charts, summaries, or exemplars correctly reflect facts or figures shown by the evidence, you may consider them.

**Citation:** J. Shelby Standard Jury Instructions.

**Joint Instruction No. 31.**
**HABIT - ROUTINE PRACTICE**

You may consider evidence of the habit of a person or of the routine of a business or organization in determining whether the conduct of a person or organization on a particular occasion was in conformity with the habit or routine practice.

**Citation:** J. Shelby Standard Jury Instructions

**Joint Instruction No. 32.**
**BELIEVABILITY OF WITNESSES**

Testimony in this case has been given under oath. You must evaluate the believability of that testimony. You may believe all or any part of the testimony of a witness. You may also believe one witness against many witnesses or many against one, in accordance with your honest convictions. In evaluating the testimony of a witness, you may want to consider the following:

(1)    <u>Personal interest</u>: Do you believe the accuracy of the testimony was affected one way or the other by any personal interest the witness has in the case?

(2)    <u>Bias</u>: Do you believe the accuracy of the testimony was affected by any bias or prejudice?

(3)    <u>Demeanor</u>: Is there anything about the witness's appearance, conduct or actions that causes you to give more or less weight to the testimony?

(4)    <u>Consistency</u>: How does the testimony tend to support or not support other believable evidence that is offered in the case?

(5)    <u>Knowledge</u>: Did the witness have a good opportunity to know what the witness is testifying about?

(6)    <u>Memory</u>: Does the witness's memory appear to be reliable?

(7)    <u>Reasonableness</u>: Is the testimony of the witness reasonable in light of human experience?

These considerations are not intended to limit how you evaluate testimony. You are the ultimate judges of how to evaluate believability. You may not consider, however, a witness's religious beliefs in evaluating his or her credibility.

**Citation:** J. Shelby Standard Jury Instructions

**Joint Instruction No. 33.**
**DEPOSITION TESTIMONY**

Certain testimony of witnesses who, for some reason, could not be present to testify from the witness stand has been presented to you by reading the deposition of the witness or by showing a videotaped deposition. A deposition is sworn testimony of a witness that was given previously, outside of court, with a lawyer for each party present and entitled to ask questions. Such testimony is evidence and you should consider deposition testimony the same way that you would consider the testimony of a witness testifying in court.

**Citation:** J. Shelby Standard Jury Instructions.

**Joint Instruction No. 34.**
**EXPERT TESTIMONY**

The rules of evidence ordinarily do not permit the opinion of a witness to be received as evidence. An exception to this rule exists in the case of expert witnesses. A person who, by education, study, experience, skill, knowledge, and training in a particular art, science, profession, or occupation, may give his or her opinion as an expert witness regarding such matters if they are relevant to the case. You should consider such expert opinion and should weigh the reasons, if any, given for it. You are not bound, however, by such an opinion. Give it the weight to which you feel it is entitled, or you may reject it in whole or in part if, in your judgment, the reasons given for the opinion are unsound.

**Citation:** J. Shelby Standard Jury Instructions.

**Joint Instruction No. 35.**
**OUT-OF-STATE OR OUT-OF-TOWN EXPERTS**

You may not discount the opinions of any of the experts merely because of where they

live or practice.

**Citation:** J. Shelby Standard Jury Instructions.

**Joint Instruction No. 36.**
**DIFFERING TESTIMONY OF EXPERT WITNESSES**

If you find that a conflict exists in the testimony of the expert witnesses, you must resolve

that conflict by weighing the various opinions and reasons for such opinions given by each of the

experts, and the facts upon which the opinions are based, as well as the relative credibility and

knowledge of the experts who have testified.

**Citation:** J. Shelby Standard Jury Instructions.

**Joint Instruction No. 37.**
**STATEMENT OF OPINION**

Under limited circumstances, I allowed one or more witnesses to express an opinion.

Consider opinion testimony as you would any other evidence, and give it the weight you think it

deserves.

**Citation:** J. Shelby Standard Jury Instructions.

**Joint Instruction No. 38.**
**EFFECT OF WILLFULLY FALSE TESTIMONY**

If you believe any witness has intentionally testified falsely about any important matter,

you may disregard the entire testimony of that witness, or you may disregard only the

intentionally false testimony.

**Citation:** J. Shelby Standard Jury Instructions.

**Joint Instruction No. 39.**
**INCONSISTENT STATEMENTS**

You may believe that a witness, on another occasion, made a statement inconsistent with that witness's testimony given here. That does not mean that you are required to disregard the testimony. It is for you to decide whether to believe the witness.

**Citation:** J. Shelby Standard

## Joint Instruction No. 40.
## THE PARTIES' CLAIMS

The parties have asserted a number of claims against each other, which are summarized as follows:

- **JBT's Claim of Trade Secret Misappropriation.** JBT claims that BGSE and Bullerdick have improperly disclosed JBT proprietary trade secrets to third parties, including JBT's competitors, in order to develop and sell competing PC Air and GPU products.

- **JBT's Claim of False Designation of Origin.** JBT claims that BGSE has falsely described and hid the true origin of the PC Air units and GPUs that it was supplying for F-35 hanger projects by incorporating doctored JBT documents in its bid proposals and project submissions.

- **JBT's Claim of Trademark Infringement.** JBT claims that BGSE improperly used JBT's trademarks on in the metatags of its website in an effort to lure Internet visitors that were looking for JBT products to BGSE's website.

- **JBT's Claims for Breach of Contracts.** JBT claims that Bullerdick breached the 2011 Confidentiality Agreement with JBT, and the BGSE breached the 2011 Non-Disclosure Agreement and the 2012 Distributorship Agreement with JBT, due to Bullerdick's and BGSE's improper use and disclosure of JBT's confidentiality information, including JBT's trade secrets.

- **JBT's Claim of Tortious Interference.** JBT claims that, but for BGSE's and Bullerdick's actions in submitting fraudulent bids, JBT would have supplied PC-Air and GPU products on four different projects.

- **BGSE's and Bullerdick's Claim for Unfair or Deceptive Trade Practices.** BGSE and Bullerdick claim that JBT has engaged in unfair and deceptive trade practices by making false statements in a letter (referred to as the "Cover Letter") sent by JBT to JBT's, BGSE's and Bullerdick's mutual contacts in the industry.

Prior to trial, I already determined liability on JBT's claims in favor of JBT for trade secret misappropriation, false designation of origin, and breach of all contracts. Therefore, on these claims, you will decide whether JBT suffered damages as a result of the conduct, and, if so, the amount.  However, for JBT's remaining claims, you must first determine if JBT has proven all of the elements for these claims. Then, only if JBT has proven these claims, decide whether JBT suffered damages as a result of the conduct, and, if so, the amount. For BGSE's and Bullerdick's claim against JBT, I already determined that JBT committed a deceptive act. Therefore, you must determine if JBT's action was the proximate cause of BGSE's and Bullerdick's damages, if any. It is the asserting party's burden of proof to establish all of the individual elements for these claims and present sufficient support for an award of damages.

**Citation:** J. Shelby Standard Jury Instructions. The standard instruction has been modified to recite summaries of the parties' claims.

