FILED
2022 OCT 06
CLERK
U.S. DISTRICT COURT

# I.      POST-EVIDENCE INSTRUCTIONS

**Instruction No.  1.**

**MEMBERS OF THE JURY:**

MEMBERS OF THE JURY:

Now that you have heard the evidence, it becomes my duty to instruct you on the law that applies to this case.

It is your duty as jurors to follow the law as stated in the instructions of the court, and to apply the rules of law so given to the facts as you find them from the evidence in the case.

Counsel may refer to these instructions in their arguments.  If, however, any difference appears to you between the law as stated by them and that stated by the court in these instructions, you are of course to be governed by the court's instructions.

You are not to single out any one instruction alone as stating the law, but must consider the instructions as a whole.

Neither are you to be concerned with the wisdom of any rule of law stated by the court. Regardless of any opinion you may have as to what the law ought to be, it would be a violation of your sworn duty to base a verdict upon any other view of the law than that given in these instructions of the court; just as it would be a violation of your sworn duty, as judges of the facts, to base a verdict upon anything but the evidence in the case.

Justice through trial by jury must always depend upon the willingness of each individual juror to seek the truth as to the facts from the same evidence presented to all the jurors; and to arrive at a verdict by applying the same rules of law, as given in the instructions of the court.

**Instruction No.  2.**

**NO BIAS OR PREJUDICE AGAINST ANY PARTY**

You have been chosen as jurors in this case to help resolve disputes between the parties. It is your duty to find the facts from all the evidence in the case.  To those facts you will apply the law as I give it to you.  You must follow the law as I give it to you whether you agree with it or not.  You are to perform this duty without bias or prejudice as to any party.  You must not be influenced by any personal likes or dislikes, opinions, or sympathy.  That means that you must decide the case solely on the evidence before you.  You will recall that you took an oath promising to do so at the beginning of the case.  The defendant and the plaintiff expect that you will carefully and impartially consider all the evidence in the case, follow the law as stated by the court, and reach a just verdict.

In following my instructions, you must follow all of them and not single out some and ignore others; they are all equally important.  And you must not read into these instructions or into anything the court may have said or done any suggestion as to what verdict you should return—that is a matter entirely up to you.

**Instruction No.  3.**

**MULTIPLE PARTIES**

Although there are multiple parties in this case, each Defendant is entitled to a fair consideration of its defenses against JBT.  You must evaluate the evidence fairly and separately as to each Defendant.  Under the law, BGSE, a corporation, is considered to be a person.  But BGSE can only act through its employees, agents, directors, or officers.  Therefore, a corporation is responsible for the acts of its employees, agents, directors, and officers performed within the scope of their authority.

Unless otherwise instructed, all instructions apply to JBT and both Defendants.

**Instruction No.  4.**

**PREPONDERANCE OF THE EVIDENCE**

You may have heard that in a criminal case proof must be beyond a reasonable doubt, but this is not a criminal case.  In a civil case such as this one, a different level of proof generally applies: proof by a preponderance of the evidence.  This is a lower burden of proof than "beyond a reasonable doubt."  Apply this standard except where I specifically instruct you to apply a different standard.

When I tell you that a party has the burden of proof or that a party must prove something by a "preponderance of the evidence," I mean that the party must persuade you, by the evidence, that the fact is more likely to be true than not true.  Another way of saying this is proof by the greater weight of the evidence, however slight.

The preponderance of the evidence is not determined simply by counting the number of witnesses or the amount of the testimony.  Rather, it is determined by evaluating the persuasive character of the evidence.  In weighing the evidence, you should consider all of the evidence that applies to a fact, no matter which party presented it.  The weight to be given to each piece of evidence is for you to decide.

In answering any question asked on the verdict form, if you find that the party's claim is more likely true than not true, unless instructed otherwise, you should answer that question with a "Yes."  If, however, the evidence appears to be equally balanced or in favor of the other party's position with respect to any question asked on the verdict form, then you must answer that question with a "No."

If the evidence should fail to establish any essential element of a party's claim by a preponderance of the evidence, the jury should find for the other party as to that claim.

**Instruction No.  5.**

**CLEAR AND CONVINCING EVIDENCE**

Some facts in this case must be proved by a higher level of proof called "clear and convincing evidence."  When I tell you that a party must prove something by clear and convincing evidence, I mean that the party must persuade you, by the evidence, to the point that there remains no serious or substantial doubt as to the truth of the fact.

Proof by clear and convincing evidence requires a greater degree of persuasion than proof by a preponderance of the evidence but less than proof beyond a reasonable doubt.

I will tell you specifically which of the facts must be proved by clear and convincing evidence.

## Instruction No.  6.

### "EVIDENCE" DEFINED

The evidence in this case consists of the sworn testimony of the witnesses, regardless of who may have called them; all exhibits received in evidence, regardless of who may have presented them; and all facts which may have been admitted or stipulated.

Statements and arguments of counsel are not evidence in this case.  When, however, the parties stipulate or agree as to the existence of a fact, the jury must, unless otherwise instructed, accept the stipulation and regard that fact as conclusively proved.

Any evidence as to which an objection was sustained by the court, and any evidence ordered stricken by the court, must be entirely disregarded.

Anything you may have seen or heard outside the courtroom is not evidence and must be entirely disregarded.

You are to consider only the evidence in this case.  However, in your consideration of the evidence, you are not limited to the statements of the witnesses.  On the contrary, you are permitted to draw from the facts which you find have been proved such reasonable inferences as seem justified in light of your experience.  An inference is a deduction or conclusion which reason and common sense would lead you to draw from facts which are established by the evidence in the case.  In the absence of such facts, you may not draw an inference.

You should weigh all of the evidence in the case, affording each piece of evidence the weight or significance that you find it reasonably deserves.

**Instruction No.  7.**

**DIRECT AND CIRCUMSTANTIAL EVIDENCE**

You may consider both direct and circumstantial evidence.

