David P. Billings (UT # 11510)
Robert G. Crockett (UT # 12067)
**FABIAN VANCOTT**
215 South State Street, Suite 1200
Salt Lake City, UT 84111-2323
Telephone: (801) 531-8900
Facsimile: (801) 596-2814
rcrockett@fabianvancott.com
dbillings@fabianvancott.com

Harry N. Arger (*pro hac vice*)
Steven McMahon Zeller *(pro hac vice)*
Matthew T. Hays *(pro hac vice)*
**DYKEMA GOSSETT PLLC**
10 S. Wacker Drive, Suite 2300
Chicago, IL 60606
Telephone: (312) 876-1700
Facsimile: (312) 876-1155
harger@dykema.com
szeller@dykema.com
mhays@dykema.com

*Attorneys for John Bean Technologies Corporation*

**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF UTAH, CENTRAL DIVISION**

JOHN BEAN TECHNOLOGIES CORPORATION, a Delaware corporation,

Plaintiff-Counterdefendant,

v.

B GSE GROUP, LLC, a North Carolina limited liability company, and BRYAN BULLERDICK, an individual,

Defendants-Counterclaimants.

**PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION FOR JUDGMENT AS A MATTER OF LAW PURSUANT TO RULE 50(b) and, in the alternative, FOR A NEW TRIAL OR TO ALTER OR AMEND THE JUDGMENT PURSUANT TO RULE 59**

Case No. 1:17-cv-00142-RJS-DAO

Judge: Robert J. Shelby

Magistrate Judge: Daphne A. Oberg

# Table of Contents


I. RESPONSE TO DEFENDANTS' RULE 50(B) MOTION FOR RENEWED JUDGMENT AS A MATTER OF LAW ..... 1

A. There is no basis to upset the jury's liability finding on JBT's claim for tortious interference. ..... 3

B. There is no basis to upset the jury's liability finding and award of damages on JBT's claim for trade secret misappropriation. ..... 7

C. There is no basis to upset the jury's liability finding and award of damages on JBT's claim for false designation of origin. ..... 8

D. There is no basis to upset the jury's liability finding and award of damages on JBT's claims for breach of contract. ..... 12

II. RESPONSE TO DEFENDANTS' RULE 59 MOTION FOR NEW TRIAL ..... 13

III. RESPONSE TO DEFENDANTS' MOTION TO ALTER OR AMEND THE JUDGMENT ..... 17

IV. CONCLUSION ..... 20

## INTRODUCTION

Plaintiff John Bean Technologies Corporation ("JBT") respectfully submits this response in opposition to BGSE Group, LLC's ("BGSE") and Bryan Bullerdick's ("Bullerdick", together with BGSE, the "Defendants") Motion for Judgment as a Matter of Law Pursuant to Rule 50(b) (Defendants' "Motion for JMOL"). and, in the Alternative, for a New Trial (Defendants' "Motion for New Trial") or to Alter or Amend the Judgment Pursuant to Rule 59 (Defendants' "Motion to Amend Judgment"). Defendants' Motion for JMOL is a Hail Mary, grasping for any possible relief from the definitive judgment hanging over them following a conclusive trial. In their Motion for a New Trial, Defendants seek to unwind the final determination of a five-year litigation. A new trial would force the Court, parties, attorneys, witnesses, jury and staff to re-convene in order to repeat two weeks of testimony and rehash three hundred exhibits to re-try a case that was properly decided the first time around - to re-try a case that was so lopsided that the jury awarded JBT damages on all of its claims, including punitive damages, and found by clear and convincing evidence Defendants' conduct to be willful and malicious, all while awarding Defendants $0. There is no basis in law, fact or reason to do so. Defendants' Motion to Amend Judgment, which second-guesses the jury's deliberate verdict, is also defective.

## ARGUMENT

### I. RESPONSE TO DEFENDANTS' RULE 50(B) MOTION FOR RENEWED JUDGMENT AS A MATTER OF LAW

Defendants have submitted a renewed motion for judgment as a matter of law arguing that there was not a legally sufficient basis for the jury to find for JBT on its claims for tortious interference with prospective contracts (Motion for JMOL, pg. 7), trade secret misappropriation (pg. 12), the Lanham Act claim for false designation of origin (pg. 13) and breach of contract

(pg. 15).[1] Now with these issues placed again before the Court, pursuant to Rule 50(b) the Court may: (1) allow judgment on the verdict, if the jury returned a verdict; (2) order a new trial; or (3) direct the entry of judgment as a matter of law. Only upholding the jury's verdict is warranted.

Defendants' Rule 50(b) motion threatens to "improperly invade the province of the jury," and a court's "discretion to grant [a Rule 50(b) motion] is limited in several respects." *Sharon Steele Corp. v. Lakeshore, Inc.*, 753 F.2d 851, 853 (10th Cir. 1985) (quoting *Martin v. Unit Rig & Equipment Co.*, 715 F.2d 1434, 1438 (10th Cir.1983)). These limitations include that "the court must view the evidence in the light most favorable to the non-moving party [JBT]." *Id*.; *Jones v. United Parcel Serv.. Inc.*, 674 F.3d 1187, 1195 (10th Cir. 2012). JBT "must be given the benefit of all inferences which the evidence fairly supports, even though contrary inferences might reasonably be drawn." *Sharon Steele*, 753 F.2d at 853. (citation omitted).

