## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH

| | |
|---|---|
| JOHN BEAN TECHNOLOGIES CORPORATION, a Delaware corporation, Plaintiff, v. B GSE GROUP, LLC, a North Carolina limited liability company, and BRYAN BULLERDICK, an individual, Defendants. | **MEMORANDUM DECISION AND ORDER** Case No. 1:17-cv-00142-RJS Chief Judge Robert J. Shelby |

After a jury returned unanimous verdicts in favor of Plaintiff John Bean Technologies Corporation (JBT),[1] the court entered Judgment against Defendants B GSE Group, LLC (BGSE) and Bryan Bullerdick on November 1, 2022.[2] Defendants then moved for relief from judgment under Federal Rules of Civil Procedure 50(b) and 59.[3] Additionally, Defendants moved to stay execution of the Judgment and reduce, or completely dispense with, the usual supersedeas bond requirement.[4] For the reasons discussed below, Defendants' Motions are DENIED.

## BACKGROUND AND PROCEDURAL HISTORY

This action arises out of a business dispute between two defense contractors who worked together to manufacture, sell, and distribute ground support equipment for F-35 military aircraft.[5]

---

[1] Dkt. 262; Dkt. 263.

[2] Dkt. 273, *Judgment on the Jury Verdicts*.

[3] Dkt. 284.

[4] Dkt. 290.

[5] *See* Dkt. 99, *First Amended Complaint* (*Amended Complaint*) ¶¶ 1–15; Dkt. 185, *Memorandum Decision and Order* (*Summary Judgment Order*) at 1–3 (published as *John Bean Techs. Corp. v. B GSE Grp., LLC*, 480 F. Supp. 3d 1274 (D. Utah 2020)).

While JBT designed and manufactured the ground support equipment, BGSE—under the leadership and majority ownership of a former JBT employee, Bullerdick—acted as JBT's designated distributor and later as an equipment reseller.[6]  But the parties' relationship deteriorated after JBT discovered Defendants were misrepresenting BGSE's capabilities and using JBT's confidential information to undermine its competitive position.[7]

In particular, JBT learned that Bullerdick was misrepresenting BGSE's manufacturing capabilities to various defense contractors and subcontractors, falsely asserting that BGSE had designed some of JBT's products and could source them without JBT's manufacturing.[8] Additionally, Defendants were using JBT's technical and marketing materials to submit competitive bids on various F-35 projects, even superimposing BGSE's logo over JBT's.[9] During the same period, Bullerdick also transmitted JBT's confidential information to one of its competitors, Twist, Inc.[10]  BGSE later began directly competing against JBT on F-35 projects by supplying products manufactured by Twist and other JBT competitors.[11]

After learning of Defendants' conduct, JBT filed this action.  As relevant here, JBT asserted claims for tortious interference, misappropriation of trade secrets under Utah and federal law, unfair competition and trademark violations under the Lanham Act, and breach of

---

[6] *Amended Complaint* ¶¶ 8–9; *Summary Judgment Order* at 1–2, 4–7.

[7] *Amended Complaint* ¶¶ 11–13; *Summary Judgment Order* at 2, 8–15.

[8] *Amended Complaint* ¶¶ 11, 67–72; *Summary Judgment Order* at 2, 12–15.

[9] *Amended Complaint* ¶¶ 12–13; *Summary Judgment Order* at 8–15.

[10] *Amended Complaint* ¶¶ 13, 49, 58–61; *Summary Judgment Order* at 2, 12.

[11] *Summary Judgment Order* at 2.

contract.[12]  Defendants asserted several counterclaims centered on JBT's conduct after it filed

suit, including claims for tortious interference, negligent misrepresentation, and defamation.[13]

On August 13, 2020, the court granted summary judgment in favor of JBT on its claims

for misappropriation of trade secrets under Utah and federal law, violations of the Lanham Act

for false designation of origin, and breach of contract.[14]  However, the court concluded JBT was

not entitled to summary judgment on its claims for trademark infringement or tortious

interference.[15]  Turning to the counterclaims, only Defendants' claim for unfair and deceptive

trade practice under North Carolina law survived, while the rest of Defendants' counterclaims

were dismissed as a matter of law.[16]

On July 6, 2021, the parties submitted a Joint Status Report listing the issues remaining

for trial: (1) a damages award for JBT's successful claims at summary judgment; (2)

determination of liability and damages on JBT's claims for tortious interference and trademark

infringement; and (3) determination of liability and damages on Defendants' counterclaim for

unfair or deceptive trade practices.[17]  After the parties' pre-trial motions were resolved, the court

held a six-day jury trial from September 29–October 6, 2022, during which both parties moved

for judgment as a matter of law pursuant to Rule 50(a).[18]

---

[12] *See generally* Dkt. 2, *Complaint*; *Amended Complaint*.

[13] *See generally* Dkt. 49, *Defendants' Amended Answer and Counterclaims*; Dkt. 108, *Defendants' Answer to First Amended Complaint and Counterclaims*.

[14] *See Summary Judgment Order* at 19–31, 31–41, 53–61.

[15] *See id.* at 48–52, 64–66.

[16] *See id.* at 67–77.

[17] Dkt. 199 at 2–3.

[18] *See* Dkt. 257, *Minute Entry for Proceedings Held on October 5, 2023*; Dkt. 258, *Defendants' Motion for Judgment as a Matter of Law*; Dkt. 259, *JBT's Motion for Judgment as a Matter of Law*.

After deliberating for two days, the jury awarded JBT $323,256 in combined damages on the claims won at summary judgment—misappropriation of trade secrets under Utah and federal law, false designation of origin, and breach of contract.[19]  Additionally, the jury found for JBT on its tortious interference claims, assessing damages of $96,664, $43,181, and $61,932 with respect to three F-35 projects, resulting in a total damages award of $525,033.[20]  The jury awarded Defendants nothing on their counterclaim for unfair or deceptive trade practices under North Carolina law.[21]  Finally, in a separate verdict, the jury found that punitive damages were warranted on JBT's claim for tortious interference, imposing $500,000 against BGSE and $100,000 against Bullerdick.[22]

Following entry of the jury verdicts, Defendants challenged JBT's Proposed Judgment[23] for, among other things, improperly including post-judgment interest and taxable costs when there remained outstanding questions concerning attorneys' fees and exemplary damages.[24] However, the court overruled Defendants' objections and entered Judgment substantially in the form proposed by JBT.[25]  The Judgment confirmed that Defendants are jointly and severally liable for the $525,033 damages award and individually liable for the relevant punitive damages assessed against them.[26]

---

[19] Dkt. 262 at 2–5; *see also* Dkt. 263 (reflecting the jury's verdict on punitive damages).

[20] Dkt. 262 at 6–7.

[21] *Id.* at 8.

[22] Dkt. 263 at 2.

[23] *See* Dkt. 270-1, *Exhibit 1 to Defendants' Objections to Proposed Judgment: JBT's Proposed Judgment.*

[24] Dkt. 270, *Defendants' Objections to Proposed Judgment* at 2–4.

[25] *See* Dkt. 273, *Judgment on the Jury Verdicts*; *see also* Dkt. 272, *Docket Text Order Overruling Defendants' Objections to Proposed Judgment.*

[26] Dkt. 273.

Over the following weeks, the parties filed seven post-trial motions, including the two instant Motions.[27]  Then, on January 9, 2023, BGSE filed a Notice of Bankruptcy Filing and Automatic Stay, effectively pausing these post-trial proceedings.[28]  The following month, the United States Bankruptcy Court for the Western District of North Carolina granted JBT's request for limited relief from the automatic stay, thereby allowing this court to resolve the parties' pending post-trial motions.[29]  Having fully reviewed the parties' briefing[30] and finding that oral argument would not be materially helpful,[31] the court is now prepared to rule on the instant Motions.