**Joint Instruction No. 41.**

**JBT'S FIRST AND SECOND CLAIMS: MISAPPROPRIATION OF TRADE SECRETS UNDER FEDERAL LAW AND UTAH STATE LAW (COMPENSATORY DAMAGES)**

You must now determine if JBT suffered damages for trade secret misappropriation, and, if so, the amount.  Such damages are called compensatory damages. The purpose of compensatory damages is to make JBT whole - that is, to compensate JBT for the damages that JBT has suffered, if any.

If you determine that JBT suffered damages from trade secret misappropriation, you should award the amount of money that will fairly and adequately compensate JBT for measurable losses of money caused by BGSE's and Bullerdick's trade secret misappropriation. The damages that you award must be fair compensation for all of JBT's damages. Compensatory damages are not allowed as a punishment and cannot be imposed or increased to penalize BGSE and Bullerdick. You should not award compensatory damages for speculative injuries, but only for those injuries which JBT has actually suffered or that JBT is reasonably likely to suffer in the future.

If you decide to award compensatory damages, you should be guided by dispassionate common sense. Computing damages may be difficult, but you must not let that difficulty lead you to engage in arbitrary guesswork. On the other hand, the law does not require that JBT prove the amount of its losses with mathematical precision, but only with as much definiteness and accuracy as the circumstances permit. You must use sound discretion in fixing an award of damages, drawing reasonable inferences where you find them appropriate from the facts and circumstances in evidence. You may rely partially or completely on the damages calculations presented by an expert on damages, or chose to disregard that expert in favor of your own reasoned calculations.

You may only award an amount that would fairly compensate JBT for damages proximately caused by BGSE's and Bullerdick's use of its trade secrets. You may consider, in awarding such actual damages, the cost BGSE and Bullerdick would have incurred in acquiring the same trade secrets through its own experimentation or through other lawful means.

To the extent that it is not duplicative (that is, double counting), you may award the amount (i) of JBT's actual damages suffered as a result of BGSE's and Bullerdick's misappropriation of JBT's trade secrets, such as JBT's lost profits; and (ii) BGSE's and

Bullerdick's unjust enrichment that is a result of their misappropriation of JBT's trade secrets, even if that amount is more than the actual damages suffered by JBT.

I will explain how to calculate the amount of unjust enrichment in the following instructions.

**Source:** 11th Circuit Model Civil Jury Instructions - 11.4 Trade Secrets – Damages – Compensatory (for Defend Trade Secrets Act); Section 13-24-4 of the Utah Code; *Water & Energy Sys. Tech., Inc. v. Keil*, 2002 UT 32, ¶ 18 (Sup.Ct.); 18 U.S.C. § 1836(b)(3)(B); MUJI 2d. CV1406, CV2002.

*Bimbo Bakeries, USA, Inc. v. Leland Sycamore et al.*, No. 2:13-cv-00749-DN (D. Utah 10/6/2017), Doc. 452 (Jury Instructions,) Instruction No. 42, modified to account for the parties in this case and the Court's summary judgment rulings in Doc. No. 184; 3 *Fed. Jury Practice and Instructions*, § 127.14 (6th ed, 2021 update); Model Utah Jury Instructions (MUJI), 2d ed., CV 2001.3

**Joint Instruction No. 42.**

**JBT'S FIRST AND SECOND CLAIMS:**
**MISAPPROPRIATION OF TRADE SECRETS UNDER FEDERAL LAW AND UTAH**
**STATE LAW (COMPENSATORY DAMAGES – UNJUST ENRICHMENT)**

In measuring JBT's damages, if any, you may also consider what benefit BGSE and Bullerdick may have gained from their misuse of JBT's trade secret. For example, JBT is entitled to net profits earned by BGSE and Bullerdick that are attributable to misappropriation. Regardless of whether you find that JBT itself suffered losses, if you find that BGSE and Bullerdick benefited from using the trade secret belonging to JBT, then you should consider whether BGSE and Bullerdick should pay the monetary value of those benefits to JBT.

JBT is only required to prove BGSE's and Bullerdick's gross sales. BGSE and Bullerdick may then prove the amount of sales made for reasons other than the misappropriation. BGSE and Bullerdick also may prove their costs or other deductions which they claim should be subtracted from the amount of their sales to determine their profits on such sales. Any costs or deductions that BGSE and Bullerdick prove by a preponderance of the evidence are required to be subtracted from the sales attributable to the infringement and the difference is the amount that may be awarded to JBT.

It may be that only one of these measures of damages (i.e., JBT's losses, or BGSE's and Bullerdick's benefit) is necessary to fully compensate JBT. Or, you may combine both JBT's losses and BGSE's and Bullerdick's gains in determining the measure of damages to award JBT. However, JBT may not recover twice for the same damages.

JBT's losses and a defendant's gains may overlap. For example, it may be that BGSE and Bullerdick profited from particular sales that JBT would have made had BGSE and Bullerdick not competed using the trade secrets. In that situation, the two ways of approaching damages would measure the identical damages—whether viewed as JBT's loss, or as BGSE's and

49

Bullerdick's gain. In this situation, you would include as damages either JBT's lost profits or BGSE's and Bullerdick's gain because those amounts are actually the same.

But, you may find that  BGSE's and Bullerdick's profits are not identical to JBT's lost profits. For example, if you find that JBT lost profits due to BGSE's and Bullerdick's improper use of its trade secret, and find that that same Defendant obtained even greater profits from its use of that trade secret, JBT would be entitled to recover its lost profits as well as the profits of BGSE and Bullerdick, but only to the extent they do not overlap.

**Citation:**

*Bimbo Bakeries, supra*, Instruction Nos. 44, 45 modified to account for the parties in this case and the Court's summary judgment rulings in Doc. No. 184; ABA Model Instructions, § 8.6.2.

11th Circuit Model Civil Jury Instructions 10.1; Section 13-24-4 of the Utah Code; *Water & Energy Sys. Tech., Inc. v. Keil*, 2002 UT 32, ¶ 18 (Sup.Ct.); *GeoMetWatch Corp. v. Hall*, 2018 U.S. Dist. LEXIS 198971, at *42 (D. Utah Nov. 21, 2018) (citing *Litton Sys., Inc. v. Ssangyong Cement Indus. Co., Ltd.*, 107 F.3d 30 (Fed. Cir. 1997)); *Russo v. Ballard Med. Prods.*, 550 F.3d 1004, 1018 n.8 (10th Cir. 2008); *Asset Mgmt. v. Ocwen Fin. Corp.*, 249 F. App'x 63, 79 (10th Cir. 2007) (citing Comment (f) to the Restatement (Third) of Unfair Competition § 45 (1995)).

**Plaintiff's Instruction No. 43.**

**JBT'S FIRST AND SECOND CLAIMS: MISAPPROPRIATION OF TRADE SECRETS UNDER FEDERAL LAW AND UTAH STATE LAW (WILLFULNESS AND MALICIOUSNESS)**

In addition to compensatory damages, JBT also seeks to recover exemplary damages against Bullerdick and BGSE. Exemplary damages are intended to punish a wrongdoer for extraordinary misconduct and to discourage others from similar conduct. They are not intended to compensate JBT for its loss.

Exemplary damages may only be awarded if JBT has proven by clear and convincing evidence that Defendants' conduct was willful and malicious.

An act is "willful" when done with actual or constructive knowledge of its probable consequences.