"Direct evidence" is the testimony of one who asserts actual knowledge of a fact, such as an eyewitness.

"Circumstantial evidence" is proof of a chain of facts or circumstances indicating the existence or the nonexistence of a particular fact, or the occurrence or nonoccurrence of a particular event.

For example, if the fact to be proved is whether Johnny ate the cherry pie, and a witness testifies that she saw Johnny take a bite of the cherry pie, that is direct evidence of the fact.  If the witness testifies that she saw Johnny with cherries smeared on his face and an empty pie plate in his hand, that is circumstantial evidence of the fact.

There is no difference between the weight to be given to either direct or circumstantial evidence.  Nor is a greater degree of certainty required of circumstantial evidence than of direct evidence.  You should weigh all of the evidence in the case, giving each piece of evidence the weight or significance that you find it reasonably deserves.

**Instruction No.  8.**

**DO NOT SPECULATE OR RESORT TO CHANCE**

When you deliberate, do not flip a coin, speculate or choose one juror's opinions at random.  Evaluate the evidence and come to a decision that is supported by the evidence.

**Instruction No.  9.**

**CHARTS, SUMMARIES, AND EXEMPLARS**

Certain charts, summaries, and exemplars have been shown to you in order to help explain the evidence.  However, the charts, summaries, and exemplars are not in and of themselves evidence.  If the charts, summaries, or exemplars correctly reflect facts or figures shown by the evidence, you may consider them.

**Instruction No.  10.**

**BELIEVABILITY OF WITNESSES**

Testimony in this case has been given under oath.  You must evaluate the believability of that testimony.  You may believe all or any part of the testimony of a witness.  You may also believe one witness against many witnesses or many against one, in accordance with your honest convictions.  In evaluating the testimony of a witness, you may want to consider the following:

(1)  <u>Personal interest</u>: Do you believe the accuracy of the testimony was affected one way or the other by any personal interest the witness has in the case?

(2)  <u>Bias</u>: Do you believe the accuracy of the testimony was affected by any bias or prejudice?

(3)  <u>Demeanor</u>: Is there anything about the witness's appearance, conduct or actions that causes you to give more or less weight to the testimony?

(4)  <u>Consistency</u>: How does the testimony tend to support or not support other believable evidence that is offered in the case?

(5)  <u>Knowledge</u>: Did the witness have a good opportunity to know what the witness is testifying about?

(6)  <u>Memory</u>: Does the witness's memory appear to be reliable?

(7)  <u>Reasonableness</u>: Is the testimony of the witness reasonable in light of human experience?

These considerations are not intended to limit how you evaluate testimony.  You are the ultimate judges of how to evaluate believability.  You may not consider, however, a witness's religious beliefs in evaluating his or her credibility.

**Instruction No.  11.**

**DEPOSITION TESTIMONY**

Certain testimony of witnesses who, for some reason, could not be present to testify from the witness stand has been presented to you by showing a videotaped deposition.  A deposition is sworn testimony of a witness that was given previously, outside of court, with a lawyer for each party present and entitled to ask questions.  Such testimony is evidence and you should consider deposition testimony the same way that you would consider the testimony of a witness testifying in court.

**Instruction No. 12.**

**EXPERT TESTIMONY**

The rules of evidence ordinarily do not permit the opinion of a witness to be received as evidence. An exception to this rule exists in the case of expert witnesses. A person who, by education, study, experience, skill, knowledge, and training in a particular art, science, profession, or occupation, may give his or her opinion as an expert witness regarding such matters if they are relevant to the case. You should consider such expert opinion and should weigh the reasons, if any, given for it. You are not bound, however, by such an opinion. Give it the weight to which you feel it is entitled, or you may reject it in whole or in part if, in your judgment, the reasons given for the opinion are unsound.

**Instruction No.  13.**

**OUT-OF-STATE OR OUT-OF-TOWN EXPERTS**

You may not discount the opinions of any of the experts merely because of where they live or practice.

**Instruction No.  14.**

**DIFFERING TESTIMONY OF EXPERT WITNESSES**

If you find that a conflict exists in the testimony of the expert witnesses, you must resolve that conflict by weighing the various opinions and reasons for such opinions given by each of the experts, and the facts upon which the opinions are based, as well as the relative credibility and knowledge of the experts who have testified.

**Instruction No.  15.**

**EFFECT OF WILLFULLY FALSE TESTIMONY**

If you believe any witness has intentionally testified falsely about any important matter, you may disregard the entire testimony of that witness, or you may disregard only the intentionally false testimony.

**Instruction No.  16.**

**INCONSISTENT STATEMENTS**

You may believe that a witness, on another occasion, made a statement inconsistent with that witness's testimony given here.  That does not mean that you are required to disregard the testimony.  It is for you to decide whether to believe the witness.

**Instruction No.  17.**

**THE PARTIES' CLAIMS**

The parties have asserted a number of claims against each other, which are summarized as follows:

- **JBT's Claim of Trade Secret Misappropriation.**  JBT claims that BGSE and Bullerdick have improperly disclosed JBT proprietary trade secrets to third parties, including JBT's competitors, in order to develop and sell competing PC Air and GPU products.

- **JBT's Claim of False Designation of Origin.**  JBT claims that BGSE has falsely described and hid the true origin of the PC Air units and GPUs that it was supplying for F-35 hanger projects by incorporating doctored JBT documents in its bid proposals and project submissions.

- **JBT's Claims for Breach of Contracts**.  JBT claims that Bullerdick breached the 2011 Confidentiality Agreement with JBT, and that BGSE breached the 2011 Non-Disclosure Agreement and the 2012 Distributorship Agreement with JBT, due to Bullerdick's and BGSE's improper use and disclosure of JBT's confidential information, including JBT's trade secrets.