Judgment as a matter of law is appropriate "only if the evidence points but one way and is susceptible to ***no reasonable inferences*** which may support the nonmoving party's position." *Stroup v. United Airlines, Inc.*, 26 F.4th 1147, 1156 (10th Cir. 2022) (emphasis added). JBT needs to show little in order to defeat Defendants' Motion: "[t]he quantum of evidence necessary to defeat a JMOL motion is slight, such that justifying the grant of a JMOL motion is difficult in practice." *Stroup*, 26 F.4th at 1156-57; *see also* *Mountain Dudes v. Split Rock Holdings, Inc.*, 946 F.3d 1122, 1130 (10th Cir. 2019) ("Judgment as a matter of law is cautiously and sparingly granted and then only when the court is certain the evidence conclusively favors one party such that reasonable [people] could not arrive at a contrary verdict.") (quoting *Bill Barrett Corp. v. YMC Royalty Co., LP*, 918 F.3d 760, 766 (10th Cir. 2019)) (alteration in *Mountain Dudes*).

---

[1] Defendants made an oral motion for judgment as a matter of law at trial. (Dkt. 257). Defendants' written motion for judgment as a matter of law was filed soon thereafter. (Dkt. 258). The Court took the Defendants' motions under advisement. (Dkt. 257).

### A. There is no basis to upset the jury's liability finding on JBT's claim for tortious interference.

Defendants' Motion does not meet the high bar to justify the disfavored grant of judgment as a matter of law. In attempting to upend the jury's decision, Defendants do not attempt to present evidence of their innocence, but instead argue that JBT failed to present evidence of a specific third-party with whom Defendants maliciously interfered with. (Dkt. 284, p. 9). This argument is belied by the evidence and testimony presented to the jury. The third party contractors involved with the Lemoore P-328, Beaufort P-465 and Kadena P-803 installations were clearly identified in evidence presented to the jury along with testimony regarding Defendants' malicious attempts at deception and manipulation.

- Defendants' Lemoore P-328 submittal package was prepared for and submitted to Able Heating & Air Conditioning. It contained excerpts of JBT's marketing brochures, marketing documents and technical specifications stripped of JBT logos and replaced with BGSE logos. Ptlf. Exs. 008 pp. 28-37; 108, pp. 28-45. Able was the subcontractor to general contractor Soltek Pacific Construction. Trial Trans. 814:19 – 815:4. Due to Defendants' interference, BGSE was awarded the Lemoore P-328 contract with Able. Ptlf. Exs. 62A, 62B, 237; Trial Trans. 526:6-527:19, 819:15-821:1.
- Defendants' Beaufort P-465 submittal package was prepared for and submitted to Carothers Construction. It contained excerpts of JBT's marketing brochures, marketing documents and technical specifications stripped of JBT logos and replaced with BGSE logos. Ptlf. Ex. 010 pp. 5-25. Carothers Construction was the general contractor relating to P-465 Beaufort project. Trial Trans. 503:8-10; 556:15-17. In addition to the doctored submittal, Bullerdick also directly interfered with the Beaufort P-465 award by sending e-mails to Josh Samuels of Carothers Construction attaching the BGSE F-35 spec sheet document containing

misrepresentations regarding the design source of BGSE supplied PC Air products. Ptlf. Exs. 070, 381; Trial Trans. 504:12-23, 507:11-23. Due to Defendants' interference, BGSE was awarded the Beaufort P-465 contract by Carothers. Ptlf. Ex. 215.

- Defendants' Kadena P-803 submittal package was prepared for and submitted to Prime Projects International. It contained excerpts of JBT's marketing brochures, marketing documents and technical specifications stripped of JBT logos and replaced with BGSE logos. Ptlf. Ex. 012 pp. 83-104. Prime Projects International was the general contractor relating to Kadena P-803 project. Trial Trans. 615:18-20. Due to Defendants' interference, BGSE was awarded the Kadena P-803 contract by Prime Projects. Ptlf. Ex. 255.

These were the third-parties presented to the jury, not BGSE as claimed by Defendants. (Motion for JMOL, pg. 9). This evidence is more than adequate to substantiate a jury's reasonable inference that the necessary third-parties were sufficiently identified.

BGSE was a distributor of JBT products. JBT, as the actual manufacturer of the products, always had the ability to pitch and sell its products directly. Trial Trans. 467:18-468:11. JBT was in fact approached by various contractors seeking information and/or pricing quotes for equipment on these projects. Pltf. Exs. 434, 439, 440; Trial Trans. 234:23-235:12; 331:7-333:17. JBT actually declined such opportunities because it thought BGSE was representing its interests. *Id.* Once it learned of Defendants' interference with prior projects, JBT began directly bidding on projects, such as those at Eielson. Trial Trans. 453:16-454:4. In another example of JBT's direct sales, when contractor Lotus Tech was unhappy with BGSE relating to an F-35 project in Korea, Lotus came to JBT and sourced JBT products directly. Defs. Ex. 1090; Trial Trans. 409:4-10; 469:13 – 470:21; 475:11-24. Indeed, part of Defendants' scheme was to use blanket purchase orders to hide the Beaufort and Kadena projects from JBT *precisely* so that JBT would not

directly bid. Pltf. Ex. 122; Trial Trans. 859:13-860:2. This evidence is more than adequate to substantiate a jury's reasonable inference that JBT could have bid on and been awarded these projects.