## ANALYSIS

As prefaced above, Defendants primarily move for renewed judgment as a matter of law pursuant to Rule 50(b).  In the alternative, they move for a new trial or to alter or amend the judgment pursuant to Rule 59.  Finally, Defendants seek to stay execution of the Judgment, while requesting the court dispense with, or lower, the usual supersedeas bond requirement.  The court will address each request individually, starting with the governing legal standard before

---

[27] *See* Dkt. 278, *JBT's Motion for Attorneys' Fees and Nontaxable Expenses*; Dkt. 284; Dkt. 285, *JBT's Motion for Enhanced Damages*; Dkt. 286, *JBT's Motion for Pre- and Post-Judgment Interest*; Dkt. 290; Dkt. 295, *JBT's Motion for Leave to Register Judgment in Other Districts*.

[28] Dkt. 308 at 1 (citing 11 U.S.C. § 362 of the Bankruptcy Code).

[29] *See* Dkt. 322, *JBT's Notice of Bankruptcy Court Order Granting Limited Relief from Stay*; Dkt. 322-1, *Exhibit A: Order Granting Limited Relief from Stay*.

[30] *See, e.g.*, Dkt. 284; Dkt. 303, *JBT's Response to Defendants' Motion*; Dkt. 311, *Defendant Bryan Bullerdick's Reply in Support of His Motion*.  Given BGSE's pending bankruptcy, Bullerdick elected to file the response in his individual capacity.  However, "[t]o the extent not prohibited under the Bankruptcy Code, . . . [Bullerdick] stated []his Reply [could] also be applied to BGSE."  Dkt. 311 at 1 n.1; *see also* Dkt. 306, *JBT's Response to Defendants' Motion to Dispense with Supersedeas Bond*; Dkt. 314, *Bullerdick's Reply in Support of Defendants' Motion to Dispense with Supersedeas Bond*; Dkt. 320, *JBT's Sur-Reply in Further Opposition to Defendants' Motion to Dispense with Supersedeas Bond*; Dkt. 325, *JBT's Second Sur-Reply in Further Opposition to Defendants' Motion to Dispesne with Supersedeas Bond*.

[31] *See* DUCivR 7-1(g).

discussing the merits of Defendants' positions.    For the reasons outlined below, the court denies Defendants' Motions in full.

## I.        Motion for Judgment as a Matter of Law

<u>LEGAL STANDARD</u>

"If the court does not grant a motion for judgment as a matter of law made under Rule 50(a), . . . the movant may file a renewed motion for judgment as a matter of law and may include an alternative or joint request for a new trial under Rule 59."[32]

Judgment as a matter of law is "appropriate in very limited circumstances,"[33] and is to be "cautiously and sparingly granted."[34]  A district court will grant a motion for judgment as a matter of law only if "all of the evidence in the record reveals no legally sufficient evidentiary basis for a claim under the controlling law"[35]—that is, when "the evidence so overwhelmingly favors the moving party as to permit no other rational conclusion."[36]  In other words, "[j]udgment as a matter of law under Rule 50 is appropriate only if the evidence points but one way and is susceptible to no reasonable inferences which may support the nonmoving party's position."[37]  This poses "a high hurdle [for the movant] to overcome."[38]

As a corollary to these standards, a jury verdict is sustained on a Rule 50 motion if "supported by substantial evidence when the record is viewed most favorably to the prevailing

---

[32] Fed. R. Civ. P. 50(b).

[33] *Symons v. Mueller Co.*, 493 F.2d 972, 976 (10th Cir. 1974).

[34] *Weese v. Schukman*, 98 F.3d 542, 547 (10th Cir. 1996).

[35] *Bill Barrett Corp. v. YMC Royalty Co., LP*, 918 F.3d 760, 766 (10th Cir. 2019) (quoting *Wagner v. Live Nation Motor Sports, Inc.*, 586 F.3d 1237, 1244 (10th Cir. 2009)).

[36] *Shaw v. AAA Eng'g & Drafting, Inc.*, 213 F.3d 519, 529 (10th Cir. 2000).

[37] *Mountain Dudes v. Split Rock Holdings, Inc.*, 946 F.3d 1122, 1129 (10th Cir. 2019) (internal quotation marks and citation omitted).

[38] *Hampton v. Dillard Dep't Stores, Inc.*, 247 F.3d 1091, 1099 (10th Cir. 2001).

party."[39]  This "can mean something less than the weight of evidence[] and consists of such relevant evidence as a reasonable mind might accept as adequate to support a conclusion, even if different conclusions also might be supported by the evidence."[40]  Notably, "the mere existence of contrary evidence does not itself undermine the jury's findings as long as sufficient other evidence supports the findings."[41]  In deciding a motion for judgment as a matter of law, the court must "construe the evidence and inferences in the light most favorable to the nonmoving party without weighing the evidence, passing on the credibility of witnesses, or substituting [its] judgment for that of the jury."[42]

APPLICATION

Defendants renew their motion for judgment as a matter of law on nearly every claim considered by the jury, with a particular focus on the sufficiency of evidence for the jury's assessment of damages.[43]  For the reasons discussed below, the court concludes Defendants have not overcome the "high hurdle" needed to upset the jury's findings.[44]

### A. Legally Sufficient Bases Existed for Jury Verdict on JBT's Tortious Interference Claim

Defendants first argue they are entitled to judgment as a matter of law on JBT's claim for tortious interference because (1) JBT failed to present any evidence that Defendants maliciously induced a third party to forgo contracting with JBT, and (2) JBT failed to show that a contract would have ensued but for Defendants' actions.[45]  Both contentions challenge the sufficiency of

---

[39] *Webco Indus., Inc. v. Thermatool Corp.*, 278 F.3d 1120, 1128 (10th Cir. 2002).

[40] *Braun v. Medtronic Sofamor Danek, Inc.*, 141 F. Supp. 3d 1177, 1187 (D. Utah 2015), *aff'd*, 719 F. App'x 782 (10th Cir. 2017) (internal quotation marks and citations omitted).

[41] *Webco*, 278 F.3d at 1128 (internal quotation marks and citation omitted).

[42] *Greene v. Safeway Stores, Inc.*, 98 F.3d 554, 557 (10th Cir. 1996).

[43] *See* Dkt. 284 at 12–13, 15–17.

[44] *See Hampton*, 247 F.3d at 1099.

[45] Dkt. 284 at 7–12.

evidence for the elements of a tortious interference claim under North Carolina law—specifically, the existence of "another party" that would have contracted with the plaintiff "but for" the actions of the defendant.[46]

However, at trial, JBT presented ample evidence showing that Defendants' shift from business partner to unscrupulous competitor caused JBT to lose several contractual opportunities with third parties.  In particular, JBT demonstrated that Defendants submitted fraudulent bids on several F-35 projects for which JBT's ground equipment was the only real contender—specifically, Lemoore P-328 with Able Heating & Air Conditioning,[47] Beaufort P-465 with Carothers Construction,[48] and Kadena P-803 with Prime Projects International.[49]  JBT provided extensive trial testimony to this effect, as well as numerous exhibits showing that Defendants used altered JBT materials to make successful bids.[50]

While JBT did not directly bid on these projects, it had the clear capability and financial incentive to do so—if not for its misplaced trust in its former business partners.[51]  At trial, JBT demonstrated that part of Defendants' strategy was to use blanket purchase orders to obscure

---

[46] *See Summary Judgment Order* at 64–65 ("To prevail on its claim for tortious interference[,] . . . JBT must show that Defendants '[1] acted without justification [2] in inducing a third party to refrain from entering into a contract with them, [3] which contract would have ensued but for the interference.'" (quoting *Walker v. Sloan*, 529 S.E.2d 236, 242 (N.C. Ct. App. 2000) (further quotation marks and citation omitted))); *see also* Dkt. 266, *Final Substantive Jury Instructions* at 39–42 (reflecting the jury instructions for JBT's tortious interference claims).