An act is "malicious" if done with intent to cause injury.

A question on the Special Verdict form will ask if JBT has proved by clear and convincing evidence that BGSE's and Bullerdick's conduct was willful and malicious. If you answer "yes" to this question, I will then give you further instructions.

However, even if you do not find that JBT has proven this "clear and convincing evidence", you should still mark in the jury verdict form if JBT has proven by a "preponderance of the evidence" that Bullerdick's and BGSE's misappropriation of JBT's trade secrets was willful and malicious..

**Source**:    MUJI 2d. CV2026 Punitive damages. Introduction.; Milgrim on Trade Secrets § 1.01 (2018) (for the proposed definitions of "willful" and "malicious"); *Steves & Sons, Inc. v. Jeld-Wen, Inc.*, 988 F.3d 690, 727 (4th Cir. 2021) (upholding the "intent to cause harm" standard after finding no clear agreed-upon definition of "malicious" in the context of DTSA or the Uniform Trade Secrets Act); *Bimbo Bakeries United States v. Sycamore*, 2017 U.S. Dist. LEXIS 157050, at *4-5 (D. Utah Sep. 23, 2017) (instructing on the burden of proof for exemplary damages under the UUTSA and for an award of attorneys' fees).

**Defendants' Instruction No. 43**
**TRADE SECRET MISAPPROPRIATION – WILLFUL**
**AND MALICIOUS**

JBT also claims that the defendants engaged in willful and malicious trade secret misappropriation.

Trade secret misappropriation is *willful* when a defendant knowingly and purposefully misappropriates a trade secret for itself, or when a defendant reasonably should have known that the information it used from JBT was a trade secret, and still and used that information. An act is willful if it is done voluntarily and intentionally, and with the specific intent to commit such an act.

An act is *malicious* if it is prompted or accompanied by ill will, or such gross indifference to the rights of others as to amount to a willful act done intentionally without just cause or excuse.

You must decide whether the misappropriation here was willful and malicious by "clear and convincing evidence." Clear and convincing evidence means that JBT must persuade you, by the evidence, to the point that there remains no serious or substantial doubt as to the truth of the fact. Proof by clear and convincing evidence requires a greater degree of persuasion than proof by a preponderance of the evidence, but less than proof beyond a reasonable doubt (the standard in criminal trials).

---

**Source**: *Bimbo Bakeries, supra*, Instruction No. 47, modified to account for the parties in this case and the Court's summary judgment rulings in Doc. No. 184; 11th Circuit Civil Pattern Jury Instructions, § 10.1 (2013); MUJI 2d CV 118.

**Joint Instruction No. 44.**

### JBT'S THIRD CLAIM: UNFAIR COMPETITION AND FALSE DESIGNATION OF ORIGIN – DAMAGES (INTRODUCTION)

You now must consider the amount of money to award to JBT, if any, for BGSE's conduct resulting in false designation of origin.

JBT is seeking an award of its actual damages and BGSE's unjust profits due to BGSE's conduct resulting in a false designation of origin for the following projects:

- Naval Air Station Lemoore, Lemoore, CA: Projects P-328, P-378 and P-284

- Marine Corps Air Station Beaufort, Beaufort, SC: Projects P-465 and P-464

- Kadena Air Base, Okinawa, Japan: Project P-803

- Eielson Air Force Base, Alaska: Projects EIE-376, EIE-378, EIE-379, EIE-393 and EIE-394

- Vermont Air National Guard, Burlington, VT: Bldgs: B-150, B-130, B-131, B-132, B-160 and B-360.

**Citation:**  7th Circuit Pattern Jury Instructions 13.6.1; *W. Diversified Servs. v. Hyundai Motor Am., Inc.*, 427 F.3d 1269, 1272-73 (10th Cir. 2005).

The Parties stipulate that the above list of projects is dependent upon this Court's ruling on Defendants' Motion *In Limine* to Preclude Evidence or Argument on Matters Outside the Summary Judgment Order (Dkt. 200).

## Joint Instruction No. 45.

## JBT'S THIRD CLAIM: UNFAIR COMPETITION AND FALSE DESIGNATION OF ORIGIN – DAMAGES (ACTUAL DAMAGES)

As I have already found that BGSE's actions constitute false designation of origin, you must determine the amount, if any, that JBT has been injured by BGSE's conduct.

Actual damages consist of the amount of money required to compensate JBT for the injury caused by BGSE's conduct. JBT must prove its damages by a preponderance of the evidence. For its actual damages, you should consider whether any of the following exists, and if so to what extent, in determining JBT's damages:

- Any injury to or loss of JBT's reputation;
- Any injury to or loss of JBT's goodwill, including any injury to the JBT's general business reputation;
- Any loss of JBT's income;
- Any costs of future corrective advertising reasonably required to correct any public confusion caused by the BGSE's illegal conduct; and
- Any other factors that bear on JBT's actual damages.

**Source**:      7th Circuit Pattern Jury Instructions 13.6.3; Section 1117 of the Lanham Act; *United Phosphorus, Ltd. v. Midland Fumigant, Inc.*, 205 F.3d 1219, 1228 (10th Cir. 2000).

**Joint Instruction No. 46.**

## JBT'S THIRD CLAIM: UNFAIR COMPETITION AND FALSE DESIGNATION OF ORIGIN – DAMAGES (BGSE'S PROFITS)

JBT is entitled to any profits earned by BGSE that are attributable to its illegal conduct, in addition to actual damages. However, you may not include in any award of profits any amount that you included in determining actual damages.

It is not a requirement that JBT have suffered actual harm or prove that it has incurred lost profits in order for you to award it BGSE's profits as damages.

JBT is only required to prove BGSE's gross revenue. BGSE may then prove the amount of sales made for reasons other than the false designation of origin. BGSE also has the burden of proving the expenses and any portion of the profit attributable to factors other than the improper use of JBT materials by a preponderance of the evidence. Expenses are all the overhead and production costs incurred in producing the gross revenue.

**Source**:　　*Romag Fasteners, Inc. v. Fossil, Inc*., 140 S. Ct. 1492, 1497 (2020); *W. Diversified Servs. v. Hyundai Motor Am., Inc.*, 427 F.3d 1269, 1272-73 (10th Cir. 2005); *Bishop v. Equinox Int'l Corp*., 154 F.3d 1220, 1222 (10th Cir. 1998); *Vitamins Online, Inc. v. HeartWise, Inc*., 2020 U.S. Dist. LEXIS 210754, at *64 (D. Utah Nov. 10, 2020)

**Joint Instruction No. 47.**

**JBT'S THIRD CLAIM: UNFAIR COMPETITION AND FALSE DESIGNATION OF ORIGIN – DAMAGES (WILLFUL INFRINGEMENT)**

You must now determine whether BGSE's actions with regards to its improper use of JBT materials is "willful." You should find BGSE's actions to be "willful" if you believe that BGSE had acted with the intent to pass off its products and services as those of JBT.

**Source**:       7th Circuit Pattern Jury Instructions 13.6.5; *VIP Foods, Inc. v. Vulcan Pet, Inc.*, 675 F.2d 1106, 1107 (10th Cir. 1982); *W. Diversified Servs. v. Hyundai Motor Am., Inc.*, 427 F.3d 1269, 1272-73 (10th Cir. 2005).