- **JBT's Claim of Tortious Interference**.  JBT claims that, but for BGSE's and Bullerdick's actions in submitting fraudulent bids, JBT would have supplied PC-Air and GPU products on four different projects.

- **BGSE's and Bullerdick's Claim for Unfair or Deceptive Trade Practices.**  BGSE and Bullerdick claim that JBT has engaged in unfair and deceptive trade practices by making false statements in a letter (referred to as the "Cover Letter") sent by JBT to JBT's, BGSE's and Bullerdick's mutual contacts in the industry.

Prior to trial, I already determined liability on JBT's claims in favor of JBT for trade secret misappropriation, false designation of origin, and breach of all contracts based upon certain actions of the Defendants.  Therefore, for these actions, you will decide whether JBT is

entitled to damages as a result of the conduct, and, if so, the amount.  However, at this trial, JBT has presented evidence that additional actions of Defendants have resulted in trade secret misappropriation, false designation of origin, and breach of contract.  I have not made any prior determinations regarding the liability of the Defendants for these actions.  Therefore, for these additional actions, you must first determine whether these actions have resulted in trade secret misappropriation, false designation of origin, and breach of contract, respectively.  If you decide that they do, then you must decide whether JBT is entitled to any damages as a result of those actions, and if so, the amount.

For JBT's remaining claim of tortious interference, I have not made any prior determinations regarding the liability of the Defendants.  Therefore, you must first determine if JBT has proven all of the elements for this claim.  Then, only if JBT has proven this claim, decide whether JBT is entitled to damages as a result of the conduct, and, if so, the amount.

For BGSE's and Bullerdick's claim against JBT, I already determined that JBT committed a deceptive act.  Therefore, you must determine if JBT's action was the proximate cause of any damages suffered by BGSE and Bullerdick.  It is the asserting party's burden of proof to establish all of the individual elements for these claims and present sufficient support for an award of damages.

**Instruction No.  18.**

**JBT'S FIRST AND SECOND CLAIMS: MISAPPROPRIATION OF TRADE SECRETS UNDER FEDERAL LAW AND UTAH STATE LAW (ELEMENTS)**

JBT claims that BGSE and Bullerdick misappropriated trade secrets belonging to JBT.

I have already determined that JBT's HPCF Manual and the BGSE brochure "F35 Final Spec Sheet" contain JBT's protectable trade secrets.  I have also determined that Defendants misappropriated JBT's trade secrets by disclosing JBT's HPCF Manual to Twist, Inc., and using JBT's trade secrets in submittal documents on the Lemoore P-328, Beaufort P-465, Kadena P-803 and Lemoore P-378 projects.  For these acts, you will only determine how much in damages, if any, to award to JBT.

However, JBT also claims that BGSE and Bullerdick misappropriated JBT's trade secrets by disclosing the "F35 Final Spec Sheet" to Walbridge, a contractor bidding on Beaufort P-464; and disclosing the "F35 Final Spec Sheet," containing JBT trade secrets, to Brent Little, Coffman Engineers, designer of Eielson projects EIE376 and EIE379.

Therefore, in order to prove that BGSE and Bullerdick "misappropriated" trade secrets by these additional acts, JBT must prove the following by a preponderance of the evidence:

**First**, BGSE and Bullerdick acquired, disclosed, or used JBT's trade secrets contained in the HPCF Manual and the "F35 Final Spec Sheet" without JBT's express or implied consent; and

**Second,** BGSE and Bullerdick knew or should have known that JBT's trade secrets contained in the HPCF Manual and the "F35 Final Spec Sheet":

    i.  were derived from or through a person who used improper means to acquire the trade secrets;

    ii.  were acquired under circumstances giving rise to a duty to maintain the secrecy of JBT's trade secrets contained in the HPCF Manual and the "F35 Final Spec Sheet" or limit the use of the same, or

   iii. were derived from or through a person who was under a duty to

maintain the secrecy of or limit the use of JBT's trade secrets contained in the

HPCF Manual and the "F35 Final Spec Sheet".

  "Improper means" may include theft, bribery, misrepresentation, breach or inducement of

a breach of duty to maintain secrecy, and espionage through electronic or other means.

"Improper means" does not include reverse engineering, independent derivation or any other

lawful means of acquisition.

  "Express consent" is consent that is clearly and unmistakably stated.  "Implied consent"

is consent that is inferred from one's conduct rather than from one's direct expression.

  Each act of acquiring, disclosing, or using JBT's trade secrets contained in the HPCF

Manual and the "F35 Final Spec Sheet" may constitute a separate act of misappropriation.

  Any of the acts described above may still constitute misappropriation of the trade secret,

even if the person uses the trade secret with additions or modifications.

**Instruction No. 18.a.**

**INNOCENTLY ACQUIRED TRADE SECRETS**

A person may acquire claimed trade secret information innocently, and only later come to know that the information is a trade secret.  One example would be when the claimed trade secret is acquired by mistake or accident, or when a person does not have reason to believe it belongs to another.  Another example would be when a person buys information from someone, without having any reason to know that the information does not belong to the seller.  In situations such as these, a duty is only imposed on a person if and when they either know or have reason to know that the trade secret belongs to another and has been wrongfully acquired.

If you determine that BGSE or Bullerdick acquired the claimed trade secrets of JBT innocently, then you must next decide whether and when they ever learned or should have known that the claimed trade secret information had come to them through improper means.  Their duty to JBT would begin on the date when they first had such knowledge.

**Instruction No.  19.**

**JBT'S FIRST AND SECOND CLAIMS: MISAPPROPRIATION OF TRADE SECRETS UNDER FEDERAL LAW AND UTAH STATE LAW (COMPENSATORY DAMAGES)**

You must now determine if JBT suffered damages for trade secret misappropriation, and, if so, the amount.  Such damages are called compensatory damages.  The purpose of compensatory damages is to make JBT whole - that is, to compensate JBT for the damages that JBT has suffered, if any.