JBT's lost contracts were not a mere expectation. Prior to 2016, JBT did not have any competitors offering compliant 18-grain PC-air units that could be used in F-35 hangar projects. Pltf. Ex. 007; 098, Trial Trans. 517:16-22; 524:10-525:8. For example, regarding Kadena P-803, Bullerdick admitted in an email to Twist that JBT had the "only unit working for this application." Pltf. Ex. 007; Trial Trans. 624:19–625:21. Bullerdick further testified that there were compliance problems meeting the 18-grain PC-air specification when discussing potential JBT competitors Northern Air, Twist and ITW. Trial Trans. 888:4-889:17. Even when specifically asked at trial, Bullerdick could not confirm that the general contractors relating to the Lemoore, Beaufort and Kadena projects could have purchased compliant and up-to-specification PC-Air products from Twist or FCX. Trial Trans. 524:10-525:8. Rather, Defendants were not able to present any evidence of legitimate alternatives. What's more, JBT was established as the basis of design for Lemoore P-328 (Pltf.'s Ex. 336; Trial Trans. 516:6-13; 824:6-13), Beaufort (Pltf.'s Ex. 429A) and Kadena (*Id.*). Therefore, had Defendants not maliciously interfered, it is reasonable to conclude that the contractors could have and would have purchased directly from JBT because there was no other provider of the equipment specified for these military projects. Trial Trans. 743:20-744:2. This evidence is more than adequate to substantiate a jury's reasonable inference that JBT had more than a mere expectation that it would have won these projects.

In this way, Defendants' reliance on *Beverage Systems of the Carolinas, LLC v. Associated Beverage Repairs, LLC* (368 N.C. 693 (2016)) is inapposite. (Motion for JMOL, p.

10). Where the *Beverage Systems* plaintiff had presented no evidence or explanation why the third-parties would have contracted with the plaintiff but for the defendant's interference (368 N.C. at 701-02), the jury in this case was presented with a clear explanation why the Lemoore, Kadena and Beaufort contractors would have directly purchased from JBT if not for Defendants' interference - namely, because JBT had the only products on the market that met the projects' tough specifications. Further, the jury was clearly informed of the specific customers with whom Defendants interfered and were further presented with evidence and testimony of JBT's reasonable expectation of selling directly to those customers but for Defendants' interference.

Further, even if it had not done so, JBT was not required to have presented evidence of a specific contractual opportunity to support its claim of tortious interference. *Velocity Solutions, Inc. v. BSG Fin*., 2016 NCBC LEXIS 19, *13 (N.C. Super. Ct. 2016) ("[T]he North Carolina Supreme Court has rejected the notion that a claim for tortious interference with prospective economic advantage requires evidence of a specific contractual opportunity . . . .") (citing *Owens v. Pepsi Cola Bottling Co. of Hickory, N.C., Inc*., 330 N.C. 666, 680-81 (1992) and *Coleman v. Whisnant*, 225 N.C. 494, 506 (1945)); *Owens*, 330 N.C. at 680-81 (reversing the court of appeals' holding that there was insufficient evidence to support a tortious-interference claim on summary judgment where the plaintiff failed to show that any contracts were disrupted); *Coleman*, 225 N.C at 506 (holding that a claim for tortious interference with prospective economic advantage may be based on conduct that prevents the making of contracts). It is persuasive that North Carolina law recognizes that "[w]here Plaintiff's economic advantage exists in the form of an exclusive sales territory . . . Plaintiff may need only to demonstrate that others in its territory purchased the same good from an infringing party." *Bassett Seamless Guttering, Inc. v. GutterGuard, LLC*, 501 F. Supp. 2d 738, 744 (M.D.N.C. 2007) (citing *Nat'l*

*Micrographics Sys., Inc. v. OCE-Indus., Inc.*, 55 Md. App. 526, 538 (1983)); *see also Nat'l Micrographics Sys.*, 55 Md. App. at 538) ("[I]t is no defense to say that the plaintiff, who had an exclusive territory under the contract, would not have made the sales where the producer of a good has an exclusive sales territory."). While JBT did not possess an exclusive sales territory via contract with Defendants, the rationale underlying North Carolina's recognition of economic advantage in such circumstances fits squarely with the circumstances here. If there are no other potential suppliers (whether based on an exclusive contract or practically by having the only product that meets a government-approved specification), a plaintiff's expectancy is not illusory. *Comput. Design & Integration, LLC v. Brown*, 2018 NCBC LEXIS 216, *58 (denying summary judgment to defendants where the plaintiff had shown evidence that it had the prospective customers "in their business pipeline" and defendant had obtained the same work from the prospective customers as plaintiff performed).

**B. There is no basis to upset the jury's liability finding and award of damages on JBT's claim for trade secret misappropriation.**

As a preliminary matter, Defendants did not raise the argument that JBT's HPCF Manual did not constitute a trade secret as a matter of law or argue that the question regarding the same should have been presented to the jury in its Rule 50(a) motion. (Dkt. 258). Therefore, this argument is waived and cannot be asserted now. *Perez v. El Tequila, LLC*, 847 F.3d 1247, 1255 (10th Cir. 2017) ("Arguments presented in a Rule 50(b) motion cannot be considered if not initially asserted in a Rule 50(a) motion.").