[47] *See* Dkt. 303-14, *Exhibit 14: Correspondence between Bullerdick and Able*; Dkt. 303-15, *P-328 Technical Approval*; Dkt. 303-1, *Trial Transcript Excerpt* at 526:6–527:19, 819:15–821:1.

[48] *Trial Transcript Excerpt* at 503:8–507:25, 556:15–17; Dkt. 303-27, *Exhibit 27: Correspondence between Bullerdick and Carothers*.

[49] *Trial Transcript Excerpt* at 615:18–20; Dkt. 303-29, *Exhibit 29: Correspondence between Bullerdick and Prime*.

[50] *See, e.g.*, Dkt. 303-3, *Exhibit 3: BGSE's P-328 Project Submittal Package* at 28–37; Dkt. 303-4, *Exhibit 4: BGSE's P-465 Project Submittal Package* at 5–25; Dkt. 303-5, *Exhibit 5: BGSE's P-803 Project Submittal Package* at 83–104; *Exhibit 24: BGSE's P-328 Project Submittal Package Rev. 1* at 28–45.

[51] *See* Dkt. 303 at 6 (citing *Trial Transcript Excerpt* at 467:18–468:11, 234:23–235:12, 331:7–331:17).

direct sales from JBT "*precisely* so that JBT would not directly bid" against BGSE.[52]

Defendants' conduct thus allowed them to preempt JBT's competition on these contractual

opportunities, even as they used its proprietary materials and ground equipment to make

successful bids.

Defendants counter that any finding of liability must be based on mere speculation given

JBT's tertiary relationship with the three projects.[53]  But this belies both the weight of the

evidence offered at trial regarding JBT's competitive position and, critically, "a [key] aspect of

the jury's work—drawing those inferences that the jury concludes reasonably and justifiably

follow from all the direct and circumstantial evidence."[54]

Based on the direct and circumstantial evidence presented at trial, the jury could

reasonably conclude that JBT had more than a mere expectation of a successful bid.  Indeed,

JBT's evidence indicated it was the very basis of design for the projects and the only

subcontractor capable of meeting their exacting requirements before the emergence of a dark

horse competitor—BGSE.[55]  As JBT points out, "the jury . . . was presented with a clear

explanation why the Lemoore, Kadena, and Beaufort contractors would have directly purchased

from JBT if not for Defendants' interference—namely, because JBT had the only products on the

---

[52] *See id.* at 6–7 (citing Dkt. 303-25, *Exhibit 25: Correspondence re: Shipment of JBT Power Units* (stating, among other things, that BGSE did "not want JBT knowing the destinations" of the Kadena and Beaufort shipments); *Trial Transcript Excerpt* at 859:13–860:2); *see also Trial Transcript Excerpt* at 524:10–525:8 (discussing the lack of viable competitors to JBT's product as of May 2015), 624:19–625:21 (stating that JBT had "the only unit working for [the Kadena] application"), 888:4–889:17 (discussing compliance problems with competing products as of February 2016).

[53] Dkt. 284 at 10–11.

[54] *Braun*, 141 F. Supp. 3d at 1188–89.

[55] *See* Dkt. 303-32, *Exhibit 32: Correspondence re: Lemoore* (stating that JBT was the "basis of design" for the Lemoore F-35 project); Dkt. 303-37, *Exhibit 37: Correspondence re: BGSE's F-35 Work by Base*; *Trial Transcript* at 824:5–13.

market that met the projects' tough specifications."[56]  Moreover, while "a plaintiff's mere
expectation of a [] business relationship is insufficient to establish [a tortious interference]
claim,"[57] persuasive case law contemplates that a potent economic advantage, such as an
exclusive sales territory,[58] can raise a plaintiff's expectation beyond the realm of mere
aspiration.[59]  Relatedly, the evidence JBT presented regarding its unmatched competitive
position was sufficient to allow the jury to reasonably conclude that "but for" Defendants'
conduct, JBT would have been on the receiving end of the lucrative Lemoore, Beaufort, and
Kadena subcontracts.[60]

In sum, JBT presented sufficient evidence that Defendants "maliciously induced another
party not to enter into a prospective contract with JBT, . . . [and] but for BGSE's and Bullerdick's
conduct, JBT would have entered into a valid contract."[61]  Accordingly, the court declines to
disrupt the jury's determination of liability on JBT's tortious interference claim.

---

[56] Dkt. 303 at 8 (distinguishing the present case from *Beverage Sys. of the Carolinas, LLC v. Associated Beverage Repairs, LLC*, 368 N.C. 693 (2016)).

[57] *Beverage Sys. of the Carolinas*, 368 N.C. at 701 (citing *Dalton v. Camp*, 353 N.C. 647, 655 (2001)).

[58] *See Bassett Seamless Guttering, Inc. v. GutterGuard, LLC*, 501 F. Supp. 2d 738, 744 (M.D.N.C. 2007) ("Generally to survive summary judgment, a plaintiff must offer evidence that a defendant directly interfered with a prospective contract between the plaintiff and an identifiable third party. . . . Where Plaintiff's economic advantage exists in the form of an exclusive sales territory, however, Plaintiff may need only to demonstrate that others in its territory purchased the same good from an infringing party." (citing *Nat'l Micrographics Sys., Inc. v. OCE-Indus., Inc.*, 55 Md. App. 526, 538 (1983))).

[59] *Cf. Comput. Design & Integration, LLC v. Brown*, No.16 CVS 11847, 2018 WL 6609014, at *21 (N.C. Super. Dec. 10, 2018) (denying defendants' request for summary judgment on plaintiffs' tortious interference claim where the contracts at issue were in the plaintiffs' "business pipeline" and the "same [type of] work [they] had been performing").

[60] *See* Dkt. 262 at 6–7 ("Has JBT proven by a preponderance of the evidence that BGSE and/or Bullerdick tortiously interfered with JBT's contractual relations for the [] project[s]? . . . Yes."); *see also Final Jury Instructions* at 39–42 (reflecting the final jury instructions for JBT's tortious interference claim, including the requirement that JBT demonstrate "but for" causation).

[61] *Final Jury Instructions* at 39.

### B. *Legally Sufficient Bases Existed for Jury Verdict and Damages on JBT's Trade Secret Misappropriation Claims*

Defendants next seek judgment as a matter of law on JBT's misappropriation of trade secrets claims.[62]  They argue a purportedly misappropriated document, the HPCF Manual, contained sections derived from third-party sources, such that "[i]t was error to instruct the jury that [the HPCF Manual] contained a trade secret without the jury having the chance to consider whether such information was indeed protectable."[63]  Additionally, Defendants contend JBT did not present sufficient evidence of damages.[64]  These arguments are unavailing.

As a preliminary matter, Defendants' trade secret argument was not raised in its Rule 50(a) motion and therefore cannot be asserted in its Rule 50(b) motion.[65]  Though Defendants argue there is an adequate foundation for this contention,[66] they do not address its conspicuous absence from the preceding Rule 50(a) motion.[67]  And the Tenth Circuit is clear that "[a] Rule 50(b) movant . . . can only reassert the same grounds for judgment as a matter of law that he first asserted in his pre-deliberation Rule 50(a) motion."[68]  Because Defendants' Rule 50(a) motion does not mention the Manual's trade secret status or otherwise challenge JBT's claim based on

---

[62] Dkt. 284 at 12–13.

[63] *Id.* at 12.

[64] *Id.* at 12–13.

[65] *Mountain Dudes*, 946 F.3d at 1131.

[66] *See* Dkt. 311 at 3–4.

[67] *See generally* Dkt. 258.