**Joint Instruction No. 48.**

## JBT'S FOURTH CLAIM: TRADEMARK INFRINGEMENT UNDER THE LANHAM ACT – ELEMENTS

JBT claims that BGSE infringed JBT's trademarks.

To succeed on this claim, JBT must prove the following things by a preponderance of the evidence:

**First**:    BGSE's use of JBT's trademark is likely to cause confusion, mistake, or deception as to the origin, sponsorship, affiliation, connection or approval in the minds of consumers regarding the association between BGSE's and JBT's PC-Air and GPU products.

**Second**:    BGSE's use of JBT's trademarks has caused JBT harm.

I will explain these elements further in upcoming instructions.


**Citation:** 7th Circuit Pattern Jury Instructions 13.1.2; *1-800 Contacts, Inc. v. Lens.com*, 722 F.3d 1229, 1239 (10th Cir. 2013); Dkt. 184 Memorandum Decision and Order, pg. 49.

**Plaintiff's Instruction No. 49.**

## JBT'S FOURTH CLAIM: TRADEMARK INFRINGEMENT UNDER THE LANHAM ACT – ELEMENTS (LIKELIHOOD OF CONFUSION)

JBT is claiming that BGSE's use of the "JBT", "Jetway", and "Jetaire" marks as keywords for BGSE's "www.bullerdick.gse" website html source file in order to direct individuals searching for these terms to BGSE's website instead of JBT's website. JBT is claiming that this results in a type of confusion called "initial interest confusion." Initial interest confusion occurs when a defendant uses the plaintiff's trademark in a manner calculated to capture initial consumer attention, even if no actual sale is finally completed as a result of the confusion.

Under a theory of initial interest confusion, it does not matter if the "JBT", "Jetway", and "Jetaire" marks are not present on BGSE's website itself or if the website visitor is not confused as the association of www.bullerdick.gse when they solicited products or services through www.bullerdick.gse. Rather, if you determine that, due to BGSE's use of the "JBT", "Jetway", and "Jetaire" marks as keywords, a consumer develops an interest in BGSE's products, then you should find that there is a likelihood of confusion.

Below are the factors you should consider in deciding the whether BGSE's use of "JBT", "Jetway", and "Jetaire" marks results in the likelihood of initial interest confusion. The presence or absence of any particular factor that I suggest should not necessarily resolve whether there was a likelihood of initial interest confusion, because you must consider all relevant evidence in determining this. In the following instruction, I will refer to the "consuming public" or consumers.  For the purposes of deciding this claim, JBT contends that potential JBT customers are designers and contractors working on military base projects.

As you consider the likelihood of initial interest confusion, you should examine the following:

**First**:        The degree of similarity between the marks used by BGSE and JBT's marks.

BGSE used the terms "JBT", "Jetway", and "Jetaire" marks as keywords for BGSE's "www.bullerdick.gse" website html source file. Because the defendants used terms identical to JBT's trademarks, I instruct you to find this factor in favor of JBT.

**Second**:        The intent of the alleged infringer in adopting its mark.

Knowing use of JBT's marks by BGSE to promote the www.bullerdick.gse website consumers may strongly show an intent to derive benefit from the reputation of the JBT", "Jetway", and "Jetaire" marks. This suggests an intent to cause a likelihood of confusion. On the other hand, even in the absence of proof that BGSE acted knowingly, the use of the "JBT", "Jetway", and "Jetaire" marks to promote the www.bullerdick.gse website may indicate a likelihood of confusion. In the trademark context, "intent" refers to not only the intent to use a mark that is already in use somewhere else, but also the intent to confuse customers.

**Third**:        Evidence of actual confusion.

If use by BGSE of the "JBT", "Jetway", and "Jetaire" marks has led to instances of actual confusion, this strongly suggests a likelihood of confusion. However, actual confusion is very difficult to prove and is not required for a finding of likelihood of confusion. Remember, you are only required to find a likelihood of confusion. Just because the parties are unaware of actual confusion, it does not necessarily follow that there has been no confusion among consumers.

**Fourth**:        The relation in use and the manner of marketing between the goods or services marketed by the competing parties.

If JBT's and BGSE's goods or services are both marketed and located by consumers in the same way or by the same methods, this increases the likelihood of confusion.

**Fifth**:        The degree of care likely to be exercised by purchasers.

The more sophisticated the potential buyers of the goods or the more costly the goods, the more careful and discriminating the reasonably prudent purchaser exercising ordinary caution may be.

They may be less likely to be confused by BGSE's use the JBT", "Jetway", and "Jetaire" marks. However, sophisticated purchasers may be confused, just like any other purchasers.

**Sixth**:         The strength or weakness of JBT marks.

The more the consuming public recognizes "JBT", "Jetway", and "Jetaire" marks as an indication of origin of JBT's PC-AIR and GPU products, the more likely it is that consumers would be confused about the origin, source, affiliation, connection, association, sponsorship or approval of the www.bullerdick.gse website. The "JBT", "Jetway", "Jetaire" marks are incontestable. This means that the "JBT", "Jetway" and "Jetaire" marks are inherently distinctive and conclusively valid. However, you may consider other factors to determine the strength of "JBT", "Jetway", and "Jetaire" marks, such as sales figures, objective recognition, such as unsolicited media and press reports, and the duration of use.

**Citation:** 7th Circuit Pattern Jury Instructions 13.1.3; *1-800 Contacts, Inc. v. Lens.com*, 722 F.3d 1229, 1239 (10th Cir. 2013) (citing *King of the Mountain Sports, Inc. v. Chrysler Corp.*, 185 F.3d 1084, 1089-90 (10th Cir. 1999); Dkt. 184 Memorandum Decision and Order, pg. 49; *Interstellar Starship Servs., Ltd. v. Epix, Inc.*, 304 F.3d 936, 941 (9th Cir. 2002); *Brookfield Commc'ns, Inc. v. W. Coast Ent. Corp.*, 174 F.3d 1036, 1046 n.8 (9th Cir. 1999); *Select Comfort Corp. v. Baxter*, 996 F.3d 925, 932-38 (8th Cir. 2021).

**Defendants' Instruction No. 49**

## TRADEMARK INFRINGEMENT – LIKELIHOOD
## OF CONFUSION

JBT claims that BGSE infringed on its trademarks by incorporating them into website metatags. This claim has several elements, but only one – likelihood of confusion – is at issue here. JBT must prove a likelihood of confusion among a significant number of persons who buy or use, or consider buying or using, the products or similar products. You may consider the following factors in deciding whether JBT has shown a likelihood of confusion:

(a)    The degree of similarity between the marks.

(b)    The intent of the alleged infringer in adopting its mark.

(c)    Any evidence of actual confusion.

(d)    The relation in use and the manner of marketing between the goods or services marketed by the competing parties.

(e)    The degree of care likely to be exercised by purchasers. The more sophisticated the potential buyers of the goods are, or the more costly the goods are, then the more careful and discriminating the reasonably prudent buyer exercising ordinary caution may be. That buyer may be less likely to be confused by similarities to the marks.

(f)    The strength or weakness of the marks.

No one factor or consideration is conclusive, but each should be weighed in light of the total evidence presented at trial. In light of these considerations and your common experience, you must determine if the relevant public, neither overly careless nor overly careful, would be, upon encountering BGSE's products, confused about their source, sponsorship, approval, or affiliation.