If you determine that JBT suffered compensatory damages from trade secret misappropriation, you should award the amount of money that will fairly and adequately compensate JBT for measurable losses of money caused by BGSE's and Bullerdick's trade secret misappropriation.  The compensatory damages that you award must be fair compensation for all of JBT's injuries.  Compensatory damages are not allowed as a punishment and cannot be imposed or increased to penalize BGSE and Bullerdick.  You should not award compensatory damages for speculative injuries, but only for those injuries which JBT has actually suffered or that JBT is reasonably likely to suffer in the future.

If you decide to award compensatory damages, you should be guided by dispassionate common sense.  Computing damages may be difficult, but you must not let that difficulty lead you to engage in arbitrary guesswork.  On the other hand, the law does not require that JBT prove the amount of its losses with mathematical precision, but only with as much definiteness and accuracy as the circumstances permit.  You must use sound discretion in fixing an award of damages, drawing reasonable inferences where you find them appropriate from the facts and circumstances in evidence.  You may rely partially or completely on the damages calculations presented by an expert on damages, or chose to disregard that expert in favor of your own reasoned calculations.

You may only award an amount that would fairly compensate JBT for damages proximately caused by BGSE's and Bullerdick's use of its trade secrets.

To the extent that it is not duplicative (that is, double counting), you may award the amount (i) of JBT's actual damages suffered as a result of BGSE's and Bullerdick's misappropriation of JBT's trade secrets, such as JBT's lost profits as compensatory damages; and (ii) BGSE's and Bullerdick's unjust enrichment that is a result of their misappropriation of JBT's trade secrets, even if that amount is more than the actual damages suffered by JBT.

I will explain how to calculate the amount of unjust enrichment in the following instructions.

**Instruction No.  20.**

**JBT'S FIRST AND SECOND CLAIMS: MISAPPROPRIATION OF TRADE SECRETS UNDER FEDERAL LAW AND UTAH STATE LAW (UNJUST ENRICHMENT)**

In measuring JBT's damages, if any, you may also consider what benefit BGSE and Bullerdick may have gained from their misuse of JBT's trade secret.  For example, JBT is entitled to net profits earned by BGSE and Bullerdick that are attributable to misappropriation. Regardless of whether you find that JBT itself suffered losses, if you find that BGSE and Bullerdick benefited from using the trade secret belonging to JBT, then you should consider whether BGSE and Bullerdick should pay the monetary value of those benefits to JBT.

JBT is only required to prove BGSE's and Bullerdick's gross sales.  BGSE and Bullerdick may then prove the amount of sales made for reasons other than the misappropriation. BGSE and Bullerdick also may prove their costs or other deductions which they claim should be subtracted from the amount of their sales to determine their profits on such sales.  Any costs or deductions that BGSE and Bullerdick prove by a preponderance of the evidence are required to be subtracted from the sales attributable to the infringement and the difference is the amount that may be awarded to JBT.

It may be that only one of these measures of damages (i.e., JBT's losses, or BGSE's and Bullerdick's benefit) is necessary to fully compensate JBT.  Or, you may combine both JBT's losses and BGSE's and Bullerdick's gains in determining the measure of damages to award JBT. However, JBT may not recover twice for the same damages.

JBT's losses and a defendant's gains may overlap.  For example, it may be that BGSE and Bullerdick profited from particular sales that JBT would have made had BGSE and Bullerdick not competed using the trade secrets.  In that situation, the two ways of approaching damages would measure the identical damages—whether viewed as JBT's loss, or as BGSE's and Bullerdick's gain.  In this situation, you would include as damages either JBT's lost profits or BGSE's and Bullerdick's gain because those amounts are actually the same.

But, you may find that BGSE's and Bullerdick's profits are not identical to JBT's lost profits.  For example, if you find that JBT lost profits due to BGSE's and Bullerdick's improper use of its trade secret, and find that the Defendants obtained even greater profits from the use of that trade secret, JBT would be entitled to recover its lost profits as well as the profits of BGSE and Bullerdick, but only to the extent they do not overlap.

**Instruction No.  21.**

**JBT'S FIRST AND SECOND CLAIMS: MISAPPROPRIATION OF TRADE SECRETS UNDER FEDERAL LAW AND UTAH STATE LAW (WILLFULNESS AND MALICIOUSNESS)**

You will also be asked to decide whether JBT has shown that Bullerdick's and BGSE's conduct with respect to JBT's trade secrets was willful and malicious.

Trade secret misappropriation is *willful* when one knowingly and purposefully misappropriates a trade secret for itself, or when one reasonably should have known that the information it used from another was a trade secret, and still used that information.

Trade secret misappropriation is *malicious* if done with intent to cause injury or with such gross indifference to the rights of others as to amount to a willful act done intentionally without just cause or excuse.

A question on the Verdict form will ask if JBT has proved by clear and convincing evidence that BGSE's and Bullerdick's conduct was willful and malicious.

If you do not find that JBT has proven this by "clear and convincing evidence", you will then be asked whether JBT has proven by a "preponderance of the evidence" that Bullerdick's and BGSE's misappropriation of JBT's trade secrets was willful and malicious.

**Instruction No.  22.**

**JBT'S THIRD CLAIM: UNFAIR COMPETITION AND FALSE DESIGNATION OF ORIGIN (ELEMENTS)**

JBT has alleged that actions of BGSE constitute false designation of origin in the sale or offer of sale of products.

I have already determined that BGSE is liable for falsely designating the origin of the products represented as being offered by BGSE in the submittal documents for the Lemoore P-328, Beaufort P-465, Kadena P-803, and Lemoore P-378 projects.  For these acts, you will only determine how much in damages, if any, to award to JBT.