Notwithstanding the waiver, Defendants have not presented a foundation for the Court to re-examine its prior determination on summary judgment that JBT's HPCF Manual qualified as a trade secret. (Dkt. 184, pg. 29). Defendants' argument that there is a potential overlap between the FCX Manual and the JBT HPCF Manual is unavailing. (Motion for JMOL, pg. 12). As

testified to at trial, the potential overlap extended only to "refrigeration 101 type things." Trial Trans. 712:21. Defendants have not explained why this endangers the HPCF Manual's status as a trade secret. Nor could they. As was made clear from the testimony (*e.g.*, Trial Trans. 727:16-728:1), at least part of the economic value of JBT's HPCF Manual was the jump start it would give a competitor to achieve the specific required humidity at the required airflow, pressure and temperature required by the F-35 aircraft. Trial Trans. 179:18-181:4; 189:23-194:14. There is no foundation for the conclusion that the "substantial portions" of the FCX PCA Manual contain this valuable information or other materially significant portions of information from JBT's HPCF Manual, as Defendants imply.

Defendants' complaint that there is allegedly no comparison between Twist products and JBT trade secrets is a tired rehash of its summary judgment argument. Nothing new is asserted now. There is ample evidence that Defendants divulged JBT trade secrets to Twist for the explicit and specific purpose of giving Twist an advantage in improving its products and documentation to make them more like JBT's. *See, e.g.,* Pltf. Exs. 096, 097, 100, 246 and 511. At the very least, there is sufficient support for the jury's reasonable inference that Defendants misappropriated JBT trade secrets. Further, JBT's damages expert David Duski testified at trial regarding damages suffered by JBT and ill-gotten gains enjoyed by Defendants as a result of Defendants' trade secret misappropriation. *See* Trial Trans. 896:1-970:25. Therefore, there is ample basis to support the jury's award of damages. Indeed, the jury's award of damages tracked the amount put forth by Defendants' own damages expert. (Dkt. 262).

### C. There is no basis to upset the jury's liability finding and award of damages on JBT's claim for false designation of origin.

Even taking Defendants' statement at face value that JBT did not introduce evidence concerning "most" of the false designation factors, their complaint appears limited to actions not

previously considered by the Court on summary judgment as there is no question as to Defendants' liability on this claim based upon the summary judgment evidence. Taking JBT's liability theory as a whole, it is incontrovertible that the jury was presented with numerous examples of Defendants stripping JBT logos from pictures and schematics relating to JBT products (*see, e.g.*, Pltf. Exs. 018, 019B, 022B, 037B, 038B) and replacing them with BGSE logos in BGSE marketing materials, communications with contractors and in government bid submissions (*see, e.g.,* Pltf. Exs. 008 pp. 28-37; 010, pp. 5-25; 012, pp. 83-104; 014 pp. 29-48; 064; 070; 079; 089A; 108, pp. 28-45; 179; 272, pp. 21-31, 60-64; 326, pp. 26-49; 340; 381, pp. 21-31; and 391C, pp. 6-9). These acts were willfully and intentionally undertaken by Defendants (Dkt. 262) and with regard to similar products and through similar means. And there was clear evidence of confusion presented to the jury. Defendants' false designation of origin resulted in general contractors (*e.g.*, Able, Carothers and Prime) awarding BGSE contracts believing that the proposed equipment possessed important qualities that it did not have and resulted in false certifications to the government. *See, e.g.,* Ptlf. Ex. 62A; Trial Trans. 819:15-820. 17; Ptlf. Ex. 62B; Trial Trans. 820:18-821:1.

The fact that the jury awarded a single sum to JBT based upon both liability found on summary judgment and "new" evidence presented trial is no basis to upset the jury's decision. *Mid-West Underground Storage, Inc. v. Porter*, 717 F.2d 493, 501 (10th Cir. 1983) (describing the "sanctity of jury verdicts"; "[i]t is well settled that a verdict will not be upset on the basis of speculation as to the manner in which the jurors arrived at it."); *WinCo Foods, LLC v. Crossland Constr. Co.*, Nos. 20-6043, 20-6108, 2022 U.S. App. LEXIS 12533, at *21 (unpublished) (10th Cir. May 10, 2022) ("It is not for us to speculate as to the reasoning behind a general jury verdict") (citing *Union Pac. R. Co. v. Lumbert*, 401 F.2d 699, 701-02 (10th Cir. 1968)); *Hotel*

*Assocs. v. Holiday Inns*, 152 F.R.D. 206, 213 (D. Utah 1993) (When a court is faced with a choice of a proper jury verdict and a possible instance of jury confusion, the court is not free to "exercise [its] own judgment as to the most plausible.") (citing *Mid-West Underground Storage*, 717 F.2d at 501).