[68] *Mountain Dudes*, 946 F.3d at 1131 (citing *Perez v. El Tequila, LLC*, 847 F.3d 1247, 1255 (10th Cir. 2017) ("Arguments presented in a Rule 50(b) motion cannot be considered if not initially asserted in a Rule 50(a) motion.")).

the carryover between the Manual and third-party sources, Defendants cannot now seek renewed

judgment as a matter of law on these grounds.[69]

Defendants' challenge to the sufficiency of evidence for the jury's damages award fails

on the merits.  Courts are highly deferential to a jury's determination of damages and will disrupt

a damages award "for lack of a sufficient evidentiary basis when, but only when, . . . the amount

of damages awarded is clearly erroneous, or there is no evidence to support it."[70]  "When the

damages awarded by the jury fall within the range permitted by the evidence admitted at trial

. . . , [the court] may not second guess the award."[71]

Notwithstanding Defendants' contention that "JBT did not present evidence from which

the jury could have concluded that JBT was damaged by Defendants' actions,"[72] the trial record

suggests otherwise.  The jury was presented with evidence from which it could reasonably and

justifiably infer that Defendants misappropriated JBT's trade secrets for the purpose of bolstering

one of its competitors, thereby undermining JBT's competitive position.[73]  Additionally, the jury

heard testimony from two damages experts—one from Defendants and one from JBT—

concerning the lost profits and unjust enrichment resulting from Defendants' misconduct.[74]  For

---

[69] *See id.* at 1131–35 (reversing a district court's decision to grant "judgment as a matter of law under Rule 50(b) on grounds Defendants never asserted in [] their Rule 50(a) motion[], because it deprived [Plaintiff] of the pre-deliberation notice and opportunity to rectify any deficiency in its evidence that Rule 50 was intended to provide").

[70] *Russo v. Ballard Med. Prods.*, 550 F.3d 1004, 1018 (10th Cir. 2008) (internal quotation marks and citations omitted).

[71] *Id.*

[72] Dkt. 284 at 12–13.

[73] *See, e.g.*, Dkt. 303-20, *Exhibit 20: Email from Bullerdick to Twist with the HPCF Manual* (cautioning that the email attachment was "[c]onfidential"); Dkt. 303-21, *Exhibit 21: September 3, 2015 Email from Bullerdick to Twist*; Dkt. 303-23, *Exhibit 23: July 30, 2014 Email from Bullerdick to Twist*; Dkt. 303-28, *Exhibit 28: HPC Unit Schematic Cover Sheet*; Dkt. 303-43, *Exhibit 43: Correspondence from Bullerdick to Twist* (stating that BGSE and Twist "have a lot of ground to make up" and that he attached "a library of confidential info[rmation] to reference").

[74] *See Trial Transcript Excerpt* at 896:19–970:24 (reflecting testimony from JBT's damages expert); *Trial Transcript* at 1045:15–1099:10 (reflecting testimony from Defendants' damages expert).

its part, JBT's expert testified extensively regarding his methodology for calculating JBT's losses relative to the Lemoore, Kadena, and Beaufort projects, referencing, among other things, JBT's profit-and-loss statements and his understanding of the advantage provided by JBT's trade secrets and confidential materials.[75]  The jury was instructed that it should "award the amount of money that [] fairly and adequately compensate[s] JBT for measurable losses of money caused by BGSE's and Bullerdicks' trade secret misappropriation,"[76] and that it could "also consider what benefit BGSE and Bullerdick may have gained from their misuse of JBT's trade secret."[77]

The jury's final damage award tracked the amount put forth by the Defendants' own damages expert, reflecting a consolidated $323,256 for the several claims centered on the actions Defendants took to secure the three F-35 projects and undermine JBT's competitive position.[78] Under these circumstances, the court concludes the jury had a sufficient basis for its assessment of damages on JBT's misappropriation of trade secrets claims.[79]  Accordingly, Defendants' motion for judgment as a matter of law on JBT's trade secret misappropriation claims is denied.

---

[75] *See Trial Transcript Excerpt* at 907:8–970:24.

[76] *Final Jury Instructions* at 22.

[77] *Id.* at 24.

[78] *See generally* Dkt. 262.

[79] *See, e.g.*, *Braun*, 141 F. Supp. 3d at 1189 (rejecting a sufficiency-of-evidence challenge to a trade secret misappropriation claim where an expert "testified concerning his damages calculation based on . . . a legally permissible basis for an award"); *Boardwalk Apartments, L.C. v. State Auto Prop. & Cas. Ins. Co.*, No. 11-2714-JAR, 2015 U.S. Dist. LEXIS 4432, at *10 (D. Kan. Jan. 14, 2015) ("easily" finding the jury's damages award was supported by the evidence where it fell within the range testified by damages experts); *Guidance Endodontics, LLC v. Dentsply Int'l, Inc.*, No. CIV 08-1101 JB/RLP, 2010 U.S. Dist. LEXIS 98631, at *97 (D.N.M. Aug. 26, 2010) (rejecting a sufficiency-of-evidence challenge to a jury's damages assessment where the jury heard testimony from a qualified "expert in the field of economic quantification and calculation of economic damages").

### C. *Legally Sufficient Bases Existed for the Jury Verdict on JBT's False Designation of Origin Claim*

Defendants also seek judgment as a matter of law on JBT's false designation of origin claim.[80]  At summary judgment, the court determined BGSE was liable for falsely designating the origin of the products offered as part of its post-bid submittals for several F-35 projects.[81]  "[A]lthough BGSE represented that it was offering for sale a BGSE product to be manufactured by Twist [through the post-bid submittals], the substance of the submittal[s] revealed the product being offered for sale was actually produced by JBT."[82]  However, at trial, JBT also claimed BGSE falsely designated the origin of products supplied by manufacturers other than JBT through several additional acts, such as submitting quotes related to separate F-35 projects with BGSE's logo superimposed over JBT's specification sheets.[83]  For these additional acts, Defendants contend JBT failed to present evidence of actual confusion from the recipients of the co-opted materials sent by BGSE—something they state "has been deemed a fatal flaw."[84]  Additionally, Defendants dispute the sufficiency of evidence presented by JBT on most of the other factors relevant to a false designation of origin claim.[85]  Lastly, Defendants assert that JBT

---

[80] Dkt. 284 at 13–15.

[81] *Summary Judgment Order* at 31–41.

[82] *Id.* at 38.

[83] *Jury Instructions* at 27–28.

[84] Dkt. 284 at 14 (citing *Systemcare, Inc. v. Wang Labs.*, 787 F. Supp. 179, 183 (D. Colo. 1992); *Micro Consulting, Inc. v. Zubeldia*, 813 F. Supp. 1514, 1518–19 (W.D. Okla. 1990)).  While the out-of-district cases cited by Defendants discussed the lack of evidence of actual confusion, they do not appear to stand for the proposition that this is necessarily a fatal flaw.  *Systemcare* cites the Tenth Circuit's decision in *Brunswick Corp. v. Spinit Reel Co.* for the proposition that "[t]o prove money damages on [trademark infringement and false designation of origin] claims, a claimant must show that customers were actually confused as to the affiliation of the alleged infringer with the trademark owner." 787 F. Supp. at 183 (citing *Brunswick Corp. v. Spinit Reel Co.*, 832 F.2d 513, 521 (10th Cir. 1987)).  But, in *Brunswick Corp.*, the Tenth Circuit was clear that "evidence of actual confusion [is] . . . not necessary for a finding of likelihood of confusion," though, of course, it "may be the strongest evidence to support such a determination." 832 F.2d at 521.  Relatedly, the court in *Micro Consulting* noted that "[a] plaintiff need not prove actual confusion to prevail—it serves only as additional evidence on the issue." 813 F. Supp. at 1533.

[85] Dkt. 284 at 14–15.

"did not introduce evidence from which any factfinder could determine damages for th[e] actions . . . deemed to constitute false designation of origin," whether those determined at summary judgment or at trial.[86]  These arguments also fail.