———————

Memorandum Decision and Order, Doc. 184, p. 49; O'Malley, Grenig & Lee, *Federal Jury Practice & Instructions* § 159:25 (subpart (e)); *Romag Fasteners, Inc. v. Fossil, Inc.*, No. 3:10cv1827 (JBA) (D. Conn. 2014), Doc. 410, p. 12 (Jury Instructions)

**Joint Instruction No. 50.**

**JBT'S FOURTH CLAIM: TRADEMARK INFRINGEMENT UNDER THE LANHAM ACT – DAMAGES (INTRODUCTION)**

You should not interpret the fact that I am giving instructions about JBT's potential damages as an indication in any way that I believe that JBT should, or should not, prevail on any claim for which you are to determine liability. It is your task to decide first whether BGSE is liable. I am instructing you on damages only so that you will have guidance in the event that you decide that BGSE is liable and that JBT is entitled to recover money from BGSE under JBT's claim of trademark infringement.

If you decide for JBT on this claim on the question of liability, then you should consider the amount of money to award to JBT, if any. This should include damages that JBT sustained because of BGSE's infringement, and, if you find that BGSE's infringement of JBT's trademarks was willful, profits that BGSE generated as a result of their infringement.

If you decide for BGSE on the question of liability, then you should not consider this issue.

**Citation:** 7th Circuit Pattern Jury Instructions 13.6.1; *W. Diversified Servs. v. Hyundai Motor Am., Inc*., 427 F.3d 1269, 1272-73 (10th Cir. 2005).

**Joint Instruction No. 51.**

To recover for actual damages, JBT must prove two things by a preponderance of the evidence:

**First**        That BGSE's infringement caused actual confusion among consumers; and

**Second**        As a result, JBT sustained injury.

If you find that JBT has proved these things, then you must consider what amount of money to award to JBT as damages, if any.

Actual damages consist of the amount of money required to compensate JBT for the injury caused by BGSE's infringement. JBT must prove its damages by a preponderance of the evidence.

**Source**:        7th Circuit Pattern Jury Instructions 13.6.3; Section 1117 of the Lanham Act; *United Phosphorus, Ltd. v. Midland Fumigant, Inc.*, 205 F.3d 1219, 1228 (10th Cir. 2000).

**Joint Instruction No. 52.**

**JBT'S FOURTH CLAIM: TRADEMARK INFRINGEMENT UNDER THE LANHAM ACT – DAMAGES (BGSE'S PROFITS)**

In addition to JBT's damages, JBT may recover the profits BGSE gained

from its trademark infringement. You may not, however, include in any award of profits

any amount that you took into account in determining actual damages.

Profit is determined by deducting expenses from gross revenue. Gross revenue is all of

the money BGSE received due to its use of JBT's trademarks.

JBT is only required to prove BGSE's gross sales. BGSE may then prove the amount of

sales made for reasons other than the misappropriation. BGSE also may prove its costs or other

deductions which it claims should be subtracted from the amount of their sales to determine its

profits on such sales. Any costs or deductions that BGSE proves by a preponderance of the

evidence are required to be subtracted from the sales attributable to the infringement and the

difference is the amount that may be awarded to JBT.

It may be that only one of these measures of damages (i.e., JBT's losses, or BGSE's

benefit) is necessary to fully compensate JBT. Or, you may combine both JBT's losses and

BGSE's gains in determining the measure of damages to award JBT. However, JBT may not

recover twice for the same damages.

JBT's losses and BGSE's gains may overlap. For example, it may be that BGSE profited

from particular sales that JBT would have made had BGSE not competed using JBT's

trademarks. In that situation, the two ways of approaching damages would measure the identical

damages—whether viewed as JBT's loss, or as BGSE's gain. In this situation, you would include

as damages either JBT's lost profits or BGSE's gain because those amounts are actually the

same.

But, you may find that BGSE's profits are not identical to JBT's lost profits. For example, if you find that JBT lost profits due to BGSE's infringement of JBT's trademarks, and find that that BGSE obtained even greater profits from its use of the trademark, JBT would be entitled to recover its lost profits as well as the profits of BGSE, but only to the extent they do not overlap.

**Source**:        7th Circuit Pattern Jury Instructions 13.6.4.

*Bimbo Bakeries, supra*, Instruction No. 45, modified to account for the parties in this case and the Court's summary judgment rulings in Doc. No. 184.

**Joint Instruction No. 53.**

**TRADEMARK INFRINGEMENT – WILLFULNESS**

If you find that BGSE's use of JBT's trademarks was likely to cause confusion, you must also determine whether JBT has proven that, at the time BGSE used the trademarks, BGSE acted willfully. BGSE acted willfully if it knew that it was infringing JBT's trademarks or if it acted with indifference to JBT's trademark rights.

**Citation:** 7th Circuit Pattern Civil Jury Instructions, § 13.6.5 (2017).

**Joint Instruction No. 54.**

**JBT'S FIFTH, SIXTH AND SEVENTH CLAIMS: BREACH OF CONTRACT –
DAMAGES (EXPECTATION DAMAGES)**

If you find that JBT was damaged by a breach of any of the three contracts, then JBT has a right to recover damages that follow naturally from the breach as follows:

(1) the loss of the benefits from the contract caused by BGSE's or Bullerdick's breach; minus,

(2) any cost or other loss that JBT has avoided by not having to perform that particular contract.

You must determine how much in expectation damages, if any, should be awarded to JBT for:

- **Contract One:** Bullerdick's breach of the 2011 Confidentiality Agreement with JBT.

- **Contract Two:** BGSE's breach of the 2011 Non-Disclosure Agreement with JBT.

- **Contract Three:** BGSE's breach the 2012 Distributorship Agreement with JBT.

In determining how much expectation damages should be awarded to JBT, you may consider the amount of lost profits to JBT. You may also consider the profits obtained by Bullerdick and/or BGSE as a measure of the benefits that JBT could have obtained from the contract but for Defendants' breach, if you find that these profits correspond with a  loss to JBT.

**Source**:         CV2135 Expectation damages – General; *TruGreen Cos., L.L.C. v. Mower Bros.*, 199 P. 3d 929, 933 (Utah 20018).

**Joint Instruction No. 55.**

**JBT'S FIFTH, SIXTH AND SEVENTH CLAIMS: BREACH OF CONTRACT – DAMAGES (CONSEQUENTIAL DAMAGES)**

If JBT recovers damages for the benefits it expected to receive from the contracts, then JBT may also be entitled to recover "consequential" damages caused by BGSE's and Bullerdick's breaches.

Consequential damages are those losses or injuries reasonably within the contemplation of the parties, that is, they could have considered them or reasonably foreseen them, at the time the contract was made.

In order to decide whether a loss or an injury was foreseeable at the time the contract was made, you should examine the nature and language of the contract and the reasonable expectations of the parties. A loss may be foreseeable because it follows from the breach

(1) in the ordinary course of events, or

(2) as a result of special circumstances, beyond the ordinary course of events, that Defendants had reason to know.

You must determine how much in consequential damages, if any, should be awarded to JBT for:

- **Contract One:** Bullerdick's breach of the 2011 Confidentiality Agreement with JBT.