However, JBT also claims that BGSE falsely designated the origin of products supplied by manufacturers other than JBT through the following additional acts:

- Sending the "F35 Final Spec Sheet," containing portions of the JBT 270VDC Manual and HPCF Manual with photos and drawings doctored to remove JBT logos and replace with BGSE logos, to Brent Little, Coffman Engineers, designer of Eielson projects EIE376 and EIE379;

- Sending a brochure for BGSE-branded PC-Air products having photos of JBT products with BGSE logos superimposed on them, to Mortenson, a bidder for Beaufort P-464;

- Including in a quote for PC-Air units for the Eielson EIE-379 project, a spec sheet for BGSE-branded product that included photos of JBT products with JBT's logo removed and BGSE's logo superimposed;

- Including in a quote for GPU units for the Eielson EIE-393 project, a spec sheet for BGSE-branded product that included photos of JBT products with JBT's logo removed and BGSE's logo superimposed; and

- Including in the Submittal Package for PC Air units, submitted to Unit Co.  on 8/10/2017 for Eielson EIE-376, the BGSE Group Profile document, which includes photos of JBT equipment with JBT logos removed and BGSE logos superimposed therein.

I instruct you that the PC-Air units and GPUs at issue originated with JBT.

Therefore, in order to prove its claim for these acts, JBT must prove the following by a preponderance of the evidence:

**First**, that origin of the PC-Air units and GPUs at issue were falsely designated by BGSE;

**Second**, that the false designation of origin was likely to cause consumer confusion; and

**Third**, that JBT was harmed by the BGSE's false designation of origin.

Additional instructions regarding the second and third elements are found in the following two instructions.

**Instruction No.  22.a.**

**JBT'S THIRD CLAIM: UNFAIR COMPETITION AND FALSE DESIGNATION OF ORIGIN (CONSUMER CONFUSION)**

In determining whether the false designation of origin was likely to cause consumer confusion you may consider the following non-exhaustive factors:

- The degree of similarity between the products being sold or offered for sale,

- The intent of the Defendants,

- Evidence of actual confusion,

- Similarity of the products and manner of marketing,

- The degree of care likely to be exercised by purchasers, and

- The strength or weakness of the representations of the product's origin.

These factors are interrelated, and no individual factor is dispositive.  Not all factors will apply in every case.

**Instruction No.  22.b.**

**JBT'S THIRD CLAIM: UNFAIR COMPETITION AND FALSE DESIGNATION OF ORIGIN (HARM)**

You may find that deception by one, which prevents another from reaping both the financial and reputational rewards associated with its products, causes harm.

**Instruction No.  23.**

**JBT'S THIRD CLAIM: UNFAIR COMPETITION AND FALSE DESIGNATION OF ORIGIN – DAMAGES (INTRODUCTION)**

For the false designation of origin conduct already found by the Court, and for any other actions that you conclude constitute false designation of origin, you now must consider the amount of money to award to JBT, if any, for BGSE's conduct resulting in false designation of origin.

JBT is seeking an award of its actual damages and/or BGSE's unjust profits due to BGSE's conduct resulting in a false designation of origin for the following projects:

- Naval Air Station Lemoore, Lemoore, CA: Projects P-328 and P-378

- Marine Corps Air Station Beaufort, Beaufort, SC: Projects P-465 and P-464

- Kadena Air Base, Okinawa, Japan: Project P-803

- Eielson Air Force Base, Alaska: Projects EIE-376, EIE-379 and EIE-393.

**Instruction No.  24.**

**JBT'S THIRD CLAIM: UNFAIR COMPETITION AND FALSE DESIGNATION OF ORIGIN – DAMAGES (ACTUAL DAMAGES)**

Actual damages consist of the amount of money required to compensate JBT for the injury caused by BGSE's conduct.  JBT must prove its damages by a preponderance of the evidence.  For its actual damages, you should consider whether any of the following exists, and if so to what extent, in determining JBT's damages:

- Any injury to or loss of JBT's reputation;

- Any injury to or loss of JBT's goodwill, including any injury to the JBT's general business reputation;

- Any loss of JBT's income;

- Any costs of future corrective advertising reasonably required to correct any public confusion caused by the BGSE's illegal conduct; and

- Any other factors that bear on JBT's actual damages.

**Instruction No.  25.**

**JBT'S THIRD CLAIM: UNFAIR COMPETITION AND FALSE DESIGNATION OF
ORIGIN – DAMAGES (BGSE'S PROFITS)**

JBT is entitled to any profits earned by BGSE that are attributable to its illegal conduct,
in addition to actual damages.  However, you may not include in any award of profits any
amount that you included in determining actual damages.

It is not a requirement that JBT have suffered actual harm or prove that it has incurred
lost profits in order for you to award it BGSE's profits as damages.

JBT is only required to prove BGSE's gross revenue from the illegal conduct.  BGSE
may then prove the amount of sales made for reasons other than the false designation of origin.
BGSE also has the burden of proving the expenses and any portion of the profit attributable to
factors other than the improper use of JBT materials by a preponderance of the evidence.
Expenses are all the overhead and production costs incurred in producing the gross revenue.

**Instruction No.  26.**

**JBT'S THIRD CLAIM: UNFAIR COMPETITION AND FALSE DESIGNATION OF
ORIGIN – DAMAGES (WILLFUL INFRINGEMENT)**

You must now determine whether BGSE's actions with regards to its improper use of
JBT materials is "willful."  You should find BGSE's actions to be "willful" if you believe that
BGSE had acted with the intent to pass off its products and services as those of JBT.

**Joint Instruction No.  27.**

**JBT'S FIFTH, SIXTH AND SEVENTH CLAIMS: BREACH OF CONTRACT – ELEMENTS**

JBT has alleged that Defendants breached three different contracts between Defendants and JBT: the 2011 Confidentiality Agreement between JBT and Bullerdick, the 2011 Non-Disclosure Agreement between JBT and BGSE, and the 2012 Distributorship Agreement between JBT and BGSE.