At any rate, all of the exhibits referenced by Defendants in their Motion for JMOL (pgs. 14-15) clearly support the jury's liability and damage award:

- Pltf. Ex. 079 is an email in which BGSE sent the "F35 Final Spec Sheet" to a contractor (Coffman), which contains altered excerpts of original JBT documents with JBT identifying information removed and replaced with BGSE's (*see* pp. 10-19 (from JBT's 270VDC General Specifications (Pltf. Ex. 35D)); pp. 21-46 (from JBT's Jetaire HPCF O&M Manual (Pltf. Ex. 18, pp. 11-36)); pp. 59-60 (from JBT's 30-Ton HPCF Justifications (Pltf. Ex. 037B); pp. 61-65 (from JBT's 30-Ton HPCF Calculations (Ex. 38B));
- Pltf. Ex. 510A is an email to a contractor (Mortenson), which contains images of JBT products with BGSE labels superimposed upon them (Pltf. Ex. 510B);
- Page 6 of Pltf. Ex. 391C contains an image of a JBT product which Bullerdick admitted at trial was photoshopped to depict a BGSE logo. Trial Trans. 659:6-660:10; and
- Pltf. Ex. 326 similarly contains photos of JBT products doctored to look like they originated from BGSE. Trial Trans. 656:4-656:25.

All this is evidence that Defendants intentionally camouflaged JBT goods as identical BGSE products in an effort to mislead the recipients. This supports a jury's reasonable inference that Defendants are liable for false designation of origin.

Even if JBT had not presented any evidence of actual confusion, lack of evidence of actual confusion is not a "fatal flaw." *Universal Furniture Int'l, Inc. v. Collezione Europa USA,*

*Inc.*, 618 F.3d 417, 438 (4th Cir. 2010) (reciting the elements for a reverse passing off claim to include: "3) that the false designation of origin was *likely to cause* consumer confusion") (emphasis added); *Hartford House, Ltd. v. Hallmark Cards, Inc.*, 647 F. Supp. 1533, 1544 (D. Colo. 1986) ("[P]roof of actual confusion is not required to justify either preliminary or permanent relief under the Lanham Act."). However, Defendants' actions were not only *likely* to cause confusion, they were done *precisely* to cause confusion. Defendants' scheme gave BGSE the credibility to introduce new suppliers to the market and eventually create an unfair playing field when JBT sought to directly sell into the market for F-35 hangar projects.

While the Court recognized the potential sophistication of the relevant contractors in its summary judgment order, there is evidence that at least some were fooled into accepting Defendants' false designations and resulted in false certifications to the government. *See supra*, pg. 9. Further, the ability for these buyers to exercise any amount of discernment was diminished by the normal bid submission process for these F-35 projects, which forces contractors to rely on bidders for information and representations regarding the products being submitted for review. Taken together, there is sufficient support for the jury's reasonable inference that Defendants engaged in false designation of origin.

Finally, the jury's verdict on damages has clear support in the trial record. JBT's damages expert testified at trial regarding damages suffered by JBT and ill-gotten gains enjoyed by Defendants as a result of Defendants' false designation of origin. *See* Trial Trans. 896:1 - 970:25. Therefore, there is ample basis to support the jury's award of damages. Indeed, the jury's award of damages tracked the amount put forth by Defendants' own damages expert. (Dkt. 262).

### D. There is no basis to upset the jury's liability finding and award of damages on JBT's claims for breach of contract.

Similar to Defendants' position as discussed in Section I(B) *supra*, Defendants have not attempted to describe a specific legal or factual basis for why overlapping depictions of "refrigeration 101 type things" (Trial Trans. 712:21) between the JBT HPCF Manual and the FCX PCA Manual render the entire JBT HPCF Manual no longer confidential. The JBT HPCF Manual was determined to be a protected trade secret containing confidential information by the Court on summary judgment (Dkt. 184, pgs. 29, 54). This determination is adequately supported by trial testimony. Trial Trans. 175:18-176:23, 179:18-181:4, 189:23-194:14. Bullerdick himself labeled communications containing the JBT HPCF Manual as "confidential." Ptlf. Ex. 096; Trial Trans. 533:5-11. Trial evidence abounds with examples of Defendants disclosing JBT confidential materials to competitors and altering JBT documents in direct violation of the 2011 Confidentiality Agreement as well as failing to return JBT's material and engaging in extensive unauthorized use of JBT's material for their own benefit in violation of the 2011 NDA and the 2012 Distributorship Agreement.

Defendants' other complaints are easily disposed of. Defendants point to a single example of JBT distributing its 30-ton PC-Air manual to Scott Dils as its sole example of JBT "undisputedly failing" to protect its own confidential information. Defs. Ex. 1873; Motion for JMOL, pgs. 16-17. Notwithstanding the fact that the 30-ton PC-Air manual bears JBT's standard confidentiality disclaimers and stamps (*see* Defs. Ex. 1873 pgs. 5 and 10) and was being provided to a distributor that was supposed to be acting in good faith to distribute the manual to JBT's customers (which is the manual's intended purpose (Trial Trans. 187:9-16)), the 30-ton PC-Air manual was not even the 18-grain JBT HPCF Manual primarily at issue in this case. *Compare* Defs. Ex. 1873 v. Pltf. Ex. No. 019B. Even if this disclosure were relevant, this event

is not enough to disrupt the jury's findings on these claims. Defendants' additional argument that BGSE used JBT confidential information to promote JBT power equipment for the Kadena P-803 project (a defense already raised and defeated on summary judgment (Dkt. 184, pgs. 54-55)) does nothing to absolve Defendants of their clear breaches. Finally, JBT's decision to not introduce some exhibits supporting one possible theory relating to Defendants' improper use of JBT confidential information (Motion for JMOL, pg. 17) similarly does nothing to eclipse the voluminous breaches presented to the jury. Therefore, there is ample support for a jury's reasonable inference that Defendants breached their respective contracts with JBT.