JBT's claim for false designation of origin arises under § 43 of the Lanham Act, which contemplates liability for a "person who [uses] . . . any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which . . . is likely to cause confusion as . . . as to the origin . . . of his or her goods."[87]  "False designation of origin claims fall into two categories: 'passing off,' where a party represents his or her *own* goods or services as someone else's or," as relevant here, "'reverse passing off,' where a party misrepresents *someone else's* goods or services as his or her own."[88]  In evaluating JBT's false designation of origin claim at summary judgment, the court remarked that "the Tenth Circuit has yet to rule substantively on a reverse passing off claim," and thus decided to follow a four-factor test adopted by the Second, Fourth, and Federal Circuits.[89]  Under that test, a plaintiff must prove four elements: "(1) that the work at issue originated with the plaintiff; (2) that origin of the work was falsely designated by the defendant; (3) that the false designation of origin was likely to cause consumer confusion; and (4) that the plaintiff was harmed by the defendant's false

---

[86] *Id.* at 15.

[87] 15 U.S.C. § 1125(a).

[88] *Summary Judgment Order* at 32 (citing *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23, 27 n.1 (2003); *Gaedeke Holdings VII LTD v. Baker*, 683 F. App'x 677, 679 n.2 (10th Cir. 2017); *Larkin Grp, Inc. v. Aquatic Design Consultants, Inc.*, 323 F. Supp. 2d 1121, 1124 (D. Kan. 2004)).

[89] *Summary Judgment Order* at 33; *see also Hark'n Techs., Inc. v. Orange Whip Fitness X, LLC*, No. 1:21-cv-00054-CMR, 2022 U.S. Dist. LEXIS 147702, at *30 (D. Utah Aug. 16, 2022) (following the court's approach in *John Bean Techs.*, 480 F. Supp. 3d at 1304).

designation of origin."[90]  As noted above, Defendants challenge the sufficiency of evidence for

the third and fourth factors.[91]

### i.  *Likelihood of Confusion*

To determine whether a false designation of origin is likely to cause confusion, the Tenth

Circuit generally uses a six-factor test, considering the following non-exhaustive factors:

> (1) the degree of similarity between the [products being sold or offered for sale];
> (2) the intent of the [defendant] . . . ; (3) evidence of actual confusion; (4) similarity
> of products and manner of marketing; (5) the degree of care likely to be exercised
> by purchasers; and (6) the strength or weakness of the [representations of the
> products' origin].[92]

However, as the court explained at summary judgment, satisfying the confusion requirement is

not particularly onerous.[93]  "This is because 'when a defendant has taken the plaintiff's product

and has represented it to be his own work, it is difficult to imagine how a designation of origin of

a product could be more false, or could be more likely to cause confusion or mistake as to the

actual origin of the product.'"[94]

Defendants challenge JBT's production of evidence of "actual confusion from the

materials sent by BGSE," which they contend falls short and thus "should have precluded JBT's

liability theories from reaching the jury."[95]  Yet, as discussed, the relevant test for reverse passing

off claims does not necessarily require a showing of actual confusion.  On the contrary, the mere

---

[90] *Summary Judgment Order* at 33 (quoting *Universal Furniture Int'l, Inc. v. Collezione Europa USA, Inc.*, 618 F.3d 417, 438 (4th Cir. 2010)); *see also Syngenta Seeds, Inc. v. Delta Cotton Coop., Inc.*, 457 F.3d 1269, 1277 (Fed. Cir. 2006); *Lipton v. Nature Co.*, 71 F.3d 464, 473 (2d Cir. 1995) (establishing the same four elements).

[91] Dkt. 284 at 13–15 (challenging JBT's evidence establishing likelihood of confusion and damages caused by Defendants' false designation of origin).

[92] *Sally Beauty Co. v. Beautyco, Inc.*, 304 F.3d 964, 972 (10th Cir. 2002); *see also Final Jury Instructions* at 29 (reflecting the same).

[93] *See Summary Judgment Order* at 38–39.

[94] *Id.* (quoting *Universal Furniture*, 618 F.3d at 438–39).

[95] Dkt. 284 at 14.

"likelihood of confusion" suffices, and "courts have [widely] concluded that a party's attempt to pass off another party's product as its own satisfies the confusion requirement of the Lanham Act [as] . . . it represents a direct attempt to confuse a consumer about the origin of a product."[96]  Yet, even setting aside courts' tendency to presume likelihood of confusion, JBT presented ample evidence that BGSE's submissions confused the recipients about product origin.

Likelihood of confusion can be shown by any number of factors, ranging from the degree of similarity between the products being sold or offered for sale to the strength or weakness of the representations of the products' origin.[97]  Moreover, the Tenth Circuit's six-factor test for determining likelihood of confusion is non-exhaustive.[98]  Here, the sheer audacity of Defendants' submissions, employing co-opted JBT materials with superimposed BGSE logos, coupled with evidence of Defendants' concerted efforts to supplant JBT, could lead a reasonable factfinder to conclude that the recipients of BGSE's submission were confused by the origin of the products offered by BGSE.[99]  Moreover, JBT's evidence at trial tended to show that the general contractors awarding BGSE competitive contracts mistakenly believed BGSE's proffered

---

[96] *Laura Laaman & Assocs., LLC v. Davis*, No. 3:16-cv-00594 (MPS), 2017 U.S. Dist. LEXIS 194175, at *17–18 (D. Conn. Nov. 27, 2017) (collecting cases); *see also Summary Judgment Order* at 38–39 (discussing the standards for showing likelihood of confusion for a reverse passing off claim).

[97] *See Sally Beauty Co.*, 304 F.3d at 972; *see also Final Jury Instructions* at 29 (reflecting the non-exhaustive factors the jury was advised it could consider, with the additional guidance that "[t]hese factors are interrelated, and no individual factor is dispositive").

[98] *See Summary Judgment Order* at 38; *see also id.* at 38–39 ("[C]ourts that would otherwise apply multi-factor tests in considering this element generally eschew that mode of analysis when assessing reverse passing off claims." (citing *Suntree Techs., Inc. v. Ecosense, Int'l, Inc.*, 693 F.3d 1338, 1348 (11th Cir. 2012))).

[99] *See, e.g.*, Dkt. 303-3 at 28–37; Dkt. 303-4 at 5–25; Dkt. 303-5 at 83–104; Dkt. 303-24 at 28–45; Dkt. 303-26, *Exhibit 26: September 4, 2014 Email from Bullerdick* (stating that Bullerdick was "steeling [sic] some of [JBT's] graphics"); Dkt. 303-30, *Exhibit 30: BGSE's F-35 Facilities System Specification Document* at 21–31, 60–64; Dkt. 303-31, *Exhibit 31: Eielson Project Submittal Package* at 26–49; Dkt. 303-33, *Exhibit 33: February 6, 2015 Email from Bullerdick* (reflecting "some photoshopped images" with BGSE's logo superimposed on photographs of JBT products); Dkt. 303-34, *Exhibit 34: BGSE's F-35 Facilities System Specification Document* at 21–31; Dkt. 303-35, *Exhibit 35: BGSE's Eielson Bid Package* at 6–9.

equipment had the same qualities as JBT's.[100]  Accordingly, the court rejects Defendants'
contention that JBT failed to present adequate evidence showing likelihood of confusion.

### ii.    *Damages*

"One of the Lanham Act's purposes is to 'assure a producer that it (and not an imitating
competitor) will reap the financial, reputation-related rewards associated with a desirable
product.'"[101]  As such, the jury was instructed that JBT needed to prove, by a preponderance of
the evidence, that it "was harmed by BGSE's false designation of origin."[102]  It was also advised
that "deception by one, which prevents another from reaping both the financial and reputational
rewards associated with its products, causes harm."[103]  Though the jury subsequently found
BGSE liable for false designation of origin, with damages reflected in the jury's assessment of
$323,256 first posited by Defendants' own damages expert, Defendants now contend "there was
no basis for concluding there were damages from the actions . . . constitut[ing] false designation
of origin."[104]  The court disagrees.