- **Contract Two:** BGSE's breach of the 2011 Non-Disclosure Agreement with JBT.

- **Contract Three:** BGSE's breach the 2012 Distributorship Agreement with JBT.

**Source:**      CV2136 Expectation damages - Consequential damages

**Plaintiff's Instruction No. 56.**

**JBT'S EIGHTH CLAIM: TORTIOUS INTERFERENCE WITH PROSPECTIVE CONTRACTS – ELEMENTS**

JBT claims that BGSE and Bullerdick improperly interfered with JBT's potential contracts due to BGSE's and Bullerdick's acts and communications with potential JBT customers for various projects for PC-Air and GPU units and related services .

To award damages for this claim, JBT must prove the following elements by a preponderance of the evidence:

**First**.  That BGSE or Bullerdick acted without justification;

**Second**.  In inducing a third party to refrain from entering into a contract with JBT; and

**Third**.  Which contract would have ensued but for BGSE's and Bullerdick's inference.

JBT is claiming that BGSE and Bullerdick improperly interfered with the following contracts, causing harm to JBT.

- Naval Air Station Lemoore, Lemoore, CA: Project P-328

- Marine Corps Air Station Beaufort, Beaufort, SC: Project P-465

- Kadena Air Base, Okinawa, Japan: Project P-803

- Luke Air Force Base, Glendale, AZ: Squadron II and Squadron III

Finally, as to this issue on which JBT has the burden of proof, if you find by the greater weight of the evidence that BGSE and Bullerdick wrongfully interfered with a prospective contract between JBT and the potential customer, then it would be your duty to answer this issue "Yes" in favor of JBT. If, on the other hand, you fail to so find, then it would be your duty to answer this issue "No" in favor of BGSE and Bullerdick.

**Source:**  Dkt. 184 Memorandum Decision and Order, pgs. 64-66; N.C.P.I.—Civil 807.10; N.C.P.I.- Civil 101.46

**Defendants' Instruction No. 56**

**JBT'S EIGHTH CLAIM: TORTIOUS INTERFERENCE WITH PROSPECTIVE
CONTRACTS – ELEMENTS**

JBT claims that BGSE and Bullerdick improperly interfered with JBT's potential

contracts due to BGSE's and Bullerdick's acts and communications with potential JBT

customers for various projects for PC-Air and GPU units and related services.

For purposes of this instruction, JBT is claiming that BGSE and Bullerdick improperly

interfered with the following contracts, causing harm to JBT.

Naval Air Station Lemoore, Lemoore, CA: Project P-328

Marine Corps Air Station Beaufort, Beaufort, SC: Project P-465

Kadena Air Base, Okinawa, Japan: Project P-803

Luke Air Force Base, Glendale, AZ: Squadron II and Squadron III

To award damages for this claim, JBT must prove the following elements by a

preponderance of the evidence:

First, that but for BGSE's and Bullerdicks' conduct, JBT would have entered into a valid

contract.  The mere expectation of a business relationship is insufficient.  Rather, JBT must

prove that a contract would have resulted but for BGSE's and Bullerdicks' malicious

intervention.

Second, that BGSE and Bullerdick had knowledge of the facts and circumstances

associated with JBT's prospective entry into a contract.

Third, that BGSE and Bullerdick maliciously induced another party not to enter into the

prospective contract with JBT.

Fourth, that BGSE and Bullerdick acted without justification.

71

If a defendant's interference is for a legitimate business purpose, his actions are privileged. Competition in business constitutes justifiable interference in another's business relations and is not actionable so long as it is carried on in furtherance of one's own interest and by means that are lawful. This privilege is conditional; that is,  it would lose its legitimacy if exercised for a wrong purpose or if the potential justification is anything other than a reasonable and legitimate attempt to protect the interest of BGSE and Bullerdick.

And fifth, that BGSE's and Bullerdicks'actions resulted in actual damages to JBT.

Finally, as to this issue on which JBT has the burden of proof, if you find by the greater weight of the evidence that BGSE and Bullerdick wrongfully interfered with a prospective contract between JBT and another, then it would be your duty to answer this issue "Yes" in favor of JBT.

If, on the other hand, you fail to so find, then it would be your duty to answer this issue "No" in favor of BGSE and Bullerdick

---

North Carolina Pattern Instructions ("N.C.P.I.") Civil 807.10;

Memorandum Decision and Order, Document 184, pp. 64-65, citing *Walker v. Sloan*, 529 S.E.2d 236, 242 (N.C. Ct. App. 2000)

*Beverage Sys. of the Carolinas, LLC v. Associated Bev. Repairs, LLC*, 368 N.C. 693, 701, 784 S.E.2d 457, 463 (2016)

The justification portion is derived from *People's Sec. Life Ins. v. Hooks, 322 NC 316, 220 (1988), Smith v. Ford Motor Co, 289 NC 71, 91 (1976) and Wells Fargo Ins. Services v. Link, 372 NC 260, 284 (2019)*

**Joint Instruction No. 57.**

**TORTIOUS INTERFERENCE WITH CONTRACT- JUSTIFICATION**

If a defendant's interference is for a legitimate business purpose, his actions are

privileged. Competition in business constitutes justifiable interference in another's business

relations and is not actionable so long as it is carried on in furtherance of one's own interest and

by means that are lawful. This privilege is conditional; that is, it would lose its legitimacy if

exercised for a wrong purpose or if the potential justification is anything other than a reasonable

and legitimate attempt to protect the interest of BGSE and Bullerdick.

**Source:**          N.C.P.I.—Civil 807.10

Source: People's Sec. Life Ins. v. Hooks, 322 NC 316, 220 (1988), Smith v. Ford Motor Co, 289
NC 71, 91 (1976) and Wells Fargo Ins. Services v. Link, 372 NC 260, 284 (2019)."


Defendants contend this instruction should be included in any preceding instruction regarding the
elements of the tortious interference claim, immediately following the justification element.

**Joint Instruction No. 58.**

**JBT'S EIGHTH CLAIM: TORTIOUS INTERFERENCE WITH PROSPECTIVE CONTRACTS – ELEMENTS (DAMAGES)**

You should not interpret the fact that I am giving instructions about JBT's potential damages as an indication in any way that I believe that JBT should, or should not, prevail on this claim. It is your task to decide first whether the Defendants are liable. I am instructing you on damages only so that you will have guidance in the event that you decide that BGSE and Bullerdick, or either of them, are liable and that JBT is entitled to recover money from BGSE and Bullerdick under JBT's claim of interference with prospective contracts.

If you decide for JBT on this claim on the question of liability, then you should consider the amount of money to award to JBT, if any.

Your award of damages to JBT may include the amount of profit that JBT would have received, but did not actually receive, as a result of BGSE's and Bullerdick's interference.

**Source:**

**Joint Instruction No. 59.**

**JBT'S EIGHTH CLAIM: TORTIOUS INTERFERENCE WITH PROSPECTIVE CONTRACTS - PUNITIVE DAMAGES – LIABILITY**

You are to answer this issue only if you have awarded JBT relief in conjunction with its claim for tortious interference with contract.

On this issue the burden of proof is on the JBT to prove three things. The JBT must prove the first thing by clear and convincing evidence.