I have already determined that the 2011 Confidentiality Agreement, the 2011 Non-Disclosure Agreement and the 2012 Distributorship Agreement constitute valid contracts between JBT and the respective Defendant.

I have also already determined that JBT has performed under the 2011 Confidentiality Agreement, the 2011 Non-Disclosure Agreement, and the 2012 Distributorship Agreement.

I have already determined that Mr.  Bullerdick breached the 2011 Confidentiality Agreement by Mr.  Bullerdick's disclosure of JBT Confidential Information to Twist, Inc.

I have already determined that BGSE breached the 2011 Non-Disclosure Agreement by BGSE's disclosure of JBT confidential information to Twist, Inc.

And I have already determined that BGSE breached the 2012 Distributorship Agreement by retaining JBT's documents and materials after the time in which BGSE was required to return them to JBT.

However, JBT also claims that the following additional actions of Defendants breached these contracts:

- Disclosing JBT's confidential information that Defendants were obligated to return and/or not use for personal benefit, namely the HPCF Manual;

- Using one or more JBT documents that Defendants were obligated to return and/or not use for personal benefit, to create BGSE brochures, submittals, test plans, test forms, test reports, including by doctoring photos, by removing JBT logos, and by superimposing BGSE logos;

- Using one or more JBT documents that Defendants were obligated to return and/or not use for personal benefit, to help create the PC-Air submittal package submitted to Haskell for P-464;

- Using one or more JBT documents that Defendants were obligated to return and/or not use for personal benefit, to help create the F-35 power equipment submittal and the aircraft power equipment submittal; and

- Using one or more JBT documents that Defendants were obligated to return and/or not use for personal benefit, to help create the required training plan for GPU units for Eielson EIE-393.

Therefore, in order to prove its claims for these additional acts, JBT must prove the following with respect to each alleged breach, by a preponderance of the evidence:

**First**, breach of the contract by the respective Defendant; and

**Second**, damage to JBT as a result of the breach.

**Instruction No.  28.**

**JBT'S FIFTH, SIXTH AND SEVENTH CLAIMS: BREACH OF CONTRACT –
DAMAGES (EXPECTATION DAMAGES)**

If you find that JBT was damaged by a breach of any of the three contracts, then JBT has

a right to recover damages that follow naturally from the breach as follows:

(1) the loss of the benefits from the contract caused by BGSE's or Bullerdick's breach;

minus,

(2) any cost or other loss that JBT has avoided by not having to perform that particular

contract.

You must determine how much in expectation damages, if any, should be awarded to JBT for:

- **Contract One:** Bullerdick's breach of the 2011 Confidentiality Agreement with JBT.

- **Contract Two:** BGSE's breach of the 2011 Non-Disclosure Agreement with JBT.

- **Contract Three:** BGSE's breach the 2012 Distributorship Agreement with JBT.

In determining how much expectation damages should be awarded to JBT, you may

consider the amount of lost profits to JBT.  You may also consider the profits obtained by

Bullerdick and/or BGSE as a measure of the benefits that JBT could have obtained from the

contract but for Defendants' breach, if you find that these profits correspond with a loss to JBT.

**Instruction No.  29.**

**JBT'S FIFTH, SIXTH AND SEVENTH CLAIMS: BREACH OF CONTRACT –
DAMAGES (CONSEQUENTIAL DAMAGES)**

If JBT recovers damages for the benefits it expected to receive from the contracts, then JBT may also be entitled to recover "consequential" damages caused by BGSE's and Bullerdick's breaches.

Consequential damages are those losses or injuries reasonably within the contemplation of the parties, that is, they could have considered them or reasonably foreseen them, at the time the contract was made.

In order to decide whether a loss or an injury was foreseeable at the time the contract was made, you should examine the nature and language of the contract and the reasonable expectations of the parties.  A loss may be foreseeable because it follows from the breach

(1) in the ordinary course of events, or

(2) as a result of special circumstances, beyond the ordinary course of events, that

Defendants had reason to know.

You must determine how much in consequential damages, if any, should be awarded to JBT for:

- **Contract One:** Bullerdick's breach of the 2011 Confidentiality Agreement with JBT.

- **Contract Two:** BGSE's breach of the 2011 Non-Disclosure Agreement with JBT.

- **Contract Three:** BGSE's breach the 2012 Distributorship Agreement with JBT.

**Instruction No.  30.**

**JBT'S EIGHTH CLAIM: TORTIOUS INTERFERENCE WITH PROSPECTIVE CONTRACTS – ELEMENTS**

JBT claims that BGSE and Bullerdick improperly interfered with JBT's potential contracts due to BGSE's and Bullerdick's acts and communications with potential JBT customers for various projects for PC-Air and GPU units and related services.

JBT is claiming that BGSE and Bullerdick improperly interfered with the following contracts, causing harm to JBT.

Naval Air Station Lemoore, Lemoore, CA: Project P-328

Marine Corps Air Station Beaufort, Beaufort, SC: Project P-465

Kadena Air Base, Okinawa, Japan: Project P-803

To prevail on this claim, JBT must prove the following elements by a preponderance of the evidence:

First, that but for BGSE's and Bullerdick's conduct, JBT would have entered into a valid contract.  The mere expectation of a business relationship is insufficient.  Rather, JBT must prove that a contract would have resulted but for BGSE's and Bullerdick's malicious intervention.

Second, that BGSE and Bullerdick had knowledge of the facts and circumstances associated with JBT's prospective entry into a contract.

Third, that BGSE and Bullerdick maliciously induced another party not to enter into a prospective contract with JBT.  In this context, "malicious" does not import ill will, but refers to interference with design to injure JBT or to gain some advantage at JBT's expense.

Fourth, that BGSE and Bullerdick acted without justification.  Further direction regarding this element is found in the following instruction.

And fifth, that BGSE's and Bullerdick's actions resulted in actual damages to JBT.