## II. RESPONSE TO DEFENDANTS' RULE 59 MOTION FOR NEW TRIAL

Defendants have requested a new trial under Rule 59(a)[2] on the grounds that the Court incorrectly applied the *Dastar* and *Universal Furniture* decisions in the context of JBT's false designation of origin claim on summary judgment, thus poisoning the trial. (Motion for New Trial, Dkt. 284, pg. 17). While the grounds for granting a new trial are potentially broad under Rule 59(a), an alleged error of law by the Court more than two years before trial on summary judgment is not one of them. *Allianz Life Ins. Co. of N. Am. v. Muse*, No. CIV-17-1361-G, 2020 U.S. Dist. LEXIS 199020, at *17 (W.D. Okla. Oct. 26, 2020) (unpublished) (stating that Rule 59(a)(2) is not a proper vehicle to revisit a ruling of law made on summary judgment that was not subject to the bench trial); *Goldberg v. 401 N. Wabash Venture LLC*, No. 09 C 6455, 2013 U.S. Dist. LEXIS 119963, at *68 (N.D. Ill. Aug. 23, 2013) (unpublished) ("Rule 59(a) is not the appropriate mechanism for addressing a summary judgment ruling"); *Wilson v. Jean*, No. 15-1793, 2016 U.S. Dist. LEXIS 11270, at *22 (E.D. Pa. Feb. 1, 2016) (unpublished) ("We are not

---

[2] Defendant only generally cite "Rule 59" as the basis of their motion. JBT assumes that Defendants are moving under Rule 59(a) since Defendants are requesting a "New Trial" and are separately moving to "Alter Or Amend The Judgment" (presumably, under Rule 59(e)) later in the Motion (*see* Motion to Amend Judgment, pg. 20).

convinced [a] motion under Rule 59(a) based on a pre-trial ruling is grounds for a new trial."). Even if construed to apply to the trial, there is no basis for a new trial in light of the overwhelming evidence in favor of Defendants' culpability. *See* *Ryan Dev. Co. v. Indiana Lumbermens Mut. Ins. Co.*, 711 F.3d 1165, 1172 (10th Cir. 2013) (A Rule 59(a) motion based on the sufficiency of the evidence is granted only where "the verdict is clearly, decidedly, or overwhelmingly against the weight of the evidence."); *Klein-Becker USA, LLC v. Englert*, 2:06-CV-378 TS, 2011 U.S. Dist. LEXIS 103435 (D. Utah Sept. 13, 2011) (unpublished) *aff'd*, 711 F.3d 1153 (10th Cir. 2013) (internal quotations omitted) ("Motions for a new trial are generally disfavored, and should only be granted with great caution.").

However, even if Defendants' Motion for New Trial was analyzed under Rule 59(e), it would still fail for two independent reasons. *Parks v. At&T Mobility, LLC*, No. CIV-09-212-D, 2013 U.S. Dist. LEXIS 34174, at *4 (W.D. Okla. Mar. 11, 2013) (unpublished) ("Plaintiff refers to her Motion as one seeking a new trial under Rule 59(a). However, a motion for reconsideration of a summary judgment ruling is governed by Rule 59(e), which authorizes a motion to alter or amend a judgment. 'The purpose for such a motion is to correct manifest errors of law or to present newly discovered evidence.'") (quoting *Committee for First Amendment v. Campbell*, 962 F.2d 1517, 1523 (10th Cir. 1992)).

First, it is not timely. Defendants are asking the Court to reconsider its ruling on summary judgment. Considering that the Court handed down its summary judgment order over 850 days ago on August 13, 2020, Defendants are well outside the 28-day limit imposed by Rule 59(e).[3] *Banister v. Davis*, 140 S.Ct. 1698, 1702 (2020) ("Rule 59(e) allows a litigant to file a

[3] Defendants have not moved for reconsideration under Rule 60(b), but to the extent the Court decides to treat Defendants' untimely Rule 59 motion as a Rule 60(b) motion, it would also fail. Rule 60(b) authorizes the court to grant relief from an order or a judgment on a number of

motion to alter or amend a judgment. The time for doing so is short—28 days from entry of the judgment, with no possibility of an extension. *See* Fed. Rule Civ. Proc. 6(b)(2). The Rule gives a district court the chance to rectify its own mistakes in the period immediately following its decision."); *Fox*, 1999 U.S. App. LEXIS 26576, at *12 (affirming district court's refusal to reconsider the merits of its summary judgment ruling when the movant's Rule 59(e) motion was untimely filed).