At trial, JBT presented sufficient evidence showing Defendants' false designation of
origin allowed them to benefit from JBT's position as a market leader for ground equipment,
providing undeserved financial and reputational rewards.[105]  In particular, JBT's damages expert
testified about JBT's resultant losses, with a competing assessment provided by Defendants'
damages expert.[106]  The jury was apparently persuaded by the latter assessment, and determined

---

[100] *See, e.g.*, Dkt. 303-14; 303-15; *Trial Transcript Excerpt* at 819:15–821:1.

[101] *Summary Judgment Order* at 39 (quoting *Dastar*, 539 U.S. at 34 (internal citation and quotation marks omitted)).

[102] *Final Jury Instructions* at 27–28.

[103] *Id.* at 30.

[104] Dkt. 284 at 15.

[105] *See Trial Transcript Excerpt* at 896:19–970:24.

[106] *See supra* Section I(B).

JBT was entitled to $323,256 for damages resulting from Defendants' misappropriation of trade secrets, false designation of origin, and contract breaches.[107]  As discussed above, the court concludes the jury's assessment was neither "clearly erroneous" nor unsupported by evidence.[108] Accordingly, Defendants' motion for judgment as a matter of law on JBT's false designation of origin claim and damages awarded is denied.

### D.  *Legally Sufficient Bases Existed for Jury Verdict on JBT's Breach of Contract Claims*

As a final basis for judgment as a matter of law, Defendants challenge the jury's damages award for JBT's breach of contract claims, focused on Defendants' failures to comply with certain contractual obligations to preserve JBT's confidentiality and return proprietary materials.[109]  As with JBT's other claims, Defendants challenge the sufficiency of evidence for the jury's assessment of damages.[110]  First, they argue "JBT could not have been damaged by Defendants' use of materials that were not confidential"—specifically, the Manual that Bullerdick sent to JBT's competitor.[111]  Second, Defendants contend they could not have breached "any contract when JBT was undisputedly failing to protect its own information and giving it away" to BGSE personnel before the parties formalized their relationship with a written agreement.[112]  Third, Defendants assert that their use of information relating to JBT's power equipment, which they were otherwise obligated to return or refrain from using, actually benefited JBT.[113]  Finally, they state that JBT did not introduce exhibits relevant to one of its

---

[107] Dkt. 262.

[108] *See supra* Section I(B) (citing *Russo*, 550 F.3d at 1018).

[109] Dkt. 284 at 15–17.

[110] *See id.* at 16 ("JBT failed to present evidence from which a jury could find that it was damaged.").

[111] *Id.*

[112] *Id.* at 16–17.

[113] *Id.* at 17.

breach of contract theories at trial, rendering it improper for the jury to consider the claim.[114]
Once again, these arguments fail.

While JBT concedes that portions of the HPCF Manual contain depictions that overlap
with third-party materials, it questions how this vitiates Defendants' responsibility to keep the
Manual confidential,[115] as Defendants appear to argue.[116]  The court shares JBT's skepticism.
Despite some overlap with third-party materials, the Manual contains numerous sections that
were not sourced by third parties, and it was determined to be a protectable trade secret under
both Utah and federal law at summary judgment.[117]  As JBT notes, "Bullerdick himself labeled
communications containing the JBT HPCF Manual as 'confidential.'"[118]  Yet, despite the
sensitivity surrounding the Manual, Bullerdick sent the document to one of JBT's competitors,
among numerous other unauthorized uses of JBT's proprietary materials aimed at bolstering
BGSE's competitive position.[119]  Defendants do not point to any legal or factual basis for why
the partial overlap with third-party materials absolved their contractual duties to preserve the
Manual's confidentiality, nor does the court know of any.

Defendants' remaining challenges to JBT's breach of contract claims are similarly
unavailing.  A single example of JBT distributing a confidential manual to a BGSE employee
before the parties entered a more formal relationship does not somehow excuse Defendants'
decision to send a different manual to one of JBT's competitors after becoming formal business

---

[114] *Id.*

[115] Dkt. 303 at 14.

[116] Dkt. 284 at 16.

[117] *See Summary Judgment Order* at 29, 54.

[118] Dkt. 303 at 14 (citing Dkt. 303-20); *see also Summary Judgment Order* at 24 n.153 (noting Bullerdick's
testimony that the manuals are not considered confidential is contradicted by his own email to Twist providing the
HPCF Manual and describing it as 'confidential'").

[119] *See, e.g.*, Dkt. 303-20; Dkt. 303-21; Dkt. 303-23; Dkt. 303-28; Dkt. 303-43.

partners with JBT.[120]  And Defendants' contention that their unauthorized use of certain

confidential documents benefited JBT was soundly rejected by the court at summary

judgment.[121]  There is no reason to disrupt that determination—as before, Defendants'

"attempted defense presents no cognizable legal theory that excuses [the] clear breaches of the

2011 Confidentiality Agreement."[122]  Finally, the court concludes that JBT's decision not to

present certain exhibits related to one possible theory of breach does not undermine the

sufficiency of evidence on JBT's breach of contract claims as a whole.  Indeed, the jury had

ample evidence supporting its finding that Defendants breached their respective contracts with

JBT, causing damages.[123]  Accordingly, Defendants' motion for judgment as a matter of law on

JBT's breach of contract claims is denied.

## II.    Motion for a New Trial

<u>LEGAL STANDARD</u>

Motions for a new trial under Rule 59 also face a high bar for relief and are granted only

"with great caution."[124]  A new trial "may be appropriate where the jury verdict is against the

weight of the evidence, the damages are excessive, a party was prejudiced by erroneous

evidentiary rulings, or the trial was not fair to the moving party."[125]  Additionally, "[a]n error of

---

[120] *Compare* Dkt. 303-45, *Exhibit 45: Correspondence between JBT and BGSE Containing 30-Ton PC-Air Manual*, *with* Dkt. 303-9, *Exhibit 9: HPCF-3000 18-Grain Modification Manual*.

[121] *See Summary Judgment Order* at 54–55.

[122] *Id.*

[123] *See* Dkt. 262 at 4–5.

[124] *Braun*, 141 F. Supp. 3d at 1192 (quoting *Klein-Becker USA, LLC v. Englert*, No. 2:06-cv-378 TS, 2011 U.S. Dist. LEXIS 103435, at *2 (D. Utah Sep. 13, 2011), *aff'd*, 711 F.3d 1153 (10th Cir. 2013) (internal quotation marks and citation omitted)).

[125] *Id.* (quoting *Megadyne Med. Prods. v. Aspen Lab.*, 864 F. Supp. 1099, 1102 (D. Utah 1994), *aff'd*, 52 F.3d 344 (Fed. Cir. 1995)).

law, if prejudicial, is grounds for a new trial,"[126] though case law from this District cautions

"against liberally granting such motions."[127]  "To give rise to a new trial, [the] claimed error

must be clear, prejudicial to the moving party, and must affect substantive rights."[128]  A new trial

motion based on the sufficiency of the evidence is granted only where the "verdict is clearly,

decidedly, or overwhelmingly against the weight of the evidence."[129]

APPLICATION

### A. *The Court's Application of* **Dastar** *Does Not Warrant a New Trial*

Defendants primarily move for a new trial on the grounds that the court failed to properly

apply the Supreme Court's guidance on false designation of origin claims in *Dastar Corporation*

*v. Twentieth Century Fox Film*.  In *Dastar*, the Supreme Court held, "the phrase 'origin of goods'

[for the purpose of Section 43 of the Lanham Act] . . . refers to the producer of the tangible

goods that are offered for sale," such that a defendant cannot be held liable for false designation

of origin if it originated the good at issue.[130]  Defendants contend the court's reliance on

*Universal Furniture International, Inc. v. Collezione Europa USA, Inc.'s* reverse passing off

approach,  extending liability "even where the product the defendant sells was not manufactured

by the plaintiff,"[131] was misplaced as that case dealt with the display of "actual pieces" at a

market.[132]  Here, by contrast, Defendants stress that "no actual products from JBT were ever

---

[126] *O'Neal v. Clark*, No. 2:14-cv-363, 2019 U.S. Dist. LEXIS 217118, at *5 (D. Utah Apr. 29, 2019).