Thus, <u>the first thing</u> the JBT must prove, by clear and convincing evidence, is the existence of malice or willful or wanton conduct.

"Malice" means a sense of personal ill will toward JBT that activated or incited BGSE or Bullerdick to perform the act or undertake the conduct that resulted in harm to JBT.

"Willful or wanton" conduct means the conscious and intentional disregard of, and indifference to, the rights and safety of others, which BGSE or Bullerdick knows or should know is reasonably likely to result in injury, damage or other harm. Willful or wanton conduct means more than gross negligence.

The JBT must prove the second and third things by the greater weight of the evidence. These second and third things are:

<u>Second</u>, that the malice or willful or wanton conduct was related to the injury to the JBT for which you have already awarded relief.

<u>And Third</u>, that BGSE or Bullerdick participated in the malice or willful or wanton conduct.

Finally, as to this issue on which the JBT has the burden of proof, if you find by the standards herein explained that a defendant is liable to the JBT for punitive damages, then it would be your duty to answer this issue "Yes" in favor of the JBT.

If, on the other hand, you fail to so find, then it would be your duty to answer "No" in favor of BGSE and Bullerdick.

---

NCPI – Civil 810.96 modified to reference the agreed "clear and convincing" and "preponderance of the evidence" instructions.

**Joint Instruction No. 60.**

**JBT'S EIGHTH CLAIM: TORTIOUS INTERFERENCE WITH PROSPECTIVE
CONTRACTS - PUNITIVE DAMAGES – WHETHER TO AWARD**

You are to answer this issue only if you have awarded JBT relief in conjunction with its claim for tortious interference with contract.

Whether to award punitive damages is a matter within the sound discretion of the jury. Punitive damages are not awarded for the purpose of compensating the JBT for its damage, nor are they awarded as a matter of right.

If you decide, in your discretion, to award punitive damages, any amount you award must bear a rational relationship to the sum reasonably needed to punish the defendant for egregiously wrongful acts committed against the JBT and to deter BGSE and Bullerdick and others from committing similar wrongful acts. In making this determination, you may consider only that evidence which relates to:

- The reprehensibility of BGSE's and Bullerdick's motives and conduct.

- The likelihood, at the relevant time, of serious harm.

- The degree of BGSE's and Bullerdick's awareness of the probable consequences of its conduct.

- The duration of BGSE's and Bullerdick's conduct.

- The actual damages suffered by the JBT.

- Any concealment by BGSE and Bullerdick of the facts or consequences of their conduct.

- The existence and frequency of any similar past conduct by BGSE and Bullerdick.

- Whether BGSE and Bullerdick profited by the conduct.

- BGSE's and Bullerdick's ability to pay punitive damages, as evidenced by its revenues or net worth.

Finally, if you determine, in your discretion, to award punitive damages, then you may award to the JBT an amount which bears a rational relationship to the sum reasonably needed to punish BGSE and Bullerdick for egregiously wrongful acts and to deter BGSE and Bullerdick and others from committing similar wrongful acts. That amount should be written in the space provided on the verdict sheet.

If, on the other hand, you determine, in your discretion, not to award the JBT any amount of punitive damages, then you should write the word "None" in the space provided on the verdict sheet.

---

NCPI – Civil 810.98

**Joint Instruction No. 61.**

**DEFENDANTS' CLAIM: UNFAIR OR DECEPTIVE TRADE PRACTICES –**
**ELEMENTS**

This is a claim that BGSE and Bullerdick are bringing against JBT.

BGSE and Bullerdick claim that JBT has engaged in unfair and deceptive trade practices by making false statements in a letter (referred to as the "Cover Letter") sent by JBT to JBT's, BGSE's and Bullerdick's mutual contacts in the industry. I have already determined that by sending the Cover Letter, JBT committed a deceptive act under the law.  To award damages for this claim, BGSE and Bullerdick must prove two things, by the greater weight of the evidence: *First*, that BGSE and Bullerdick have suffered injury, and *Second*, that JBT's conduct was a proximate cause of the BGSE's and Bullerdick's injury.

Proximate cause is a cause which in a natural and continuous sequence produces the injury, and is a cause which a reasonable and prudent person could have foreseen would probably produce such injury or some similar injurious result. There may be more than one proximate cause of an injury. Therefore, the BGSE and Bullerdick need not prove that JBT's conduct was the sole proximate cause of their injury. The BGSE and Bullerdick must prove, by the greater weight of the evidence, only that JBT's conduct was a proximate cause.

**Citation:** N.C.P.I.—Civil 813.05; N.C.P.I.—Civil 813.21; N.C.P.I.—Civil 813.62. Dkt. 184 Memorandum Decision and Order, pgs. 74-76; *Pleasant Valley Promenade v. Lechmere, Inc.*, 464 S.E.2d 47, 58 (N.C. Ct. App. 1995).

**Joint Instruction No. 62.**

**DEFENDANTS' CLAIM: UNFAIR OR DECEPTIVE TRADE PRACTICES –**
**DAMAGES**

BGSE and Bullerdick, may also be entitled to recover actual damages if you find for the BGSE and Bullerdick on this issue of JBT's liability. You should only award actual damages to BGSE and Bullerdick if you find that JBT's actions were the proximate cause of BGSE's and Bullerdick's injuries.

The BGSE and Bullerdick have the burden of proving the amount of actual damages. This means that they must prove, by the greater weight of the evidence, the amount of actual damages, if any, sustained as a result of his injury. BGSE's and Bullerdick's damages are to be reasonably determined from the evidence presented in the case. The BGSE and Bullerdick are not required to prove with mathematical certainty the extent of his injury in order to recover damages.

Thus, BGSE and Bullerdick should not be denied damages simply because they cannot be calculated with exactness or a high degree of mathematical certainty. An award of damages must be based on evidence which shows the amount of BGSE's and Bullerdick's damages with reasonable certainty. However, you may not award any damages based upon mere speculation or conjecture.

Finally, as to this issue on which BGSE and Bullerdick have the burden of proof, if you find by the greater weight of the evidence the amount of actual damages sustained by BGSE and Bullerdick by reason of their injury, then it would be your duty to write that amount in the blank space provided. If, on the other hand, you fail to so find, then it would be your duty to write a nominal sum such as "One Dollar" in the blank space provided.

**Citation:** N.C.P.I.—Civil 813.05

**Joint Instruction No. 63.**
**INTRODUCTION TO DAMAGES**

I will now provide general instructions about awarding damages. My instructions are given as a guide for calculating what damages should be if you find that the party seeking damages is entitled to them. If you decide, however, that none of the parties are entitled to recover damages, then you must disregard these instructions.

Only economic damages are relevant for this trial. Economic damages are the amount of money that will fairly and adequately compensate the party seeking damages for measurable losses of money or property caused by the other party's actions.

For the claims at issue, if you find that the party asserting the claim has proven all of the necessary elements for one of its claims and that it has suffered damages, then you must decide how much money will fairly and adequately compensate that party for that injury. I will provide more specific instructions on how you should calculate damages for each of the claims when I specifically discuss those claims.

**Citation:** J. Shelby Standard Jury Instructions. The standard instruction has been modified to appropriately reference the Parties and to narrow the scope of instructions to exclude non-economic damages.