**Instruction No.  31.**

**TORTIOUS INTERFERENCE WITH CONTRACT- JUSTIFICATION**

If a defendant's interference is for a legitimate business purpose, his actions are privileged.  Competition in business constitutes justifiable interference in another's business relations and is not actionable so long as it is carried on in furtherance of one's own interest and by means that are lawful.  This privilege is conditional; that is, it would lose its legitimacy if exercised for a wrong purpose or if the potential justification is anything other than a reasonable and legitimate attempt to protect the interest of BGSE and Bullerdick.

**Instruction No.  32.**

**JBT'S EIGHTH CLAIM: TORTIOUS INTERFERENCE WITH PROSPECTIVE CONTRACTS – ELEMENTS (DAMAGES)**

You should not interpret the fact that I am giving instructions about JBT's potential damages as an indication in any way that I believe that JBT should, or should not, prevail on this claim.  It is your task to decide first whether the Defendants are liable.  I am instructing you on damages only so that you will have guidance in the event that you decide that BGSE and Bullerdick, or either of them, are liable and that JBT is entitled to recover money from BGSE and Bullerdick under JBT's claim of interference with prospective contracts.

If you decide for JBT on this claim on the question of liability, then you should consider the amount of money to award to JBT, if any.

Your award of damages to JBT may include the amount of profit that JBT would have received, but did not actually receive, as a result of BGSE's and Bullerdick's interference.

**Instruction No.  33.**

**JBT'S EIGHTH CLAIM: TORTIOUS INTERFERENCE WITH PROSPECTIVE CONTRACTS - MALICE OR WILLFUL OR WANTON**

If you have awarded JBT relief in conjunction with its claim for tortious interference with contract, you must then decide if Defendants engaged in any malice or willful or wanton conduct in so doing.

On this issue the burden of proof is on the JBT to prove three things.  The JBT must prove the first thing by clear and convincing evidence.

Thus, the first thing the JBT must prove, by clear and convincing evidence, is the existence of malice or willful or wanton conduct.

"Malice" means a sense of personal ill will toward JBT that activated or incited BGSE or Bullerdick to perform the act or undertake the conduct that resulted in harm to JBT.

"Willful or wanton" conduct means the conscious and intentional disregard of, and indifference to, the rights and safety of others, which BGSE or Bullerdick knows or should know is reasonably likely to result in injury, damage or other harm.  Willful or wanton conduct means more than gross negligence.

Then JBT must prove the second and third things by the greater weight of the evidence. These second and third things are:

Second, that the malice or willful or wanton conduct was related to the injury to the JBT for which you have already awarded relief.

And third, that BGSE or Bullerdick participated in the malice or willful or wanton conduct.

**Instruction No.  34.**

**DEFENDANTS' CLAIM: UNFAIR OR DECEPTIVE TRADE PRACTICES –
ELEMENTS**

This is a claim that BGSE and Bullerdick are bringing against JBT.

BGSE and Bullerdick claim that JBT has engaged in unfair and deceptive trade practices by making false statements in a letter (referred to as the "Cover Letter") sent by JBT to JBT's, BGSE's and Bullerdick's mutual contacts in the industry.  I have already determined that by sending the Cover Letter, JBT committed a deceptive act under the law.  To award damages for this claim, BGSE and Bullerdick must prove two things, by the greater weight of the evidence: *First*, that BGSE and Bullerdick have suffered injury, and *Second*, that JBT's conduct was a proximate cause of the BGSE's and Bullerdick's injury.

Proximate cause is a cause which in a natural and continuous sequence produces the injury, and is a cause which a reasonable and prudent person could have foreseen would probably produce such injury or some similar injurious result.  There may be more than one proximate cause of an injury.  Therefore, BGSE and Bullerdick need not prove that JBT's conduct was the sole proximate cause of their injury.  BGSE and Bullerdick must prove, by the greater weight of the evidence, only that JBT's conduct was a proximate cause.

**Instruction No.  35.**

**DEFENDANTS' CLAIM: UNFAIR OR DECEPTIVE TRADE PRACTICES –
DAMAGES**

BGSE and Bullerdick, may also be entitled to recover actual damages if you find for BGSE and Bullerdick on the issue of JBT's liability.  You should only award actual damages to BGSE and Bullerdick if you find that JBT's actions were the proximate cause of BGSE's and Bullerdick's injuries.

BGSE and Bullerdick have the burden of proving the amount of actual damages.  This means that they must prove, by the greater weight of the evidence, the amount of actual damages, if any, sustained as a result of his injury.  BGSE's and Bullerdick's damages are to be reasonably determined from the evidence presented in the case.  BGSE and Bullerdick are not required to prove with mathematical certainty the extent of his injury in order to recover damages.

Thus, BGSE and Bullerdick should not be denied damages simply because they cannot be calculated with exactness or a high degree of mathematical certainty.  An award of damages must be based on evidence which shows the amount of BGSE's and Bullerdick's damages with reasonable certainty.  However, you may not award any damages based upon mere speculation or conjecture.

**Instruction No.  36.**

**INTRODUCTION TO DAMAGES**

I will now provide general instructions about awarding damages.  My instructions are given as a guide for calculating what damages should be if you find that the party seeking damages is entitled to them.  If you decide, however, that none of the parties are entitled to recover damages, then you must disregard these instructions.

Only economic damages are relevant for this trial.  Economic damages are the amount of money that will fairly and adequately compensate the party seeking damages for measurable losses of money or property caused by the other party's actions.

For the claims at issue, if you find that the party asserting the claim has proven all of the necessary elements for one of its claims and that it has suffered damages, then you must decide how much money will fairly and adequately compensate that party for that injury.  I have provided more specific instructions on how you should calculate damages for each of the claims when I specifically discussed those claims.