Second, even if timely, Defendants have not cited any recognized grounds for this Court to reconsider its ruling. Grounds warranting a motion to reconsider include (1) an intervening change in the controlling law, (2) new evidence previously unavailable, and (3) the need to correct clear error or prevent manifest injustice. *Servants Of The Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000). In their Motion, Defendants do not cite any cases that materially re-interpreted *Dastar*. (Motion for New Trial, pg. 18). Instead, Defendants merely allege that the Court erroneously relied on *Universal Furniture* in its holding. The only case cited by Defendants, *Blades of Green, Inc. v. Go Green Lawn & Pest, LLC*, (No. SAG-22-00176, 2022 U.S. Dist. LEXIS 70649 (D. Md. Apr. 18, 2022) (unpublished)), which Defendants themselves admit is "not dispositive," is also not alleged to be an "intervening change in the controlling law." (*See* Motion for New Trial, pg. 19). Rather, Defendants merely argue that *Blades of Green* is a better analogy to Defendants' conduct than *Universal Furniture* because "JBT did not show . . . that the actual goods provided to customers by BGSE were in fact produced by JBT."

---

specific grounds, including inadvertence, excusable neglect, fraud, and newly discovered evidence. None are present with regard to the summary judgment order. *Fox v. Noram Energy Corp.*, No. 98-6141, 1999 U.S. App. LEXIS 26576, at *13 (10th Cir. Oct. 21, 1999) ("Relief under Rule 60(b) is extraordinary and may only be granted in exceptional circumstances.") (quoting *Bud Brooks Trucking, Inc. v. Bill Hodges Trucking Co.*, 909 F.2d 1437, 1440 (10th Cir. 1990)).

(*Id.*). This is the same argument that Defendants put forth in their response to JBT's motion for partial summary judgment and that was disposed of by the Court. (Dkt. 147, pg. 17-20, Dkt. 184, pgs. 34-38). This is fatal to a Rule 59(e) motion. *Exxon Shipping Co. v. Baker*, 554 U.S. 471, 486 n.5 (2008) (Rule 59(e) motions "may not be used to relitigate old matters, or to raise arguments or present evidence that could have been raised prior to the entry of judgment"); *Van Skiver v. U.S.*, 952 F.2d 1241, 1243 (10th Cir. 1991) ("[R]evisiting the issues already addressed is not the purpose of a motion to reconsider, and advancing new arguments or supporting facts which were otherwise available for presentation when the original summary judgment motion was briefed is likewise inappropriate.") (citation omitted); *Chidester v. Astrue*, 2:08-cv-00572-BCW, 2010 U.S. Dist. LEXIS 41618, at * 2 (D. Utah Apr. 28, 2010) (unpublished) ("Courts routinely deny Rule 59(e) motions in which the movant rehashes old arguments, attempts to re-argue an issue more persuasively that the court has already addressed, or where a movant tries to take the proverbial second bite at the apple."); *RMA Ventures Cal. v. Sunamerica Life Ins*. Co., No. 2:03-CV-740 TS, 2008 U.S. Dist. LEXIS 118952, at *2 (D. Utah Jan. 18, 2008) (unpublished) (denying Rule 59(e) motion where "Plaintiff does not cite any new law or evidence previously unavailable. Rather, Plaintiff rehashes arguments made in the original summary judgment filings.").

Finally, the argument that the jury "might have" imposed liability twice for the same conduct misinterprets JBT's theories on liability. (Motion for New Trial, pgs. 19-20). At trial, JBT presented evidence that Defendants improperly used JBT's HPCF Manual in separate instances relating to new projects at the same job sites previously at issue on summary judgment. This trial evidence showed that Defendants' success on these additional projects was derived from Defendants' improper involvement on the first project at that site. *See* Pltf. Exs. 079 and 393A. Even if somehow amounting to "double liability," there is no basis for granting a new trial

because the amount the jury awarded matches to the dollar Defendants' own expert's calculation of Defendants' total unjust profits of $525,033 (excluding the punitive and enhanced awards) (Dkt. 262). Therefore, for these reasons, Defendants' Motion for New Trial fails.[4]

## III. RESPONSE TO DEFENDANTS' MOTION TO ALTER OR AMEND THE JUDGMENT

Defendants have moved to alter or amend the judgment[5] based upon the theory that the judgment functions to impose joint and several liability when the jury did not intend to do so. ("Motion to Amend Judgment", Dkt. 284, pg. 20). First and foremost, the verdict is clear on its face that the jury *did in fact* intend for both BGSE and Bullerdick to be liable for the full award on JBT's claims for trade secret misappropriation, false designation of origin and breach of contract. The jury's award of a single dollar amount ($323,256) for all these claims is an obvious indication that the jury wished for both Defendants to be responsible for making JBT whole. Defendants' nitpicking and dissatisfaction with the jury's approach is no reason to upset the verdict. *Supra*, pgs. 9-10.

Second, to the extent that Defendants' argument is tantamount to assigning as errors the jury instructions and the verdict form, this argument is waived because Defendants did not object to the jury instructions[6] or verdict form on this ground at trial. *Bell v. Mickelsen*, 710 F.2d 611, 616 (10th Cir. 1983) ("No party may assign as error the giving or the failure to give an instruction unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects and the grounds of his objection . . The requirement that the trial court be given an opportunity to analyze and correct an alleged error is equally

---

[4] Defendants did not present any new evidence to support its Rule 59 motion.
[5] Presumably under Rule 59(e).
[6] The parties did discuss and clarify for the jury that the award of *punitive* damages should be against each Defendant separately. Trial Trans. 1139:14-1140:21. This discussion did not extend to the jury's award of compensatory damages to JBT, however.