[127] *Braun*, 141 F. Supp. 3d at 1192; *see also Klein-Becker*, 2011 U.S. Dist. LEXIS 103435, at *2 ("Motions for a new trial are generally disfavored, and should only be granted with great caution." (internal quotation marks and citation omitted)).

[128] *Braun*, 141 F. Supp. 3d at 1192.

[129] *Advantor Cap. Corp. v. Yeary*, 136 F.3d 1259, 1266 (10th Cir. 1998).

[130] Dkt. 284 at 17–20 (citing *Dastar*, 539 U.S. at 37).

[131] *Summary Judgment Order* at 37.

[132] Dkt. 284 at 18 (quoting *Universal Furniture*, 618 F.3d at 438).

displayed by BGSE."[133]   Because "[t]he [c]ourt's application of *Dastar* affected the remaining proceedings" and it is impossible to unravel Defendants' purported Lanham Act violations from the jury's consolidated damages award, Defendants argue "a new trial should be ordered."[134] The court disagrees for two reasons.

First, as JBT notes, Defendants' challenge to the court's summary judgment determination is procedurally flawed.[135]   If the court's application of *Dastar* and *Universal* at summary judgment was erroneous, as Defendants assert, they should have filed a timely motion for reconsideration rather than an eleventh-hour motion for a new trial.[136]   For reasons that are either unclear or unknown, they failed to do so.   Instead, Defendants essentially ask the court to reconsider an exhaustively briefed legal determination more than two years after it was reached, and months after the completion of a costly, time-consuming trial.

But more substantively, the court concludes there are no legal errors warranting a new trial.   As discussed at summary judgment, the court held JBT was entitled to summary judgment on its false designation of origin claim because it "was the producer of the tangible goods Defendants were offering for sale in the post-submittal documents."[137]   While JBT's equipment was not displayed at a physical market per se, the court noted that the post-submittal documents

---

[133] Dkt. 284 at 19.

[134] *Id.* at 18–19.

[135] Dkt. 303 at 15–19.

[136] *See Allianz Life Ins. Co. of N. Am. v. Muse*, No. CIV-17-1361-G, 2020 U.S. Dist. LEXIS 199020, at *17 (W.D. Okla. Oct. 26, 2020) (stating that "Rule 59(a)(2) is an improper vehicle for" requesting reconsideration of a legal determination made at summary judgment); *Boardwalk*, 2015 U.S. Dist. LEXIS 4432, at *23 ("While [] pretrial substantive rulings [made at summary judgment] may serve as the basis for appeal, the [c]ourt does not consider them to be appropriately challenged in a motion for new trial."); *see also RMA Ventures Cal. v. Sunamerica Life Ins. Co.*, No. 2:03-cv-740 TS, 2008 U.S. Dist. LEXIS 118952, at *2 (D. Utah Jan. 18, 2008) (construing a request for a new trial that simply "rehashes arguments made in the original summary judgment filings" as a motion for reconsideration).

[137] *Summary Judgment Order* at 37.

showcased JBT's proprietary materials and products with "BGSE's logo [superimposed] over JBT's."[138] And "although BGSE represented that it was offering . . . a BGSE product to be manufactured by Twist, the substance of the submittal revealed the product being offered for sale was actually produced by JBT."[139] Therefore, "the court conclude[d] the equipment represented in BGSE's project submittals originated with JBT and that BGSE falsely designated the origin of the work."[140]

Though "[a]n error of law, if prejudicial, is grounds for a new trial,"[141] Defendants have not provided any compelling reason to undermine the court's application of *Dastar* and *Universal Furniture*. Instead, Defendants retrace arguments that were considered and rejected before summary judgment was granted on JBT's false designation of origin claim.[142] Indeed, the court considered that *Universal Furniture* concerned, among other things, a *physical* display of the plaintiff's goods masquerading as the defendant's furniture.[143] But the display of "actual pieces" as sales props deviates only trivially from Defendants' conduct here—using doctored photographs of JBT's ground equipment and excerpts of JBT's proprietary materials to sell products as though they were produced by Defendants. In both cases, the defendants offered a competitor's product as a prop, providing end users with unwarranted expectations about the product actually offered for sale.

---

[138] *Id.* at 37–38.

[139] *Id.* at 38.

[140] *Id.*

[141] *O'Neal*, 2019 U.S. Dist. LEXIS 217118, at *5.

[142] *Compare* Dkt. 284 at 17–19 (arguing that *Dastar* and subsequent decisions vitiate JBT's theory of liability on its false designation of origin claim), *with* Dkt. 147, *Defendants' Opposition to JBT's Motion for Summary Judgment* [SEALED] at 17–20 (same).

[143] *See Summary Judgment Order* at 37 (discussing *Universal Furniture*, including the court's determination that "[b]ecause [the defendant] displayed actual pieces from [the plaintiff's furniture line] and marketed them as belonging to [the defendant's] collection, [the defendant] falsely designated the origin of such furniture" (quoting 618 F.3d at 438–39)).

Moreover, the facts of *Universal Furniture* hew far closer to BGSE's conduct than the out-of-circuit case cited by Defendants, *Blades of Grass, Inc. v. Go Green Lawn & Pest, LLC*.[144] In that case, the district court dismissed a reverse passing off claim based on "an unattributed, verbatim recitation of phrases" purportedly used by the plaintiff and then co-opted by a former employee.[145] But here, the conduct centers on a JBT product that was represented as the same product offered by BGSE's project submittals. Accordingly, the court concludes *Universal Furniture* provides a far better analog to the Defendants' conduct, and compels the exact determination made at summary judgment—that "the equipment represented in BGSE's project submittals originated with JBT and that BGSE falsely designated the origin of the work."[146]

### B. Defendants' Speculation of Double Liability Does Not Warrant a New Trial

Defendants' newly-raised speculation that the jury "might have" imposed liability twice for their misuse of JBT's HPCF Manual likewise does not warrant a new trial.[147] As JBT notes, its case involved evidence "Defendants improperly used JBT's HPCF Manual in separate instances relating to new projects at the same job sites previously at issue on summary judgment."[148] To that end, JBT presented evidence tending to show "Defendants' success on these additional projects was derived from [their] improper involvement on the first project at that site"[149]—that is, they were follow-on contracts. As such, the harms weighed by the jury were distinct from those considered at summary judgment.

---

[144] 598 F. Supp. 3d 348 (D. Md. 2022).

[145] *Id.* at 353–57.

[146] Dkt. 184 at 38.

[147] Dkt. 284 at 19–20.

[148] Dkt. 303 at 18.

[149] *Id.* (citing Dkt. 303-18, *Exhibit 18: April 27, 2016 Correspondence from Bullerdick*; Dkt. 303-36, *Exhibit 36: March 9, 2018 Correspondence from Bullerdick*).

In any event, it is clear the jury took a comprehensive, rather than fragmented approach to the amount of damages arising out of Defendants' misconduct.[150]  Instead of awarding a specific dollar amount for each purported violation, the jury adopted the estimate offered by Defendants' own damages expert's calculation, and assessed a consolidated $323,256 damages award for JBT's claims for misappropriation of trade secrets, false designation of origin, and breach of contract.[151]  In light of the foregoing, there is not a particularly high risk of double liability, if any, on JBT's breach of contract claims.