**Joint Instruction No. 64.**
**PROOF OF DAMAGES**

To be entitled to damages, the party seek damages must prove two points:

First, that damages occurred. There must be a reasonable probability, not just speculation, that the party seeking damages actually suffered damages from the other party's actions.

Second, the amount of damages. The level of evidence required to prove the amount of damages is not as high as what is required to prove the occurrence of damages. There must still be evidence, not just speculation, that gives a reasonable estimate of the amount of damages, but the law does not require mathematical certainty.

In other words, if the party seeking damages has proved that they have been damaged and have established a reasonable estimate of those damages, the other party may not escape liability because of some uncertainty in the amount of damages.

**Citation:** J. Shelby Standard Jury Instructions. The standard instruction has been modified to appropriately reference the Parties; MUJI 26.52, CV2140 Damages. Reasonable certainty

**Joint Instruction No. 65.**
**MITIGATION OF DAMAGES**

When it comes time for you to decide how much in damages to award the party seeking damages, remember that the party seeking remedy has a duty to exercise reasonable diligence and ordinary care to minimize any damages caused by the other party's fault. Any damages awarded a party should not include those that the party could have avoided by taking reasonable steps. It is the party that is being forced to pay the damages' burden to prove that the seeking party could have minimized its alleged damages, but failed to do so. If the party seeking damages made reasonable efforts to minimize its alleged damages, then your award should include the amounts that it reasonably incurred to minimize them.

**Citation:** J. Shelby Standard Jury Instructions. The standard instruction has been modified to appropriately reference make the references neutral between the parties.

**Joint Instruction No. 66.**
**COLLATERAL SOURCE PAYMENTS**

You shall award damages in an amount that fully compensates the injured party. Do not speculate about or consider any other possible sources of benefit the party may have received. After you have returned your verdict, I will make whatever adjustments may be appropriate.

**Citation:** J. Shelby Standard Jury Instructions. The standard instruction has been modified to appropriately reference the Parties.

**Joint Instruction No. 67.**

**ARGUMENTS OF COUNSEL NOT EVIDENCE OF DAMAGES**

You may consider the arguments of the lawyers to assist you in deciding the amounts of

damages, but their arguments are not evidence.

**Citation:** J. Shelby Standard Jury Instructions.

**Joint Instruction No. 68.**
**SPECIAL VERDICT FORM**

I am going to give you a form called the verdict form that contains several questions and instructions. You must answer the questions based upon the instructions and the evidence you have seen and heard during this trial. We will now go over the verdict form. Please bear in mind that each question is important.

**Citation:** J. Shelby Standard Jury Instructions.

### III.     POST-ARGUMENT INSTRUCTIONS

**Joint Instruction No. 69.**
**INITIAL JURY DELIBERATIONS**

You have now heard all of the evidence and the arguments of counsel and have been provided with a copy of the instructions that I have given you. In a moment you will be escorted to the jury room. Any exhibits admitted into evidence will also be placed in the jury room for your review.

When you go to the jury room, you should first select a foreperson, who will preside over your deliberations and be your spokesperson here in the courtroom. I suggest that you should then review the instructions. Not only will your deliberations be more productive if you understand the legal principles upon which your verdict must be based, but for your verdict to be valid, you must follow the instructions throughout your deliberations. Remember, you are the judges of the facts, but you are bound by your oath to follow the law as stated in the instructions.

Once you have reviewed the instructions, you may also wish to review the verdict form to understand the questions you will need to answer. I would also suggest that before you begin discussing the issues presented to you for resolution, you may find it helpful for each of you to write down your own views about the case. This may help you to clarify your own thinking about the issues.

You should then begin to deliberate. When you have reached unanimous agreement as to your verdict, you will have the foreperson fill in the verdict form, date and sign the form, and then return your verdict to the courtroom.

Your deliberations will be confidential. You will not be required to explain your verdict to anyone.

**Citation:** J. Shelby Standard Jury Instructions.

**Joint Instruction No. 70.**
**COMMENCEMENT OF DELIBERATIONS**

The attitude and conduct of jurors at the outset of their deliberations are matters of considerable importance. It is rarely productive or good for a juror, upon entering the jury room, to make an emphatic expression of his or her opinion on the case or to announce a determination to stand for a certain verdict. When one does that at the outset, his or her sense of pride may be aroused, and he or she may hesitate to recede from an announced position if shown that it is wrong. Remember that you are not partisans or advocates in this matter, but are judges.

**Citation:** J. Shelby Standard Jury Instructions.

**Joint Instruction No. 71.**
**JURY DELIBERATIONS**

The verdict must represent the considered judgment of each juror. In order to return a verdict, it is necessary that each juror agree to the verdict. Your verdict must be unanimous. This means each of you must agree on the answer to each question on the verdict form.

It is your duty, as jurors, to consult with one another, and to deliberate with a view to reaching an agreement, if you can do so without violence to individual judgment. Each of you must decide the case for yourself, but do so only after an impartial consideration of the evidence in the case with your fellow jurors. In the course of your deliberations, do not hesitate to re-examine your own views, and change your opinion, if convinced it is erroneous. But do not surrender your honest conviction as to the weight or effect of evidence, solely because of the opinion of your fellow jurors, for the mere purpose of returning a verdict.

Remember at all times, you are not partisans. You are judges - judges of the facts. Your sole interest is to seek the truth from the evidence in the case.

**Citation:** J. Shelby Standard Jury Instructions.

**Joint Instruction No. 72.**

**COMMUNICATIONS WITH COURT DURING DELIBERATIONS**

If it becomes necessary during your deliberations to communicate with the court, you may send a note through a court security officer, signed by your foreperson or by one or more jurors. No member of the jury should attempt to communicate with the court by any means other than a signed writing and the court will never communicate with any member of the jury on any subject touching the merits of the case, otherwise than in writing or orally here in open court.

You will note from the oath the court security officer will take that [he /she], as well as any other person, is also forbidden to communicate in any way with any juror about any subject touching the merits of the case.

Bear in mind also that you are not to reveal to any person—not even to the court—how the jury stands numerically or otherwise until you have reached a unanimous verdict.

**Citation:** J. Shelby Standard Jury Instructions.

**Joint Instruction No. 73.**
**SCHEDULE FOR DELIBERATIONS**

During your deliberations, you are able as a group to set your own schedule for deliberations. I would suggest that you not feel pressured to continue your deliberations if you feel so exhausted or stressed that you may risk compromising your conviction simply to finish your deliberations. A good night's rest and time for reflection may be helpful to resolve doubts you may have. You may, however, deliberate as late as you wish or recess at an appropriate time set by yourselves. You may set your own schedule for lunch and dinner breaks.

I do ask, however, that you notify the court by a note when you plan to recess for the evening.

**Citation:** J. Shelby Standard Jury Instructions.

Dated: December 8, 2021                    Respectfully submitted,


                                  By:  /s/ *Steven McMahon Zeller*
                                       David P. Billings
                                       Robert G. Crockett
                                       FABIAN VANCOTT

                                       Harry N. Arger
                                       Steven McMahon Zeller

                                       DYKEMA GOSSETT PLLC

                                       *Counsel for Plaintiff-Counterdefendant*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on December 8, 2021, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification to all counsel of record in the system.

/s/ *Steven McMahon Zeller*
Steven McMahon Zeller