**Instruction No.  37.**

**PROOF OF DAMAGES**

To be entitled to damages, the party seek damages must prove two points:

First, that damages occurred.  There must be a reasonable probability, not just speculation, that the party seeking damages actually suffered damages from the other party's actions.

Second, the amount of damages.  The level of evidence required to prove the amount of damages is not as high as what is required to prove the occurrence of damages.  There must still be evidence, not just speculation, that gives a reasonable estimate of the amount of damages, but the law does not require mathematical certainty.

In other words, if the party seeking damages has proved that they have been damaged and have established a reasonable estimate of those damages, the other party may not escape liability because of some uncertainty in the amount of damages.

**Instruction No.  38.**

**MITIGATION OF DAMAGES**

When it comes time for you to decide how much in damages to award the party seeking damages, remember that the party seeking remedy has a duty to exercise reasonable diligence and ordinary care to minimize any damages caused by the other party's fault.  Any damages awarded a party should not include those that the party could have avoided by taking reasonable steps.  It is the party that is being forced to pay the damages' burden to prove that the seeking party could have minimized its alleged damages, but failed to do so.  If the party seeking damages made reasonable efforts to minimize its alleged damages, then your award should include the amounts that it reasonably incurred to minimize them.

**Instruction No.  39.**

**COLLATERAL SOURCE PAYMENTS**

You shall award damages in an amount that fully compensates the injured party.  Do not speculate about or consider any other possible sources of benefit the party may have received. After you have returned your verdict, I will make whatever adjustments may be appropriate.

**Instruction No.  40.**

**ARGUMENTS OF COUNSEL NOT EVIDENCE OF DAMAGES**

You may consider the arguments of the lawyers to assist you in deciding the amounts of damages, but their arguments are not evidence.

**Instruction No.  41.**

**VERDICT FORM**

I am going to give you a form called the Verdict Form that contains several questions and instructions.  You must answer the questions based upon the instructions and the evidence you have seen and heard during this trial.  We will now go over the Verdict Form.  Please bear in mind that each question is important.

## II.      POST-ARGUMENT INSTRUCTIONS

### Instruction No.  42.

### INITIAL JURY DELIBERATIONS

You have now heard all of the evidence and the arguments of counsel and have been provided with a copy of the instructions that I have given you.  In a moment you will be escorted to the jury room.  Any exhibits admitted into evidence will also be placed in the jury room for your review.

When you go to the jury room, you should first select a foreperson, who will preside over your deliberations and be your spokesperson here in the courtroom.  I suggest that you should then review the instructions.  Not only will your deliberations be more productive if you understand the legal principles upon which your verdict must be based, but for your verdict to be valid, you must follow the instructions throughout your deliberations.  Remember, you are the judges of the facts, but you are bound by your oath to follow the law as stated in the instructions.

Once you have reviewed the instructions, you may also wish to review the verdict form to understand the questions you will need to answer.  I would also suggest that before you begin discussing the issues presented to you for resolution, you may find it helpful for each of you to write down your own views about the case.  This may help you to clarify your own thinking about the issues.

You should then begin to deliberate.  When you have reached unanimous agreement as to your verdict, you will have the foreperson fill in the verdict form, date and sign the form, and then return your verdict to the courtroom.

Your deliberations will be confidential.  You will not be required to explain your verdict to anyone.

**Instruction No.  43.**

**COMMENCEMENT OF DELIBERATIONS**

The attitude and conduct of jurors at the outset of their deliberations are matters of considerable importance.  It is rarely productive or good for a juror, upon entering the jury room, to make an emphatic expression of his or her opinion on the case or to announce a determination to stand for a certain verdict.  When one does that at the outset, his or her sense of pride may be aroused, and he or she may hesitate to recede from an announced position if shown that it is wrong.  Remember that you are not partisans or advocates in this matter, but are judges.

**Instruction No.  44.**

**JURY DELIBERATIONS**

The verdict must represent the considered judgment of each juror.  In order to return a verdict, it is necessary that each juror agree to the verdict.  Your verdict must be unanimous.  This means each of you must agree on the answer to each question on the verdict form.

It is your duty, as jurors, to consult with one another, and to deliberate with a view to reaching an agreement, if you can do so without violence to individual judgment.  Each of you must decide the case for yourself, but do so only after an impartial consideration of the evidence in the case with your fellow jurors.  In the course of your deliberations, do not hesitate to re-examine your own views, and change your opinion, if convinced it is erroneous.  But do not surrender your honest conviction as to the weight or effect of evidence, solely because of the opinion of your fellow jurors, for the mere purpose of returning a verdict.

Remember at all times, you are not partisans.  You are judges - judges of the facts.  Your sole interest is to seek the truth from the evidence in the case.

**Instruction No.  45.**

**COMMUNICATIONS WITH COURT DURING DELIBERATIONS**

If it becomes necessary during your deliberations to communicate with the court, you may send a note through a court security officer, signed by your foreperson or by one or more jurors.  No member of the jury should attempt to communicate with the court by any means other than a signed writing and the court will never communicate with any member of the jury on any subject touching the merits of the case, otherwise than in writing or orally here in open court.

You will note from the oath the court security officer will take that [he /she], as well as any other person, is also forbidden to communicate in any way with any juror about any subject touching the merits of the case.

Bear in mind also that you are not to reveal to any person—not even to the court—how the jury stands numerically or otherwise until you have reached a unanimous verdict.

**Instruction No.  46.**

**SCHEDULE FOR DELIBERATIONS**

During your deliberations, you are able as a group to set your own schedule for deliberations.  I would suggest that you not feel pressured to continue your deliberations if you feel so exhausted or stressed that you may risk compromising your conviction simply to finish your deliberations.  A good night's rest and time for reflection may be helpful to resolve doubts you may have.  You may, however, deliberate as late as you wish or recess at an appropriate time set by yourselves.  You may set your own schedule for lunch and dinner breaks.

I do ask, however, that you notify the court by a note when you plan to recess for the evening.