applicable to special verdicts submitted under Rule 49(a)"); *Corriz v. Naranjo*, 667 F.2d 892, 896 (10th Cir. 1981) (citing *Taylor v. Denver & Rio Grande Western Railroad*, 438 F.2d 351, 353 (10th Cir. 1971) ("The purpose of Rule 51 is to prevent a litigant from taking advantage of an error which could be rectified by the court if called to its attention by timely and specific objection."); *Skillin v. Kimball*, 643 F.2d 19 (1st Cir. 1981) (failure to raise alleged inconsistencies in jury's responses to special jury questions before the jury is dismissed precludes their consideration on appeal). In any event, a Rule 59(e) motion to alter or amend the judgment should be granted only "to correct manifest errors of law or to present newly discovered evidence." *Phelps v. Hamilton*, 122 F.3d 1309, 1324 (10th Cir. 1997). As described above, Defendants devote most of the Motion to Amend Judgment to speculating about what the jury should have or could have done with regard to apportioning the award of damages. They do not argue that the award was based upon an error of law and they have presented no newly-discovered evidence. Therefore, there is no basis to amend the judgment. The jury's award was reasonable and well supported by the testimony offered at trial. Defendants' expert, Mr. Harris, testified that the amount of Defendants' profits was $525,033 while JBT's expert, Mr. Duski, testified that the amount was $1,648,153. The sum total amount the jury awarded on all of JBT's claims matches to the dollar Defendants' expert's calculation of Defendants' total unjust profits, of $525,033 (excluding the jury's punitive awards). (Dkt. 262).

Even if arguments had been made regarding errors of law, they would fail. Defendants were held liable together for JBT's claims of trade secret misappropriation (*see* Motion to Amend Judgment, pg. 21) and are therefore joint tortfeasors. *Multimedia Games, Inc. v. WLGC Acquisition Corp.*, 214 F. Supp. 2d 1131, 1142-43 (N.D. Okla. 2001) ("The claim of misappropriation of trade secrets and confidential information essentially sound in tort . . .

Likewise, the additional claim for relief concerning unfair competition are considered [tortious] actions regardless of whether the allegedly misused property was a trade secret . . . Thus, because the claims of relief sound in tort, the co-defendants are considered joint tortfeasors."); *see also* *ClearOne Communs., Inc. v. Biamp Sys.*, 653 F.3d 1163, 1187 (10th Cir. 2011) (remanding an aggregated jury award against two defendants for trade secret misappropriation with directions to enter judgment as a single award for which the defendants were jointly and severally liable).

The jury holding Defendants jointly and severally liable for JBT's false designation claim is not an error of law either. Under the Lanham Act, Bullerdick as an officer of BGSE, and the driving participant in BGSE's false designation of origin, can be held personally, jointly and severally liable along with BGSE. *Donsco, Inc. v. Casper Corp.*, 587 F.2d 602, 606 (3rd Cir. 1978) ("A corporate officer is individually liable for the torts he personally commits and cannot shield himself behind a corporation when he is an actual participant in the tort"); *Hair Assocs., Inc. v. National Hair Replacement Servs., Inc.*, 987 F. Supp. 569, 590-91 (W.D. Mich. 1997) ("[A] corporate officer's active participation in infringing activity is sufficient to subject him or her to joint and several liability for trademark infringement with the corporation."); *Bambu Sales, Inc. v. Sultana Crackers, Inc.*, 683 F. Supp. 899, 913 (E.D.N.Y. 1988) ("[P]ersonal liability for trademark infringement and unfair competition is established if the officer is a moving, active conscious force behind [the defendant corporation's] infringement."). The jury decided to award JBT damages as a single, non-aggregated amount against BGSE and Bullerdick together. Trial Trans. 1121:18-1122:22. This approach is consistent with the jury instructions and the verdict form. The jury was instructed to consider the liability of each of the Defendants separately (Dkt. 266, Jury Instruction No. 3) and presumably did so. The related jury instructions

and verdict form were not objected to by Defendants and were not an error of law or manifest injustice. The verdict should not now be re-done as Defendants request.

Finally, both Defendants have been found liable for their breaches of their own respective contracts with JBT relating to their misuse of JBT's confidential information. The jury was given the opportunity to apportion damages for each specific breach of contract claim (and thus against each Defendant individually) and deliberately chose not to do so, awarding the same amount for each specific breach. This determination by the jury was similarly not objected to at trial. The jury's determination that BGSE and Bullerdick both be responsible for making JBT whole for these breaches is certainly not "manifest injustice." Therefore, for these reasons, Defendants' Motion to Amend Judgment fails.

## IV. CONCLUSION

Based on the foregoing, Defendants' Motion for JMOL, Motion for New Trial and Motion to Amend Judgment should be dismissed completely and in their entirety.

Dated: December 27, 2022

Respectfully submitted by:

/s/*Matthew T. Hays*

David P. Billings
Robert G. Crockett
FABIAN VANCOTT

Harry N. Arger
Steven McMahon Zeller
Matthew T. Hays
DYKEMA GOSSETT PLLC

*Counsel for Plaintiff-Counterdefendant*

**CERTIFICATE OF SERVICE**

I hereby certify that on December 27, 2022, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification to all counsel of record in the system.

/s/*Matthew T. Hays*
Matthew T. Hays