Finally, it is well-settled that "a verdict will not be upset on the basis of speculation as to the manner in which the jurors arrived at it."[152]  "'[E]ven where the chance is slight that the jury arrived at the award without erroneously duplicating,' a verdict that is 'within the range of the evidence' must be upheld unless it 'cannot be explained by evidence in the record and duplication is apparent.'"[153]  Here, Defendants' concern that "the jury might have imposed liability twice for the same conduct" amounts to speculation and falls far short of the showing required for a new trial.[154]  Therefore, the court concludes a new trial is not warranted based on the newly raised speculation offered by Defendants.

---

[150] *See generally* Dkt. 262.

[151] *Id.*

[152] *Mid-West Underground Storage, Inc. v. Porter*, 717 F.2d 493, 501 (10th Cir. 1983); accord *Nanodetex Corp. v. Defiant Techs.*, 349 F. App'x 312, 320 (10th Cir. 2009) (unpublished).

[153] *Musket Corp. v. Star Fuel of Okla., LLC*, 606 F. App'x 439, 453 (10th Cir. 2015) (unpublished) (quoting *Morrison Knudsen Corp. v. Ground Improvement Techniques, Inc.*, 532 F.3d 1063, 1079 (10th Cir. 2008)).

[154] *See id.* (declining to grant a new trial where the movant offered only "mere conjecture that the jury duplicated its awards").

### C.  *Defendants' Rule 50 Grounds for Relief Do Not Warrant a New Trial*

In addition to the two grounds discussed above, Defendants contend a new trial is warranted based on all of the other "reasons . . . asserted in the[ir] Rule 50 motions."[155]  But, having fully considered the Defendants' Rule 50 arguments, the court disagrees.  As discussed above, there is no indication that "the jury verdict is against the weight of the evidence, the damages are excessive, a party was prejudiced by erroneous evidentiary rulings, or the trial was not fair to the moving party."[156]  Additionally, the court discerns no clear errors of law warranting a new trial.  Accordingly, Defendants' request for a new trial based on their other Rule 50 arguments is denied.

### III.  **Motion to Alter or Amend the Judgment**

<u>LEGAL STANDARD</u>

In the alternative, Defendants seek to alter or amend the Judgment pursuant to Rule 59(e).[157]  "Grounds for relief under Rule 59(e) 'include (1) an intervening change in the controlling law, (2) new evidence previously unavailable, and (3) the need to correct clear error or prevent manifest injustice.'"[158]  A Rule 59(e) motion therefore may be granted only when "the court has misapprehended the facts, a party's position, or the controlling law"[159]—that is, "extraordinary" circumstances.[160]  Importantly, "[a] motion under Rule 59(e) is not to be used to

---

[155] Dkt. 284 at 20.

[156] *Braun*, 141 F. Supp. 3d at 1192 (quoting *Megadyne Med. Prods.*, 864 F. Supp. at 1102).

[157] *See* Fed. R. Civ. P. 59(e) ("Motion to Alter or Amend a Judgment.  A motion to alter or amend a judgment must be filed no later than 28 days after entry of the judgment.").

[158] *Klein-Becker*, 2011 U.S. Dist. LEXIS 103435, at *2 (quoting *Servants of Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000)).

[159] *Servants of Paraclete*, 204 F.3d at 1012.

[160] *Christensen v. Taylor*, No. 2:17-cv-992-RJS, 2019 U.S. Dist. LEXIS 164531, at *2 (D. Utah Sep. 24, 2019) (quoting *Blake v. Jpay*, No. 18-3146-SAC, 2019 U.S. Dist. LEXIS 150310, at *4–5 (D. Kan. Sept. 4, 2019)).

rehash arguments that have been addressed or to present supporting facts that could have been presented in earlier filings."[161]

APPLICATION

Defendants move the court to alter or amend the judgment on the grounds that it "improperly imposes joint and several liability against BGSE and Bullerdick for amounts when it does not appear it was the jury's intention to impose such liability."[162]  This is Defendants' second attempt to mitigate an unfavorable jury verdict by challenging the form and substance of the judgment, but it is no more availing than the first.[163]  At the outset, Defendants do not point the court to any "intervening change in the controlling law, new evidence previously unavailable, . . . need to correct clear error or prevent manifest injustice," or other recognized grounds for relief under Rule 59(e).[164]  Instead, Defendants speculate that the jury meant to do something other than what the verdicts call for.  Notably, the jury's first verdict assesses the same damage amount against Bullerdick *and* BGSE for their misconduct—$525,033,[165] as posited by Defendants' own damages expert—whereas the jury's second verdict breaks out two distinct punitive damages awards against BGSE and Bullerdick.[166]  Given the jury's approach to the first verdict, which aligns with Defendants' status as joint tortfeasors and closely related parties, the court concluded that joint and several liability was warranted on the consolidated damages

---

[161] *Id.*

[162] Dkt. 284 at 20.

[163] *See* Dkt. 270.

[164] *Klein-Becker*, 2011 U.S. Dist. LEXIS 103435, at *2 (quoting *Servants of Paraclete*, 204 F.3d at 1012); *see also Christensen*, 2019 U.S. Dist. LEXIS 164531, at *2 ("A motion under Rule 59(e) is not to be used to rehash arguments that have been addressed or to present supporting facts that could have been presented in earlier filings.").

[165] Dkt. 262.

[166] Dkt. 263.

award.[167]  By contrast, the court declined to extend joint and several liability to the Defendants' distinct punitive damages assessments, which were denoted against them individually.[168] Discerning no "extraordinary" circumstances warranting a departure from this approach, the court therefore declines to alter or amend the judgment pursuant to Rule 59(e).

## IV.     Motion on Supersedeas Bond

In addition to their requests for relief under Rules 50(b) and 59, Defendants move the court to stay execution of the Judgment without requiring a full supersedeas bond.[169]  Indeed, the court has considerable discretion to stay execution of a judgment pending the resolution of certain post-trial motions or an appeal.[170]  However, because the parties' post-trial motions are now resolved and Defendants have not filed a notice of appeal, the court sees no reason to stay execution at this point.  Accordingly, the court denies without prejudice Defendants' Motion to Dispense with Supersedeas Bond.[171]  Defendants may re-file this motion when and if an appeal is taken.

## CONCLUSION

For the reasons stated herein, the court DENIES Defendants' Motion for Judgment as a Matter of Law Pursuant to Rule 50(b) and, in the alternative For a New Trial or to Alter or Amend the Judgment Pursuant to Rule 59[172] and Defendants' pending Motion to Dispense with

---

[167] *See* Dkt. 272 (overruling Defendants' objections to the Proposed Judgment); Dkt. 273.

[168] Dkt. 263 (assessing $100,000 as to Bullerdick and $500,000 as to BGSE).

[169] Dkt. 290.

[170] *See, e.g.*, Fed. R. Civ. P. 62(b) ("At any time after judgment is entered, a party may obtain a stay by providing a bond or other security."); *ESIP Series 1, LLC v. Doterra Int'l, LLC*, No. 2:15-cv-00779-RJS-DBP, 2023 U.S. Dist. LEXIS 111973, at *4 (D. Utah June 27, 2023) ("District courts have broad discretion to stay proceedings pending an appeal." (collecting cases)).

[171] Dkt. 290.

[172] Dkt. 284.

Supersedeas Bond and Stay Execution.[173]  If Defendants elect to file a notice of appeal, they may renew their Motion to Dispense with Supersedeas Bond and seek a stay of execution.  But the court will not consider such a request without a pending appeal or other ground for relief from the usual bond requirement.

 SO ORDERED this 21st day of September, 2023.

    BY THE COURT:

    ROBERT J. SHELBY
    United States Chief District Judge

---

[173] Dkt. 290.